**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:   THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | )   Court No. 21-00398 |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STEEL, PAPER AND FORESTRY, | ) |
| RUBBER, MANUFACTURING, ENERGY, | ) |
| ALLIED INDUSTRIAL AND SERVICE | ) |
| WORKERS INTERNATIONAL UNION, AFL-| ) |
| CIO, CLC, | ) |
| | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO MODIFY THE INJUNCTION**

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL
VANIA WANG                                    ASHLEY AKERS
Attorney                                          Trial Attorney
Department of Commerce                 U.S. Department of Justice
Office of the Chief Counsel              Civil Division
  for Trade Enforcement & Compliance    Commercial Litigation Branch
                                                      P.O. Box 480
                                                      Washington, D.C.  20044
                                                      Tel: (202) 353-0521

January 18, 2022                             Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Introduction ......................................................................................................... 1

II.     Standard Of Review ............................................................................................ 3

III.    Background Regarding Suspension Of Liquidation .......................................... 6

IV.     Cheng Shin Failed To Demonstrate Entitlement To Warrant Modification Of The
        Current Injunction ............................................................................................... 7

        A.      Cheng Shin Has Failed To Establish That It Will Suffer Immediate
                Irreparable Harm For Entries Made After June 30, 2022 ...................... 8

        B.      Cheng Shin Failed To Demonstrate A Likelihood Of Success On The
                Merits ....................................................................................................... 13

        C.      The Balance Of Equities Do Not Weigh In Cheng Shin's Favor ......... 14

        D.      The Public Interest Is Not Served By Enjoining Entries Not Subject To
                Liquidation .............................................................................................. 16

        E.      Cheng Shin Has Not Alleged Any Changed Circumstances Or Identified
                Any Inequity In The Current Injunction ................................................ 16

CONCLUSION ........................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  562 F. Supp. 2d 1383 (Ct. Int'l Trade 2008) ....................................................... 4, 16

*Agro Dutch Indus. Ltd. v. United States*,
  589 F.3d 1187 (Fed. Cir. 2009) .......................................................................... 5, 6

*Algoma Steel Corp. v. United States*,
  865 F.2d 240 (Fed. Cir. 1989) ................................................................................ 15

*Altx, Inc. v. United States*,
  211 F. Supp. 2d 1378 (Ct. Int'l Trade 2002) ........................................................... 8

*Am. Cast Iron Pipe Co. v. United States*,
  399 F. Supp. 3d 1362 (Ct. Int'l Trade 2019) ......................................................... 14

*Am. Power Pull Corp. v. United States*,
  121 F. Supp. 3d 1296 (Ct. Int'l Trade 2015) .................................................... 6, 7, 9

*Ambassador Div. of Florsheim Shoe v. United States*,
  748 F.2d 1560 (Fed. Cir. 1984) ............................................................................... 6

*Clearon Corp. v. United States*,
  717 F. Supp. 2d 1366 (Ct. Int'l Trade 2010) ........................................................ 4, 5

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots.*,
  393 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) ........................................................... 8

*Diamond Sawblades Mfrs. Coal. v. United States*,
  No. 06-00248, 2014 WL 4455156 (Ct. Int'l Trade Sept. 10, 2014) ...................... 3, 4

*FMC Corp. v. United States*,
  3 F.3d 424 (Fed. Cir. 1993) ..................................................................................... 4

*Fuyao Glass Indus. Grp. Co. v. United States*,
  27 CIT 1321 (2003) ........................................................................................ passim

*Fuyao Glass Indus. Grp. Co. v. United States*,
  27 CIT 1166 (2003) ................................................................................................ 12

*Husteel v. United States*,
    34 F. Supp. 3d 1355 (Ct. Int'l Trade 2014) ........................................................ 11, 14

*Mid Continent Steel & Wire, Inc. v. United States*,
    427 F. Supp. 3d 1375 (Ct. Int'l Trade 2020) ........................................................ 11

*Mosaic Co. v. United States*,
    Ct. No. 21-00116, 2021 WL 4524213 (Ct. Int'l Trade Oct. 4, 2021) .................... 15

*Qingdao Taifa Grp. Co. v. United States*,
    581 F.3d 1375 (Fed. Cir. 2009) .......................................................................... 3

*Sandoz Chems. Corp. v. United States*,
    17 CIT 1061 (1993) ............................................................................................ 8, 9

*SKF USA Inc. v. United States*,
    316 F. Supp. 2d 1322 (Ct. Int'l Trade 2004) ...................................................... 4, 16

*SolarWorld Ams., Inc. v. United States*,
    279 F. Supp. 3d 1343 (Ct. Int'l Trade 2017) ...................................................... 4, 16, 17

*Sumecht NA, Inc. v. United States*,
    923 F.3d 1340 (Fed. Cir. 2019) .......................................................................... 3

*Unicatch Indus. Co. v. United States*,
    Ct. No. 20-00079, Slip. Op. 21-117 (Ct. Int'l Trade Sept. 14, 2021) .................... 3

*Weight Watchers Int'l, Inc. v. Luigino''s, Inc.*,
    423 F.3d 137 (2d Cir. 2005) .............................................................................. 3

*Zenith Radio Corp. v. United States*,
    710 F.2d 806 (Fed. Cir. 1983) ............................................................................ passim

## **Statutes**

19 U.S.C. § 1504(d) .................................................................................................. 5, 7

19 U.S.C. § 1516a .................................................................................................... 3, 15

19 U.S.C. § 1671b ...................................................................................................... 9

19 U.S.C. § 1671d ...................................................................................................... 9

19 U.S.C. § 1671e ........................................................................................... 9

19 U.S.C. § 1673e ........................................................................................... 2

19 U.S.C. § 1675(a) ........................................................................................ 6

**Rule**

USCIT R. 56.2(a) ......................................................................................... 4, 5

**Regulations**

19 C.F.R. § 351.212(c) .................................................................................. 7

19 C.F.R. § 351.213(b) .................................................................................. 6

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., )<br><br>            Plaintiff, )<br><br>      v. )<br><br>UNITED STATES, )<br><br>            Defendant, )<br><br>      and )<br><br>UNITED STEEL, PAPER AND FORESTRY,<br>RUBBER, MANUFACTURING, ENERGY,<br>ALLIED INDUSTRIAL AND SERVICE<br>WORKERS INTERNATIONAL UNION, AFL-<br>CIO, CLC, )<br><br>            Defendant-Intervenor. ) | Court No. 21-00398 |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO MODIFY THE INJUNCTION**

Pursuant to Rules 7 and 65 of the Rules of the United States Court of International Trade, and the Court's Order, ECF No. 34, dated November 5, 2021, defendant, the United States, respectfully submits this response in opposition to plaintiff Cheng Shin Rubber Ind. Co. Ltd.'s (Cheng Shin) motion to modify the statutory injunction.  For the reasons set forth below, Cheng Shin's motion should be denied.

**I.      Introduction**

Cheng Shin seeks to modify the injunction that this Court entered to extend the duration of the injunction indefinitely.  Pl. Mot. at 2.  This modification is unnecessary.  As an initial matter, based on a shared understanding of the antidumping and countervailing duty scheme that

Congress enacted, none of Cheng Shin's entries currently are in danger of being liquidated. Immediately after Commerce issues an antidumping duty order, entries of subject merchandise are not subject to liquidation. Rather, from the preliminary determination of the investigation forward, entries of subject merchandise are, by law, suspended pending a request for a subsequent administrative review.[1] Thus, here, despite the fact that no injunction is necessary to counter any irreparable or immediate harm that might occur, the current injunction nonetheless prevents liquidation through the end of the first administrative review period of this antidumping order. Moreover, if this investigation litigation is not resolved before entries from subsequent periods of review could potentially become subject to liquidation, Cheng Shin may ask the Court to modify the injunction to cover such additional entries at that time, and the Government does not intend to oppose such modification if it is necessary. Thus, the Court should decline Cheng Shin's invitation to exercise its discretion to grant the "extraordinary remedy" of injunctive relief when it is entirely unnecessary, and, under settled law, therefore impermissible. *E.g.*, *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019).

Additionally, Cheng Shin neglected to address in its motion the necessary factors to demonstrate entitlement to the relief that it seeks. Cheng Shin has not alleged sufficient facts demonstrating that it will suffer irreparable harm under the current injunction that has a specified end date of June 30, 2022, nor has Cheng Shin alleged sufficient facts establishing that it is likely to succeed on the merits, that the balance of equities weighs in its favor, or that the public interest would be served through imposition of the injunctive relief it seeks. Cheng Shin

---

[1] Under 19 U.S.C. § 1673e(b)(2), if the International Trade Commission (ITC) determines that there is a threat of material injury or material retardation of the establishment of an industry, the time period before publication of the ITC's injury determination is not subject to antidumping duties. However, that situation is not applicable here.

similarly fails to demonstrate that changed circumstances have made the current injunction inequitable.  Cheng Shin has not attempted to meet its burden and thus is not entitled to the relief that it seeks.

## II.     Standard Of Review

Injunctions are "extraordinary remedies" that require a proper showing that the moving party is entitled to such remedy.  *Sumecht*, 923 F.3d at 1345; *see also* 19 U.S.C. § 1516a(c)(2) (empowering this Court to grant injunctive relief in challenges to certain specified Commerce determinations, including a final affirmative determination in an antidumping duty investigation, upon "a proper showing that the requested relief should be granted under the circumstances"). "'The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction.'" *Diamond Sawblades Mfrs. Coal. v. United States*, No. 06-00248, 2014 WL 4455156, at *4 (Ct. Int'l Trade Sept. 10, 2014) (quoting *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005)).

Thus, "[i]n the absence of consent . . . the question is resolved, again, by resort to the familiar four-part test," which requires the movant to establish that:  "(1) absent the requested relief, it will suffer immediate irreparable harm; (2) there exists in its favor a likelihood of success on the merits; (3) the public interest would be better served by the requested relief; and (4) the balance of the hardships on all parties tips in its favor." *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *see also Fuyao Glass Indus. Grp. Co. v. United States*, 27 CIT 1321, 1323 (2003) (*Fuyao II*); *see also, e.g.*, *Unicatch Indus. Co. v. United States*, No. 20-00079, Slip. Op. 21-117 (Ct. Int'l Trade Sept. 14, 2021) (using the four-factor test to evaluate a motion for preliminary injunction construed as a motion to amend the statutory

injunction).  The court "employs a 'sliding scale,' meaning that no single factor is dispositive." *Diamond Sawblades*, 2014 WL 4455156, at *4 (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)).

When moving to modify or amend an injunction, this Court has also required that the movant demonstrate "changed circumstances, either legally or factually, which make the injunction inequitable."  *E.g.*, *SKF USA Inc. v. United States*, 316 F. Supp. 2d 1322, 1336 n.19 (Ct. Int'l Trade 2004); *SolarWorld Ams., Inc. v. United States*, 279 F. Supp. 3d 1343, 1347 (Ct. Int'l Trade 2017); *Ad Hoc Shrimp Trade Action Comm. v. United States*, 562 F. Supp. 2d 1383, 1388 (Ct. Int'l Trade 2008).

Cheng Shin has failed to address, let alone establish, *any* of the relevant factors to achieve its requested relief of obtaining an open-ended injunction.  For this reason alone, the Court should deny Cheng Shin's motion.  *See, e.g.*, *SolarWorld Ams.*, 279 F. Supp. 3d at 1347 (denying a motion to amend the statutory injunction because the moving party failed to "set forth any fact or legal arguments to show a change in circumstances that would make continuation of the original statutory injunction inequitable").

In fact, Cheng Shin misstates (and thus erroneously relies on) the applicable standard of review.  Cheng Shin argues that "[t]his Court's rules . . . have established that parties *do not need* to establish 'good cause' in order to modify an injunctive order."  Pl. Mot. at 3 n.4 (citing USCIT R. 56.2(a)) (emphasis added).  Cheng Shin contends that, because this Court in *Clearon Corp. v. United States*, 717 F. Supp. 2d 1366 (Ct. Int'l Trade 2010) modified an existing statutory injunction "without discussing an additional requirement of good cause," the good cause standard must not apply here.  Pl. Mo. at 3 n.4.  Cheng Shin is wrong.  The plain language of the Court's rules provides:  "*Any* motion for a statutory injunction . . . to enjoin the liquidation of

entries that are the subject of the action must be filed by a party to the action within 30 days after service of the complaint, or at such later time, *for good cause shown*."  USCIT R. 56.2(a) (emphasis added).  Nothing in the Court's rules limits or otherwise renders inapplicable this rule, nor has Cheng Shin cited any authority that expressly limits the application of this rule.

Cheng Shin also inappropriately relies on *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187 (Fed. Cir. 2009) for the standard of review.  Pl. Mot. at 3-4.  Cheng Shin contends that, under *Argo Dutch*, the Court has inherent discretion to modify a statutory injunction so long as the modification (1) is necessary to achieve the injunctive order's intended purpose and (2) would not result in prejudice to a party.  Pl. Mot. at 3-4.  This is not correct.  The standard set forth in *Agro Dutch* is limited to circumstances that do not apply here.

In *Agro Dutch*, the United States Customs and Border Protection (CBP) inadvertently liquidated certain entries after the Court had entered an injunction enjoining such liquidation. *Agro Dutch*, 589 F.3d at 1190. The Court of Appeals for the Federal Circuit explained that, if liquidation occurs because of an error that was contrary to the purpose of the injunction and the parties' intent, the trial court has broad discretion to correct such errors.  *Agro Dutch*, 589 F.3d at 1192 ("The trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses *the correction of errors* needed to comport the order with the original understandings and intent of the court and the parties.") (emphasis added).[2]  Thus, the Federal Circuit held that the default rule, which holds that liquidation moots a party's claims pertaining

---

[2] The change of circumstances in *Agro Dutch* were also present in *Clearon Corp. v. United States*, 717 F. Supp. 2d 1366 (Ct. Int'l Trade 2010).  In *Clearon*, after an injunction was entered, the injunction was never served on the named officials for the United States Customs and Border Protection (CBP) and Commerce, and CBP treated the entries as liquidated as a matter of law under 19 U.S.C. § 1504(d), *i.e.*, the entries were deemed liquidated.  Here, no such facts exist and thus the "correction of errors" standard is inapplicable.

to the liquidated entries, does not apply when the court's and the parties' clear intentions of preventing liquidation through injunctive relief were not effectuated due to an error. *Agro Dutch*, 589 F.3d at 1193.

The standard articulated in *Agro Dutch*—that the trial court has broad discretion to correct errors needed to comport the order with the original understanding and intent of the court and parties—does not apply here where there is no need to correct an error in the current statutory injunction. Thus, the Court should reject Cheng Shin's inappropriate attempt to compel the Court to apply an inapplicable standard of review.

**III.    Background Regarding Suspension Of Liquidation**

When Commerce issues an antidumping order, Commerce does not lift suspension of liquidation; the suspension initiated at the preliminary determination continues. At least once during each 12-month period, beginning on the anniversary of the date of publication of an antidumping duty order, if a request for a review has been received and after publication of notice in the Federal Register, Commerce will review and determine the amount of an antidumping duty and will publish the results of the review with notice of any duty to be assessed retrospectively. 19 U.S.C. § 1675(a). Interested parties may request an administrative review "during the anniversary month of the publication of an antidumping or countervailing duty order." 19 C.F.R. § 351.213(b)(1).

If a review is requested, suspension of liquidation of the company's entries for which review was requested continues for the duration of the administrative review. *Am. Power Pull Corp. v. United States*, 121 F. Supp. 3d 1296, 1301 (Ct. Int'l Trade 2015); *see also Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984).

If no review is requested (or when all requests for review are withdrawn), Commerce will, without additional notice, instruct CBP to assess antidumping or countervailing duties at the cash deposit rates in effect at the time of entry, *i.e.*, issue automatic liquidation instructions.  19 C.F.R. § 351.212(c).  CBP then has six months to liquidate the covered entries or the entries will be deemed liquidated at the cash deposit rate in effect at the time of entry.  *Am. Power*, 121 F. Supp. 3d at 1302; *see also* 19 U.S.C. § 1504(d).

The current injunction covers Cheng Shin's entries subject to the first administrative review of this antidumping order and, thus, protects Cheng Shin's entries from liquidation to the extent necessary.

## IV.    Cheng Shin Failed To Demonstrate Entitlement To Warrant Modification Of The Current Injunction

Cheng Shin has not demonstrated that an injunction with indefinite duration is warranted. As an initial matter, Cheng Shin has failed to demonstrate entitlement to injunctive relief under the well-established four-part test.  In fact, Cheng Shin neglected even to cite the test, let alone make the necessary showing.  Not only has Cheng Shin neglected to make that requisite showing, it has also failed to demonstrate that changed circumstances render the current injunction inequitable.  Instead, Cheng Shin argues that the Court should modify the current injunction because Cheng Shin speculates that certain entries may be liquidated at some time in the future, and because modifying the injunction would not be prejudicial to either party.  As explained below, Cheng Shin's argument is misplaced; obtaining the "extraordinary remedy" of injunctive relief demands more than speculative argumentation regarding the necessity of injunctive relief.  Additionally, Cheng Shin's overbroad and unsupported argument that injunctions should *per se* be granted on an indefinite basis—simply because this Court has found such injunctive relief to be appropriate under a different circumstance—should be rejected.

A.    **Cheng Shin Has Failed To Establish That It Will Suffer Immediate Irreparable Harm For Entries Made After June 30, 2022**

Cheng Shin is not entitled to an injunction covering entries made *after* June 30, 2022, that are subject to a future administrative proceeding,[3] because it has failed to meet its burden to establish that it will suffer immediate irreparable harm.  *See Fuyao II*, 27 CIT at 1323 (citing *Zenith Radio*, 710 F.2d at 809).  It is well-established that "[a] mere possibility of future harm, no matter how great, will not support a request for preliminary injunction; the threat must be present and existing."  *Sandoz Chems. Corp. v. United States*, 17 CIT 1061, 1064 (1993) (citing *Zenith*, 710 F.2d at 809); *see Altx, Inc. v. United States*, 211 F. Supp. 2d 1378, 1380 (Ct. Int'l Trade 2002).  "In evaluating [irreparable] harm, the court must consider 'the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief'" and 'immediacy [of the injury] and the inadequacy of future corrective relief' may be weighed more heavily than magnitude of harm."  *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots.*, 393 F. Supp. 3d 1271, 1276 (Ct. Int'l Trade 2019).

The current injunction covers Cheng Shin's entries subject to the first administrative review of this antidumping order and, thus, protects Cheng Shin's entries from liquidation to the extent necessary.  Cheng Shin asks the Court to impose an open-ended injunction, but it has not demonstrated there is any existing or actual threat that entries after June 30, 2022, will be liquidated in the near future, and thus its request should be denied.  *Id.* ("It is not enough to establish 'a mere possibility of injury, even where prospective injury is great.  A presently existing, actual threat must be shown.'").

---

[3] For the parties' and the Court's convenience, defendant has a practice of consenting to Form 24 injunctions in investigations covering entries through the end of the first period of review— subject to modification, if requested, when the time to request the second review arises.

In fact, Cheng Shin has failed to articulate any non-speculative irreparable harm that it thinks it will suffer absent the requested modification to the injunction. Cheng Shin has no entries that are currently subject to liquidation or subject to liquidation in the near future. The current injunction preserves the status quo with respect to the entries under the first administrative review, which are the first set of entries that would be slated for liquidation. With respect to the future entries that will be made after June 30, 2022 (*i.e.*, the end point in the injunction coverage),[4] those entries will remain administratively suspended from liquidation until at least July 2023 when the second administrative review of this antidumping duty order may be requested, and, if a review of Cheng Shin is requested, until the completion of such review in 2024. 19 U.S.C. § 1671b(1)(B)&(2); 19 U.S.C. § 1671d(c)(1)(B)(ii); 19 U.S.C. § 1671e(a); *cf.* *Am. Power*, 121 F. Supp. 3d at 1301 ("Thus, the antidumping duty order provides the legal basis for the suspension of liquidation of imports of subject merchandise that enter for consumption on or after the date of publication of that order, throughout the life of the order, and until the order is revoked."). For companies for which no review is requested, the earliest time that the automatic liquidation instructions may be issued is in September 2023, and much later for entries from subsequent administrative reviews.[5] Thus, Cheng Shin cannot demonstrate a present and existing threat of irreparable harm. *Sandoz Chems*, 17 CIT at 1064.

---

[4] The entries prior to June 30, 2022, which are covered by the first administrative review, is covered by the current injunction. Accordingly, there is no threat that such entries will be liquidated.

[5] The earliest that an initiation notice could be published is August 1, 2023, after the July request period. Because Commerce typically has a thirty-five-day waiting period before sending liquidation instructions, the earliest that Commerce would send liquidation instructions for the second review is in September 2023.

Moreover, Cheng Shin cannot demonstrate that, without a modification to the injunction, it will be irreparably harmed.  To the contrary, if this litigation is not resolved by the time the future entries (made during the period of the second administrative review) could conceivably be subject to liquidation, Cheng Shin could seek a modification to the injunction at the appropriate time and, consistent with long-standing practice, the Government would consent to the modification.  *See, e.g.*, *Linyi Chengen Import & Export Co., Ltd. v. United States,* Court No. 18-00002, ECF Nos. 65, 66, 67, 68, 69, 70, 71, 72, 75, 76, 153, 154, 155, 156, 157, 158, 159, 160; *Jiangsu Zhongji Lamination Materials., (HK) Ltd. v. United States*, Court. No. 18-00091, ECF No. 15, 41.

The only conceivable "irreparable harm" that Cheng Shin has identified is its contention that it will be deprived of the benefit of judicial review because there is a risk that entries after June 30, 2022, will be liquidated and assessed antidumping duties.  Pl. Mot. at 4.  However, the possibility that Cheng Shin's entries could become subject to antidumping duties at some distant point in the future does not constitute immediate injury, and it is not sufficient to constitute irreparable harm because Cheng Shin has adequate future relief.  *See, e.g.*, *Beijing Tianhai Indus. Co., Ltd. v. United States*, Court No. 12-00203, ECF No. 58, 59.  As previously explained, the entries at issue are administratively suspended and will not be subject to liquidation for many months.  Indeed, Cheng Shin may ensure that its entries remain suspended by requesting review when the time is appropriate or when the time is appropriate by asking the Court to modify the injunction in this case with the Government's consent.

Cheng Shin has also failed to explain why the risk of liquidation could not be addressed by the current injunction with a limited time frame with an obvious, potential later request to amend the current injunction when the harm has become actual and imminent.  Pl. Mot. at 5.

Indeed, this is the well-established approach that comports with how this Court typically tailors injunctive relief in these cases—*i.e.*, routinely issuing injunctions with a definite endpoint when the case concerns an investigation, and the litigants challenging investigations in those cases were not deprived of the full benefit of litigation and did not suffer irreparable harm from such injunctive relief. *See, e.g.*, *Husteel v. United States*, 34 F. Supp. 3d 1355, 1364 (Ct. Int'l Trade 2014) (issuing an injunction in a case concerning an investigation that covered unliquidated entries that were made through the end of the first period of review).

Cheng Shin relies on this Court's decision in *Mid Continent Steel & Wire, Inc. v. United States*, 427 F. Supp. 3d 1375 (Ct. Int'l Trade 2020), to support its request for an open-ended inunction. This authority is not persuasive. In *Mid Continent*, this Court issued an open-ended injunction as a result of the exceptional circumstances of that litigation. The injunction was issued approximately *five years* after the litigation commenced in 2015 and only *after* the first two administrative reviews were completed and two additional reviews were in the process of being completed. Here, the circumstances are vastly different because Cheng Shin seeks an open-ended injunction long before any of the administrative reviews are scheduled to commence.

Cheng Shin's reliance on *Husteel* is similarly unhelpful. Pl. Mot. at 6. In *Husteel*, this Court issued an injunction that only applied to entries covered by the first administrative review, which is nearly identical to the approach the Government advocates here. *Husteel*, 34 F. Supp. 3d at 1364. This Court indicated that, under the strict interpretation of its rules, a party is required to demonstrate good cause if it did not obtain an injunction within the initial 30-day period after the filing of the complaint and the Court issued a precisely tailored injunction that was limited in temporal scope. *Id.*

The Court can look to a more instructive case with comparable facts in *Fuyao Glass Industrial Group Co. v. United States*, 27 CIT 1166, 1169 (2003) (*Fuyao I*).  In *Fuyao I*, the Court denied an application for a preliminary injunction in an action challenging an antidumping duty order, when an administrative review kept entries suspended.  The applicant seeking the injunction contended that it was the only party to request an administrative review of its entries, that it was reconsidering its decision to pursue such review, and that if it withdrew its review request, it would suffer irreparable harm because its entries would be immediately liquidated. *Fuyao I*, 27 CIT at 1168.  The Court found that, "so long as the administrative review of the Subject Merchandise stays its course{,} the irreparable harm with which Applicant claims to be faced remains in check{,}" and that the claimed irreparable harm was more of "a possibility than a present threat."  *Id.* at 1170.  The Court concluded that "it cannot grant the requested relief simply because the prospect of irreparable harm is too speculative," and noted that "injunctive relief is an 'extraordinary remedy' that should be granted sparingly."  *Id.* at 1167.

Thereafter, the applicant withdrew its review request, and the *Fuyao* Court granted a second injunction request, limiting injunction to the entries from that specific review that were no longer suspended from liquidation.  Only with respect to the entries no longer suspended from liquidation did the Court hold that the "{a}pplicant has now established the 'crucial element' of immediate irreparable harm . . . because Applicant has withdrawn its request for an administrative review of the Subject Merchandise the prospect of immediate irreparable harm is no longer 'speculative' and Applicant is now in much the same position as other parties who have sought and received preliminary injunctions in these matters."  *Fuyao II*, 27 CIT at 1324 (citations omitted).  The Court also held that the injunction "should cover only those entries of Subject Merchandise that were entered or withdrawn for consumption during the period of

administrative review and should exclude entries made on or after April 1, 2013 from the scope[.]" *Id.* at 1325. This is precisely the type of limitation that exists in the current injunction. In fact, Cheng Shin is in a more favorable position than the plaintiff in *Fuyao*, because the current injunction covers up to the end of the first administrative review, even though all of Cheng Shin's entries remain administratively suspended.

In sum, Cheng Shin's request for an open-ended injunction covering additional prospective entries pending the outcome of this litigation is both premature and overbroad because the threat of immediate irreparable harm for entries made on or after June 30, 2022, is wholly "speculative." *Id.* at 1324; *see also Zenith Radio,* 710 F.2d at 809 ("A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.") (citation and internal quotation marks omitted). Given that an injunction is an "extraordinary remedy," the Court should fashion it in the least restrictive manner (*i.e.*, to the extent necessary to prevent a presently existing, actual threat of liquidation).

### B. Cheng Shin Failed To Demonstrate A Likelihood Of Success On The Merits

Cheng Shin did not directly address this prong and thus the Court should deny Cheng Shin's motion to modify the injunction. Commerce has explained its evaluation of the evidence on the record and the reasons for its final determination in the accompanying Issues and Decision Memorandum. Cheng Shin has failed to address the merits of that decision, let alone explain why it has a likelihood of success in this Court. Thus, Cheng Shin's request to obtain open-ended injunctive relief should be rejected.

C.      **The Balance Of Equities Do Not Weigh In Cheng Shin's Favor**

The balance of the equities do not weigh in Cheng Shin's favor to have an open-ended injunction.  Cheng Shin's request for a broader injunction covering future entries is not necessary to maintain the status quo because the entries at issue remain administratively suspended and are not in any danger of being liquidated.  As explained, should those entries be subject to liquidation later, Cheng Shin may request defendant to consent to such modification and then petition this Court for modification of the injunction, and the Court may grant that request, if appropriate.  At most, Cheng Shin would have to exercise basic due diligence, *i.e.*, update the current injunction to add new dates and ask the Court to modify the existing injunction.  Cheng Shin may view these procedural requirements as an inconvenience but requiring Cheng Shin to act in accordance with the law should not be a hardship for Cheng Shin, nor does it justify the imposition of an open-ended injunction.

Further, it would not be inequitable for the Court to deny the modification request.  Rather, it would comport with current practice.  The current injunction is consistent with injunctions that this Court has issued in other cases involving investigations.  *See, e.g.*, *Husteel*, 34 F. Supp. 3d at 1364 (issuing an injunction in an investigation that covered unliquidated entries that were made "on or after July 18, 2014 up to and including September 30, 2015," *i.e.*, through the end of the first period of review); *Am. Cast Iron Pipe Co. v. United States*, 399 F. Supp. 3d 1362, 1365 n.3 (Ct. Int'l Trade 2019) (granting injunction in litigation regarding investigation that covered entries through the end of the first period of review); *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, Court No. 18-00195, ECF No. 65, at 2 (Ct. Int'l Trade Jan. 19, 2021) (same); *PT Kenertec Power Sys. v. United States*, Court No. 20-03687, ECF No. 14, at 2 (Ct. Int'l Trade Nov. 23, 2020) (same).

Cheng Shin relies on *Mosaic Co. v. United States*, Ct. No. 21-00116, 2021 WL 4524213 (Ct. Int'l Trade Oct. 4, 2021) to support its request for an open-ended injunction. *Mosaic* is inapposite for several reasons. First, even if the circumstances of *Mosiac* were similar to this case, which they are not, the Court is not bound by an opinion from this Court. *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) (explaining that one judge on the Court of International Trade is not bound by decisions of another judge on the court). Second, the Court in *Mosaic* applied the four-factor test applicable to requests for injunctive relief, which Cheng Shin has failed to address here. *See Mosiac*, 2021 WL 4524213 at *2. For example, the Court found that the plaintiff in *Mosiac* had "raised serious and substantial questions concerning the Final Determination" and thus had made a sufficient showing on the "likelihood of success on the merits" element. *Id.* at *4. Here, Cheng Shin has made absolutely no showing on that factor or any other. And third, *Mosiac* incorrectly, in our view, held that statutory injunctions under 19 U.S.C. § 1516a do not constitute an "extraordinary remedy." *Id.* This holding runs directly afoul of Federal Circuit precedent in *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809-10 (Fed. Cir. 1983), where the Federal Circuit reviewed the statutory scheme in 19 U.S.C. § 1516a and the grant of injunctive authority by Congress, and held that "injunctive relief is to be granted only in extraordinary circumstances."[6] Therefore, *Mosiac* does not lend support to Cheng Shin's request for an open-ended injunction here.

---

[6] In the case of a determination described in paragraph (2) of subsection (c) by the Secretary, the administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and *a proper showing that the requested relief should be granted under the circumstances.*

19 U.S.C § 1516a(c)(2) (emphasis added).

**D.      The Public Interest Is Not Served By Enjoining Entries Not Subject To Liquidation**

Cheng Shin has neglected even to attempt to demonstrate that the public interest would be served by enjoining entries not yet subject to liquidation.  Indeed, no valid public interest is served by enjoining the liquidation of future entries that are not subject to liquidation in the first place.  Cheng Shin is engaged in meaningful judicial review and that right is not threatened as Cheng Shin is free to petition this Court for an extension of the injunction, if or when necessary. Thus, Cheng Shin has failed to allege sufficient facts demonstrating that the public interest will be served through imposition of an open-ended injunction.

**E.      Cheng Shin Has Not Alleged Any Changed Circumstances Or Identified Any Inequity In The Current Injunction**

Finally, just as Cheng Shin has failed to address any of the four well-established criteria for obtaining injunctive relief, it has also failed to address the requisite test that this Court has applied to requests to modify an injunction, which is to demonstrate changed circumstances and identify inequity in the currently entered injunction.  *E.g.*, *SKF*, 316 F. Supp. 2d at 1336 n.19 (explaining that, when moving to modify or amend an injunction, this Court has required that the movant demonstrate "changed circumstances, either legally or factually, which make the injunction inequitable"); *see also SolarWorld Ams.*, 279 F. Supp. 3d at 1347; *Ad Hoc Shrimp*, 562 F. Supp. 2d at 1388.

Indeed, rather than point to any changed circumstances since the issuance of the injunction, Cheng Shin claims that the intended purpose to maintain the status quo has not been met with the current injunction.  Pl. Mot. at 4.  However, the current injunction with an end date of June 30, 2022, corresponding to the end of the period of review for the first administrative

review, maintains the status quo and, as we have explained, there is no imminent harm or danger that the status quo will change.

Because Cheng Shin has failed to "set forth any fact or legal arguments to show a change in circumstances that would make continuation of the original statutory injunction inequitable," the Court should deny Cheng Shin's motion. *See SolarWorld Ams.*, 279 F. Supp. 3d at 1347 (denying motion to amend statutory injunction because moving party failed to "set forth any fact or legal arguments to show a change in circumstances that would make continuation of the current statutory injunction inequitable").

## **CONCLUSION**

For these reasons, the Court should deny Cheng Shin's motion to modify the current injunction's duration to an indefinite one.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

OF COUNSEL:                                    /s/ Ashley Akers
VANIA WANG                                     ASHLEY AKERS
Attorney                                       Trial Attorney
Department of Commerce                         U.S. Department of Justice
Office of the Chief Counsel                    Civil Division
  for Trade Enforcement & Compliance        Commercial Litigation Branch
                                                      P.O. Box 480
                                                      Ben Franklin Station
                                                      Washington, D.C.  20044
                                                      Tel: (202) 353-0521

January 18, 2022                                Attorneys for Defendant

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| _____ ) | |
| CHENG SHIN RUBBER IND. CO. LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00398 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STEEL, PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, AFL- ) | |
| CIO, CLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____) | |

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION
## IN THE COURT'S STANDARD CHAMBERS PROCEDURE

I, Ashley Akers, Trial Attorney in the Commercial Litigation Branch, am responsible for filing the foregoing brief, and relying upon the Microsoft Word Word-Count feature of the word processing system used to prepare the reply brief, I certify that this brief complies with the word count limitation of the United States Court of International Trade Standard Chambers Procedures and contains 5,441 words.


/s/ Ashley Akers
Ashley Akers