UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) Court No. 21-00398 |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, | ) |
| MANUFACTURING, ENERGY, ALLIED | ) |
| INDUSTRIAL AND SERVICE WORKERS | ) |
| INTERNATIONAL UNION, AFL-CIO, CLC, | ) |
| | ) |
| Defendant- | ) |
| Intervenor. | ) |
| | ) |

BRIEF OF CHENG SHIN RUBBER IND. CO. LTD. IN SUPPORT OF
ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

PUBLIC VERSION

PROPRIETARY INFORMATION SUBJECT TO
PROTECTIVE ORDER DELETED FROM PAGES 16, 21, AND 22

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C. 20036
(202) 774-5500

Attorneys for Cheng Shin Rubber Ind. Co. Ltd.

February 11, 2022

Page

STATEMENT PURSUANT TO RULE 56.2(C)(1) ........................................................ 1

    A.   Administrative Determination under Review ...................................... 1

    B.   Issues of Law and Summary of Reasons for
         Reversing Commerce's Determination ............................................. 2

STATEMENT OF FACTS .................................................................................... 3

    A.   Background ................................................................................. 3

    B.   Treatment of Temporary Spares for Light
         Trucks in the Commerce Investigation ........................................... 5

         1.   The Petition ................................................................... 5

         2.   The Initiation Notice ....................................................... 6

         3.   Comments on Scope ........................................................ 7

         4.   Comments on Product Characteristics ................................. 9

         5.   Commerce's Preliminary Determination .............................. 13

         6.   Verification of the Characteristics of
             Cheng Shin's Light-Truck Temporary Spares ....................... 15

         7.   Commerce's Final Determination ....................................... 17

STANDARD OF REVIEW ................................................................................. 17

ARGUMENT ................................................................................................ 18

    A.   The Temporary-Use Light-Truck Spare-Tire Models Sold by
         Cheng Shin Meet the Technical Requirements for Exclusion ........................ 18

    B.   The Evidence Demonstrates that Cheng Shin's
          Light-Truck Spare Tires Were "Designed and Marketed
          Exclusively" as Temporary-Use Spare Tires for Light Trucks ..................... 20

    C.   Commerce's Conclusion that Cheng Shin's Tires Were Not
          "Designed and Marketed Exclusively" as Temporary-Use
          Light-Truck Spare Tires is Not Supported by Substantial Evidence ............... 22

1.  Contrary to Commerce's Claims, Cheng
    Shin Did Not Report that the Light-Truck
    Spare-Tire Models Have a Dual Use ............................................................ 22

2.  Contrary to Commerce's Claims, Cheng Shin's
    Purchase Agreements Do Not Indicate that the
    Light-Truck Spare Tire Models Have a Dual Use ...................................... 24

D.  Commerce's Failure to Exclude Cheng Shin's Light-Truck
    Spare Tires Unlawfully Changes the Scope of the Order .................................. 27

CONCLUSION ................................................................................................................. 29

Table of Authorities

C̲O̲U̲R̲T̲ D̲E̲C̲I̲S̲I̲O̲N̲S̲

Allegheny Bradford Corp. v. United States,
    342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004)................................................. 18, 28

Diamond Sawblades Manufacturers' Coalition v. United States,
    986 F. 3d 1351 (Fed. Cir. 2021) .................................................................................... 17

Duferco Steel, Inc. v. United States,
    296 F. 3d 1087, 1089 (Fed. Cir. 2002) .................................................................. 18, 28

Polites v. United States,
    755 F. Supp. 2d 1352, 1356 (Ct. Int'l Trade 2011)................................................. 18, 28

Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,
    146 F. Supp. 3d 1331, 1352 (Ct. Int'l Trade 2016)................................................. 18, 27

Universal Camera Corp. v. N.L.R.B.,
    340 U.S 474 (1951) ....................................................................................................... 17

S̲T̲A̲T̲U̲T̲E̲S̲ A̲N̲D̲ R̲E̲G̲U̲L̲A̲T̲I̲O̲N̲S̲

19 U.S.C. § 1516a ................................................................................................................. 17

O̲T̲H̲E̲R̲ A̲U̲T̲H̲O̲R̲I̲T̲I̲E̲S̲

J.P. Lawrence, A New Approach to Spare Tires – Mini-Spare, Presentation at the
    Automobile Engineering Meeting of the Society of Automotive Engineers, October
    18-22, 1976................................................................................................................... 4

R. Montoya, Spare Tires in New Cars: What You Need to Know, Edmunds (Mar. 24,
    2017), https://www.edmunds.com/car-buying/the-disappearing-spare-tire.html .......... 4

R. Reina, Full Circle: The History of Tires, Automoblog, www.automoblog.net/history-of-
    tires/ (last visited February 8, 2022)............................................................................. 4

Stepney Spare wheel, made for early cars, BBC, www.bbc.co.uk/ahistoryoftheworld/
    objects/qPgTiS8fQ6SeIqZLvZVfXQ (last visited February 8, 2022) ........................... 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| and ) | Court No. 21-00398 |
| ) | |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, ) | |
| MANUFACTURING, ENERGY, ALLIED ) | |
| INDUSTRIAL AND SERVICE WORKERS ) | |
| INTERNATIONAL UNION, AFL-CIO, CLC, ) | |
| ) | |
| Defendant- ) | |
| Intervenor. ) | |
| ) | |

BRIEF OF CHENG SHIN RUBBER IND. CO. LTD. IN SUPPORT OF
ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

This brief is submitted on behalf of Cheng Shin Rubber Ind. Co. Ltd. ("Cheng Shin")

to contest the final determination by the U.S. Department of Commerce ("Commerce") in

the antidumping investigation of Passenger Vehicle and Light Truck Tires ("PVLT Tires")

from Taiwan.

STATEMENT PURSUANT TO RULE 56.2(C)(1)

A. *Administrative Determination under Review*

Commerce published the notice of the final results of the investigation in the *Federal*

*Register* on May 27, 2021.[1]  Commerce's discussion of the issues raised in the final results

was set forth in a separate memorandum dated May 21, 2021.[2]

---

[1] *See Passenger Vehicle and Light Truck Tires from Taiwan: Final Affirmative Determination of Sales at Less than Fair Value*; 86 Fed. Reg. 28563 (May 27, 2021)
*(footnote continued on following page)*

    B.   *Issues of Law and Summary of Reasons for*
        *Reversing Commerce's Determination*

        1.    *Whether Commerce's determination that Cheng Shin's tires do not meet the scope exclusion for temporary-use light-truck spare tires was supported by substantial evidence on the record, fairly took into account evidence detracting from Commerce's conclusion, and otherwise was in accordance with law?*

The petition in this case specifically excluded temporary-use spare tires sold as equipment for passenger vehicles, but did not address spare tires sold as equipment for light trucks. Immediately after the investigation was initiated, Cheng Shin requested that the scope language be modified to extend the spare tire exclusion to apply to temporary-use spare tires sold as equipment for light trucks. Cheng Shin's request identified three specific tire models that should be excluded, as well as a broader request covering all temporary-use light-truck spare tires. Cheng Shin then consulted with petitioner on the exact terms of the scope-exclusion language to ensure that the exclusion would cover the light-truck spare tire that Cheng Shin produced for its U.S. customers while addressing petitioner's concern that the resulting exclusion not be overbroad. After reaching agreement with petitioner, Cheng Shin submitted the agreed-upon scope-exclusion language to Commerce, which Commerce accepted without modification.

In its final determination, however, Commerce determined that the specific temporary-use light truck spare-tire models identified in Cheng Shin's initial request did

_____

*(footnote continued from previous page)*
(Appx16316-16319), as corrected by *Passenger Vehicle and Light Truck Tires from Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value; Correction*, 86 Fed. Reg. 30916 (June 10, 2021) (hereinafter referred to as the "*Final Results*") (Appx16359-16361).

[2] *See* Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of Passenger Vehicle and Light Truck Tires from Taiwan (May 21, 2021) (hereinafter "I&D Memo") (Appx15958-15995).

not meet the terms of the exclusion that had been drafted specifically to exclude those tires. In particular, Commerce held that the specific tire models had an "intended dual use" and therefore were not "designed and marketed exclusively" as temporary-use light truck spare tires, as required to satisfy the agreed-upon scope-exclusion language. As a result, Commerce included sales of the temporary-use light-truck spare-tire models in its calculation of the dumping margins for Cheng Shin.

Commerce's conclusion that Cheng Shin's temporary-use light-truck spare tires had an "intended dual use" was not supported by the evidence, which actually demonstrates that the tires were intended exclusively for use by a specific customer for specific light-truck models, and could not be sold by Cheng Shin to other customers for other purposes. Commerce's conclusion also contradicts the express intent of the terms of the exclusion. In such circumstances, Commerce's decision to treat Cheng Shin's light-truck spare tires as in-scope merchandise unreasonably and unlawfully changes the scope of the investigation, is unsupported by substantial evidence on the record, and is not in accordance with law.

<u>STATEMENT OF FACTS</u>

A. *Background*

In the early days of the automobile, tires were made of solid rubber or of rubber wrapped around wood. The tires were durable, but not terribly effective at absorbing shocks and bounces from bumpy roads.

In 1888, John Dunlop invented the "pneumatic" (air-filled) tire and, with it, the flat tire. As early automobile manufacturers mounted these pneumatic tires, motorists were faced with the daunting prospect of dismounting flat tires, patching any leaks, and then re-

mounting them.  In response to this dilemma, the first dedicated spare tire was invented in 1904.[3]

For much of the 20th century, spare tires for automobiles were more or less identical in dimension to the factory-issue tires mounted on the automobile's wheels.  However, in the mid-1970s, tire producers developed the concept of the temporary spare tire — smaller in size and with shallower treads — intended not to fully replace the flat tire, but instead only to allow the driver to drive to a tire store or service station where a new full-sized replacement could be obtained.[4]

Until recent years, temporary spares were largely limited to sedans (what are referred to colloquially as "cars").  Pick-up trucks continued, for the most part, to be sold with full-sized, full-treaded spare tires.[5]  However, major automakers have, in the last few years,

---

[3] *See, e.g.*, R. Reina, *Full Circle: The History of Tires*, Automoblog, www.automoblog.net/history-of-tires/ (last visited February 8, 2022); *Stepney Spare wheel, made for early cars*, BBC, www.bbc.co.uk/ahistoryoftheworld/objects/qPgTiS8fQ6SeIqZLvZVfXQ (last visited February 8, 2022).

The unhappy process of dismounting, patching, and remounting flat tires remain well-known to bicyclists, due to the obvious difficulties of carrying a spare tire on a bike.

[4] *See* J.P. Lawrence, *A New Approach to Spare Tires – Mini-Spare*, Presentation at the Automobile Engineering Meeting of the Society of Automotive Engineers, October 18-22, 1976.  (This paper is available for purchase at « saemobilus.sae.org/content/760742/ ».)  The impetus for development of the "temporary spare" was described as follows:

> The reason for a change to the spare tire is that reduced vehicle trunk space in smaller, lighter vehicles seems to be a definite part of our future. As a result, there is great pressure that something should be offered in place of the spare tire, at least for an interim period, until we are sure we can get along without it.

*Id.*

[5] *See* R. Montoya, *Spare Tires in New Cars: What You Need to Know*, Edmunds (Mar. 24, 2017), https://www.edmunds.com/car-buying/the-disappearing-spare-tire.html.

started to equip pick-up trucks with temporary spares in place of the traditional full-sized, full-treaded spares.

The U.S. industry standards set forth in the Tire Rim Association ("TRA") Year Book have not yet fully caught up to these recent developments. The TRA Year Book sets forth a number of tables that define the required characteristics (such as tire size, load index, and speed rating) of several "tire service types" — including regular-use passenger-car tires and regular-use light-truck tires.[6] It also recognizes that temporary-use spare tires for passenger cars represent a discrete "service type" (which it refers to as "'T' Type Spare Tires for Temporary Use on Passenger Vehicles" in the TRA) and defines the required characteristics for tires within that "tire service type."[7] However, the TRA Year Book does not yet identify a separate "service type" for temporary-use spares tires for light trucks.[8] Work on developing standards for such temporary spares is underway at the TRA but has not yet been completed.

### B. Treatment of Temporary Spares for Light Trucks in the Commerce Investigation

#### 1. The Petition

The initial petition on PVLT Tires from Taiwan filed by United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (hereinafter "Petitioner") explicitly excluded

---

[6] *See* Petitioner's May 13, 2020, Petition, Exhibit 7 at Tables P-1 and P-2 (Appx1276-1308, Appx80276-80308) and Tables LTM-4A, LTF-2, LT-2 (Appx1323-1372, Appx80323-80372).

[7] *Id.* at Tables PCT-1R and PCT-1B (Appx1309-1316, Appx80309-80316).

[8] *Compare id.* at 1-01 (Appx1267, Appx80267) *and* 2-01 (Appx1318, Appx80318) (identifying a separate category for temporary-use tires for passenger vehicles and not for light trucks).

"temporary use spare tires" intended for use on passenger vehicles from its scope.[9]

According to the petition, the excluded spare tires had the following characteristics:

> … tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics:
>
> > (a) The size designation and load index combination molded on the tire's sidewall are listed in Table PCT–1B ("T" Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book;
> >
> > (b) the designation "T" is molded into the tire's sidewall as part of the size designation, and;
> >
> > (c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81 MPH or a "M" rating.[10]

The petition did not initially address the treatment of "temporary use spare tires" intended for use on light trucks.

### 2. *The Initiation Notice*

Commerce's initiation notice adopted the exclusion of temporary-use spare tires proposed by the petition without modification.[11]  In accordance with Commerce's usual practice, the initiation notice invited parties to submit comments on scope issues within 20 days after issuance of the initiation notice.[12]  The initiation notice also invited parties to

---

[9] *See id*. at 11 (Appx1020, Appx80020).

[10] *Id*.

[11] *See Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam: Initiation of Less-Than-Fair-Value Investigation,* 85 Fed. Reg. 38854, 38859-60 (June 29, 2020) (Appx4108-4109).

[12] *See id.* at 38855 (Appx4104).

submit (by the same deadline) comments on "the key physical characteristics of the subject merchandise in order to report the relevant costs of production accurately, as well as to develop appropriate product-comparison criteria."[13]

### 3. *Comments on Scope*

Cheng Shin filed its comments on the proposed scope of the investigation within the deadline established by Commerce. In those comments, Cheng Shin identified three specific tire models that it was producing as temporary-use spare tires for light trucks, and asked that those models in particular, and temporary-use spare tires for light trucks in general, be excluded from the scope.[14] In this regard, Cheng Shin noted that all three of the light-truck spare tire models had the term "temporary use only" stamped on the sidewall.[15] In addition, Cheng Shin provided a detailed comparison of the characteristics of these three models with the characteristics of a similar-sized regular-use light-truck tire.[16] As demonstrated in that comparison, the light-truck temporary-use spare-tire models had a much shallower tread depth (5.5 to 6.2 millimeters) than the regular-use tire model (10.6 millimeters). The light-truck temporary-use spare-tire models also did not meet the wet-handling, snow-handling, treadwear, or noise requirements that applied to the regular-use tire model. Furthermore, Cheng Shin explained that light-truck temporary-use spare-tires do not meet the standards and safety requirements of regular-use tires that are set forth

---

[13] *Id.*

[14] *See* Cheng Shin's July 20, 2020, Scope Comments at 3-5 (Appx4370-4372).

[15] *See id*. at 4-5 (Appx4371-4372) and Attachment 1 (Appx4386-4389).

[16] *Id.* at 4-5 (Appx4371-4372).

Full-sized tires for light trucks tend to be larger than full-sized tires for passenger vehicles. Consequently, a reduced-size temporary spare intended for a light-truck may have the same dimensions as a full-sized tire intended for a passenger vehicle

by the National Highway Traffic Safety Administration and Department of Transportation.[17]  Based on these differences, Cheng Shin requested a blanket exclusion of "light truck spare tires that are stamped on the sidewall of the tire as temporary use."[18]

In response to Cheng Shin's scope comments, Petitioner agreed that the tires identified by Cheng Shin should be excluded from the scope of the investigation.[19]  Petitioner also agreed that temporary-use spare tires for light trucks should, as a general matter, be excluded from the scope.[20]  However, Petitioner expressed concern that the scope exclusion language proposed by Cheng Shin would be overbroad and might exclude tires other than the types that Cheng Shin had identified in its July 20 submission.[21]  As a result, Petitioner suggested revised scope-exclusion language modeled after the scope-exclusion language for passenger-vehicle temporary-use spare tires.[22]

In particular, Petitioner proposed using the same structure for the exclusion language by adding a similar *chapeau* ("tires designed and marketed exclusively as temporary use spare tires for…") and identifying the physical characteristics of temporary-use light-truck spare tires separately.[23]  With respect to the list of physical characteristics for the exclusion, Petitioner noted that, unlike the exclusion for temporary-use passenger-vehicle spare tires, temporary-use light-truck spare tires could not be defined based on a TRA "tire

---

[17] *Id*. at 8-9 (Appx4375-4376).

[18] *Id.* at 7 (Appx4374).

[19] *See* Petitioner's September 25, 2020, Scope Rebuttal (Appx8596-8610).

[20] *See id*. at 6 (Appx8601).

[21] *See id*. at 3-4 (Appx8598-8599).

[22] *Id*. at 5 (Appx8600).

[23] *Id.*

service type" because the TRA Year Book does not have a separate category for temporary-use light-truck spare tires.[24]  Accordingly, the scope exclusion language proposed by Petitioner defined temporary-use light-truck spare tires based on a list of physical characteristics without considering the TRA "tire service type."

After consulting with Petitioner and receiving Petitioner's approval, Cheng Shin submitted revised scope-exclusion language for temporary-use light-truck spare tires.[25]  In this regard, the revised scope-exclusion language submitted by Cheng Shin used the same structure proposed by Petitioner and did not modify the *chapeau*, but modified the list of specifications used to define light-truck spare tires.[26]  Significantly, the revised scope-exclusion language again omitted any reference to the TRA "tire service type" specifications.

  *4. Comments on Product Characteristics*

Commerce's normal practice is to identify product characteristics using a hierarchical coding system, in which each product within the merchandise under investigation is assigned a product-matching "control number" ("CONNUM") by concatenating a series of codes corresponding to key product characteristics.  In a previous investigation concerning PVLT Tires from China, Commerce had defined the first product characteristic as the "tire service type" for the particular tire model, as identified in the TRA Year Book for the

---

[24] *Id.*

[25] *See* Cheng Shin's December 10, 2020, Scope Exclusion Revision at 1 (Appx12293).  *See also* Petitioner's December 11, 2020, Response to Cheng Shin's Scope Request (Appx12300-12303).

[26] *See* Cheng Shin's December 10, 2020, Scope Exclusion Revision at 2 (Appx12294).

tire.[27]  The coding system used in the Chinese investigation identified three possible

options for this characteristic:

> 01 = Passenger Car
> 02 = Light Truck
> 03 = Special Trailer.[28]

In the investigation of PVLT Tires from Taiwan, Petitioner asked Commerce to use the

same product characteristic categories and codes that had been used in the investigation of

Chinese PVLT Tires.[29]

Cheng Shin also accepted that the product-characteristic coding for the new

investigation would largely follow the coding used in the investigation of Chinese PVLT

Tires.  However, Cheng Shin pointed out that the codes used to identify the "tire service

type" in the investigation of Chinese PVLT Tires, absent modification, would create

confusion in the investigation of Taiwanese PVLT Tires, because temporary-use spare tires

for light trucks had not (yet) been excluded from the scope.[30]  In that regard, temporary-use

light-truck spare tires do not fall under any of the "tire service type" classifications in the

TRA Year Book, because they differ in characteristics from the regular-use tires that the

passenger car, light truck, and special trailer "tire service type" categories are based on.[31]

---

[27] *See* Petitioner's July 20, 2020, Product Characteristics Comments, Attachment 1 at C-5 (Appx4227).

[28] *Id*.

[29] *See id*. at 2 (Appx4219).

[30] As noted above, the TRA Year Book does create a separate "Tire Service Type" for temporary-use spare tires for passenger vehicles.  Commerce's questionnaire did not establish a "Tire Service Type" code for that type of spare tire, because spare tires for passenger vehicles had been excluded from the scope from the outset.

[31] *See* Cheng Shin's July 20, 2020, Product Characteristics Comments at 2-3 (Appx4347-4348).

In order to prevent misunderstanding, Cheng Shin asked Commerce to modify the coding for the "Service Type" characteristic to include an additional, non-TRA, code for temporary-use spare tires for light trucks.[32]

In its response to these comments, Petitioner objected to the inclusion of a separate "tire service type" category for light-truck spare tires on the grounds that there may be "opportunities for manipulation" because there was "no definition" of the reduced tread depth of light-truck spare tires.[33]  On August 18, 2020, Commerce released the final version of the product-characteristic reporting requirements for the investigation.  These final product-characteristic reporting requirements did not include a separate "tire service type" category for light-truck spare tires as Cheng Shin had requested.[34]  Instead, Commerce's questionnaire followed the same approach taken in the investigation of PVLT Tires from China, and requested that the "tire service type" be reported in accordance with the following instructions:

| | |
|---|---|
| FIELD NUMBER 3.1: | Tire Service Type |
| FIELD NAME: | SERVICE_TYPE |
| DESCRIPTION: | Tire and Rim Association's (TRA) tire classification of the reported tire model as identified in the 2019 TRA Year Book. |
| NARRATIVE: | Indicate the tire's service type using the codes below |

---

[32] *See id.*

[33] *See* Petitioner's July 30, 2020, Product Characteristics Rebuttal Comments at 10 (Appx6097).

[34] *See* Commerce's August 18, 2020, Product Characteristics Comments, Attachment at 1 (Appx6937).

01 = Passenger Car
02 = Light Truck
03 = Special Trailer.[35]

Commerce's questionnaire did not indicate how respondents should report products (such as temporary-use spare tires for light trucks) that were *not* assigned a "tire service type" in the TRA Year Book.

At the time Cheng Shin filed its questionnaire response, Commerce had not yet ruled on Cheng Shin's request that temporary-use spare tires for light trucks be excluded from the scope of the investigation. Consequently, Cheng Shin had to include sales of such tires in its questionnaire response, even though it believed those tires should be outside the scope. And, it had to report product-characteristic codes (including the "Tire Service Type" code) for the model sold in each transaction using the codes identified by Commerce.

For these purposes, Cheng Shin identified the "tire service type" for the model sold in each transaction based on the characteristics used by the TRA (*i.e.*, tire size, load capacity, and speed rating) for each "tire service type" category.[36] Because its temporary-use light-

---

[35] *Id.*

[36] It should be noted that the "tire service type" was initially determined by Cheng Shin based on the classification under the European ETRTO standard (which was the standard under which the tire models were actually developed). *See* Cheng Shin's Case Brief at 6 (Appx15810). In this regard, the European tire standards (like the TRA in the United States) classify tires based only on tire size, load index, and speed rating without considering tread depth and other requirements for a particular use of the tire. Furthermore, the European tire standards (like the TRA standards in the United States) do not have a separate classification for temporary-use light-truck spare tires. Consequently, Cheng Shin's temporary-use light-truck spare-tire models would be classified as "passenger vehicle tires" under the European standards. In its case brief, Cheng Shin also explained that classification of the "tire service type" under the TRA standards (considering general characteristics such as size and load capacity) would not have required a change in its reporting. *See id.* at note 10 (Appx15810).

truck spare tire models had the same general characteristics as passenger-car tires identified in the TRA (*i.e.*, size and load capacity), Cheng Shin reported a code of "01" (for "passenger car") in the "Tire Service Type" field for its sales of temporary-use light-truck spare tires.

However, as mentioned, none of the TRA "tire service type" categories actually apply to the temporary-use light trucks spare tires, because the TRA "tire service type" categories are for regular-use tires. Consequently, in order to prevent confusion, Cheng Shin submitted a separate table that identified the tire "category" for the products within each control number. That table separately identified the temporary-use light-truck spare tires as a part of a separate "spare" tire category distinct from regular-use passenger car and light-truck tires.[37]

In addition, it should be emphasized that Cheng Shin's decision concerning the "tire service type" code to be reported for these tires was made before Commerce had settled on the scope exclusion language for temporary-use light-truck spare tires. Cheng Shin hoped at the time that all light-truck spare tires marked for "temporary use only" would be excluded. It did not expect the code reported in the "tire service type" field to be relevant to the decision of whether these tires would be included or excluded from the scope.

> 5. *Commerce's Preliminary Determination*

Commerce did not issue any decision on the question of whether temporary-use spare tires for light trucks were within the scope of the investigation until three months after Cheng Shin had been required to submit its sales listings reporting its U.S. and home-

---

[37] *See* Cheng Shin's September 25, 2020, Section B Response at Exhibit B-4.a (Appx8717-8723, Appx85440-85521) (identifying the temporary-use light-truck spare tires as "GSP: Ground Spare Product" in the "Category" column).

market sales (and the "Tire Service Type" for the model sold in each transaction). On

December 29, 2020, in conjunction with its preliminary determination of dumping margins

in the investigation, Commerce also released a preliminary decision concerning the scope

of the investigation. Commerce's preliminary scope decision adopted the revised scope-

exclusion language submitted by Cheng Shin without modification.[38] As a result, the

scope specifically excluded light-truck spare tires that met the following criteria:

> …tires designed and marketed exclusively as temporary use spare tires
> for light trucks which, in addition, exhibit each of the following
> physical characteristics:
>
> > (a) the tires have a 265/70R17, 255/80R17, 265/70R16,
> > 245/70R17, 245/75R17, 245/70R18, or 265/70R18 size
> > designation;
> >
> > (b) "Temporary Use Only" or "Spare" is molded into the tire's
> > sidewall;
> >
> > (c) the tread depth of the tire is no greater than 6.2 mm; and
> >
> > (d) Uniform Tire Quality Grade Standards ("UTQG") ratings are
> > not molded into the tire's sidewall with the exception of
> > 265/70R17 and 255/80R17 which may have UTQG molded
> > on the tire sidewall.[39]

Because this language followed Cheng Shin's proposal, which had been negotiated with

Petitioner to exclude the three specific tire models identified in Cheng Shin's initial scope

comments, Cheng Shin understood that its sales of those three specific models should be

excluded from the scope.

Instead, Commerce's preliminary calculations included Cheng Shin's sales of the

temporary-use light-truck spare tires in the calculation of the dumping margins for Cheng

---

[38] *See* Commerce's December 29, 2020, Preliminary Scope Memorandum at cmt. 3
(Appx12897-12898).

[39] *Id.*

Shin, without any explanation for the inclusion of those sales.[40]  Cheng Shin assumed that

the inclusion of these sales represented a simple oversight — *i.e.*, a ministerial error — and

asked Commerce to correct the mistake.[41]  In response, Commerce stated that the inclusion

of the sales of the temporary-use light-truck spare tires in the dumping-margin calculation

was intentional.  According to Commerce, the sales were treated as within the scope

because the code reported in the "tire service type" field for those sales indicated that the

models fell under the "passenger car" tire service type in the TRA Year Book, and thus

were not designed and marketed exclusively as temporary-use spare tires *for light trucks*.[42]

> 6. *Verification of the Characteristics of*
>    *Cheng Shin's Light-Truck Temporary Spares*

Following the preliminary determination, Commerce issued an additional

questionnaire to Cheng Shin requesting, *inter alia,* additional information regarding the

nature of the temporary-use light-truck spare tires.[43]  In response, Cheng Shin provided

copies of the purchase agreements and technical drawings for each tire model and a

---

[40] *See* Commerce's December 29, 2020, Preliminary Decision Memorandum (Appx12846-12861).

[41] *See* Cheng Shin's January 5, 2021, Ministerial Error Comments at 2-5 (Appx12929-12932, Appx94700-94703).

[42] *See* Commerce's February 3, 2021, Ministerial Error Memorandum at 6 (Appx13098, Appx94739).

[43] Due to the COVID-19 pandemic, Commerce was not able to conduct an on-site verification of Cheng Shin's questionnaire response.  Instead, Commerce conducted a "virtual" verification by issuing a questionnaire that requested the type of documentation that would be examined during an on-site verification.  The "in-lieu-of-verification" questionnaire issued to Cheng Shin also explicitly requested a detailed explanation and supporting evidence demonstrating that the light-truck spare tires Cheng Shin sold to the United States satisfied the requirements for exclusion.  *See* Commerce's February 25, 2021, In-Lieu-of-Verification Questionnaire for Cheng Shin at Question 7 (Appx13267-13268, Appx94818-94819).

statement from a [                    ] employee which confirmed that the tires were designed

for and sold exclusively to [                    ] as temporary-use spare tires for the

[                                        ] light-truck models.[44]  In addition, the

documentation provided by Cheng Shin demonstrated that the tires met each of the

physical characteristics listed in the exclusion.[45]  Finally, Cheng Shin also explained why

the sales were reported as having a "passenger car" tire service type, even though they

were actually sold to the customer exclusively for use as temporary-use light-truck spare

tires.[46]

---

[44] *See* Cheng Shin's March 8, 2021, In-Lieu-of-Verification Questionnaire Response at VE-10-VE-11 (Appx14648-14649, Appx97831-97832) and Exhibits VE-7-A and VE-7-B (Appx15556-15571, Appx100345-100360).

[45] As mentioned, the temporary-use light-truck spare tires that are excluded from the scope must satisfy the following characteristics.

    (a)  the tires have a 265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17, 245/70R18, or 265/70R18 size designation;

    (b)  "Temporary Use Only" or "Spare" is molded into the tire's sidewall;

    (c)  the tread depth of the tire is no greater than 6.2 mm; and

    (d)  Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which may have UTQG molded on the tire sidewall.

Cheng Shin explained and submitted documentation confirming that those criteria were satisfied at VE-13-VE-14 (Appx14651-14652, Appx97834-97835) and Exhibit VE-7-C (Appx15572-15578, Appx100361-100367) of its March 8, 2021, In-Lieu-of-Verification Questionnaire Response.

[46] *See* Cheng Shin's In-Lieu-of-Verification Questionnaire Response at VE-11-VE-13 (Appx14649-14651, Appx97832-97834).

7.   *Commerce's Final Determination*

In its final determination, Commerce again held that the temporary-use light-truck spare tires for which Cheng Shin had specifically requested exclusion did not qualify for exclusion under the scope language.  Commerce's final determination again relied primarily on the fact that Cheng Shin had reported sales of the tires in question using the "tire service type" code used for passenger-car tires.  In addition, Commerce claimed that the evidence on the record showed that the tires in question could be used for either light trucks or passenger cars.[47]  According to Commerce, this potential dual use meant that the tires did not satisfy the requirement in the *chapeau* of the exclusion language, which requires that the excluded tires be "designed and marketed exclusively as temporary-use spare tires for light trucks."[48]

STANDARD OF REVIEW

The court "shall hold unlawful any determination, finding, or conclusion found... to be unsupported by substantial evidence, or otherwise not in accordance with law."[49]  A determination is supported by substantial evidence if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[50]  Significantly, that determination must have considered "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"[51]

---

[47] *See* I&D Memo at 20 (Appx15977).

[48] *Id.*

[49] 19 U.S.C. § 1516a(b)(1)(B)(i).

[50] *Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F. 3d 1351, 1362 (Fed. Cir. 2021).

[51] *Id.  See also Universal Camera Corp. v. N.L.R.B.*, 340 U.S 474, 488 (1951).

Under that standard, the Court must examine the record as a whole and determine whether a "reasonable mind" would consider the evidence "adequate," after considering both the evidence supporting and detracting from the agency determination.

Furthermore, when Commerce makes a determination of whether merchandise is covered by the scope of an antidumping order, this Court has held that such a determination is "not in accordance with law if… {it} changes the scope of an order or interprets an order in a manner contrary to the order's terms."[52]  Commerce's interpretation of a scope exclusion is unlawful if it renders the scope "exclusion hollow and improperly changes the meaning of the exclusion."[53]

<u>ARGUMENT</u>

A.  *The Temporary-Use Light-Truck Spare-Tire Models Sold by*
    *Cheng Shin Meet the Technical Requirements for Exclusion*

As discussed above, the final scope language adopted by Commerce establishes four technical requirements that must be met for light-truck spare tires to be excluded from the scope:

(a)  the tires have a 265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17, 245/70R18, or 265/70R18 size designation;

(b)  "Temporary Use Only" or "Spare" is molded into the tire's sidewall;

(c)  the tread depth of the tire is no greater than 6.2 mm; and

---

[52] *Polites v. United States*, 755 F. Supp. 2d 1352, 1356 (Ct. Int'l Trade 2011) (internal quotations omitted) (citing *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) and *Duferco Steel, Inc. v. United States*, 296 F. 3d 1087, 1089 (Fed. Cir. 2002)).

[53] *Id.* at 1357.  *See also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331, 1352 (Ct. Int'l Trade 2016).

(d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which may have UTQG molded on the tire sidewall.[54]

Commerce has conceded that the light-truck spare tires that Cheng Shin sold to its U.S. customer met all of those requirements.[55]

The *chapeau* of the exclusion language also establishes an additional requirement — that the tires be "designed and marketed exclusively as temporary use spare tires for light trucks."[56] As discussed above, this language is modeled on the section of the scope description excluding spare tires intended for passenger vehicles, which was set forth in the original petition before the issue of excluding light-truck spare tires had been raised. Commerce's final determination seems to have interpreted the scope language concerning the two types of spare tires as establishing (1) that spare tires intended solely for passenger vehicles are excluded, (2) that spare tires intended solely for light trucks are excluded, but (3) that "dual use" spare tires intended for *both* passenger vehicles and light trucks are *included*.[57]

---

[54] *See* I&D Memo at 19 (Appx15976).

[55] *See id.* at 19-21 (Appx15976-15978). *See also* Cheng Shin's In-Lieu-of-Verification Questionnaire Response at VE-12-VE-14 (Appx14650-14652, Appx97833-97835) and Exhibit VE-7-C (Appx15572-15578, Appx100361-100367).

[56] I&D Memo at 19 (Appx15976).

[57] In the final determination, Commerce claimed that Cheng Shin's light-truck spare tires have an "intended dual use" as passenger-car tires. *See id.* at 20 (Appx15977). However, Commerce did not specify whether the "intended dual use" consisted of use as both a regular-use tire for passenger cars and as a temporary-use light-truck spare tire, or if the "intended dual use" instead consisted of use as both a temporary-use spare tire for passenger cars and as a temporary-use light-truck spare tire.

In our view, Commerce's interpretation is not required by the scope language, which does not explicitly address how "dual-use" spare tires should be treated. The record indicates that the language excluding light-truck spare tires was explicitly intended to extend the existing exclusion concerning passenger-vehicle spare tires to light-truck spare tires while taking into account the differences in dimensions between the two types of spares and also addressing the absence of a "tire service type" for light-truck spare tires in the TRA Year Book. The record does not identify any discussion of "dual use" spare tires prior to Commerce's final determination. Consequently, Commerce's assumption in its final determination that "dual use" spare tires are within the scope is not a fair reflection of the evidence or argument presented during the investigation.

It is not, however, necessary for the Court to address the issue of "dual use" spare tires in this appeal. As outlined below, the evidence is clear that the light-truck spare-tire models in question were "designed and marketed exclusively as temporary use spare tires for light trucks." Consequently, whether or not "dual use" spare tires are within the scope, the tire models at issue in this appeal are clearly excluded.

      B.   *The Evidence Demonstrates that Cheng Shin's*
            *Light-Truck Spare Tires Were "Designed and Marketed*
            <u>*Exclusively" as Temporary-Use Spare Tires for Light Trucks*</u>

The evidence on the record demonstrates that Cheng Shin's light-truck spare tires were "designed and marketed exclusively as temporary use light truck spare tires."

The purchase agreements and technical drawings indicate that the tires were *designed exclusively* as temporary-use light-truck spare tires. *First,* the purchase agreements for Cheng Shin's light-truck spare tires that were submitted to Commerce clearly state that Cheng Shin agreed to provide its U.S. customer with spare tires for specific light-truck

models.[58]  *Second,* the submitted purchase agreements and tire designs state that those tires

are spare tires for the identified light-truck models.[59]  *Third,* the technical drawings of the

tires show that the tires are marked for "Temporary Use Only."[60]  The evidence, taken as a

whole, establishes that the tires were designed exclusively as temporary-use spare tires for

light trucks.

   The evidence also indicates that the tires were *marketed exclusively* as temporary-use

light-truck spare tires.  In this regard, the purchase agreements and technical drawings are

labeled with the customer's trademark and state that the designs are the intellectual

property of the customer.[61]  Furthermore, Cheng Shin's customer confirmed that the tires

produced by Cheng Shin were designed and marketed exclusively as temporary-use spare

tires for the customer's light-truck models.[62]  In these circumstances, the evidence

establishes that Cheng Shin produced and sold the tires under a contract that specifically

identifies certain light trucks as the intended use of the tires, that the tires are exclusive to

Cheng Shin's U.S. customer, and that those tires, therefore, cannot be marketed by Cheng

Shin to any other U.S. customer for any other purpose.

---

[58] *See* Cheng Shin's In-Lieu-of-Verification Questionnaire Response at VE-10-VE-11 (Appx14648-14649, Appx97831-97832) and Exhibit VE-7-A (Appx15556-15569, Appx100345-100360) (pages 1 and 3 state that the "Reason for Issuing Contract/Amendment" is for "Architectural Parts All Trucks"; pages 2, 4, and 6 note the codes [                ] used by the customer that identify the tires are for specific truck models; pages 7 and 9 state that the tire is "TYPE: SPR").

[59] *Id.*

[60] *See id.* at Exhibit VE-7-C (Appx15572-15578, Appx100361-100367).

[61] *See id.* at Exhibit VE-7-A (Appx15556-15569, Appx100345-100358) (pages 7, 9, and 12 have the [    ] trademark and states [
            ]).

[62] *See id.* at Exhibit VE-7-B (Appx15570-15571, Appx100359-100360).

C. *Commerce's Conclusion that Cheng Shin's Tires Were Not*
   *"Designed and Marketed Exclusively" as Temporary-Use*
   <u>*Light-Truck Spare Tires is Not Supported by Substantial Evidence*</u>

In its final determination, Commerce relied on two lines of evidence to support its
conclusion that Cheng Shin's light-truck spare-tire models were designed and marketed for
use with both light trucks and passenger cars. *First,* Commerce asserted that Cheng Shin
itself had admitted that the tires had characteristics that overlapped with those of passenger
vehicles, because Cheng Shin reported the code for "passenger cars" as the "tire service
type" for sales of the relevant models. And *second,* Commerce asserted that the purchase
agreements between [                    ] and Cheng Shin confirmed that the tire models
might be used with passenger vehicles. As discussed more fully below, Commerce's
factual assertions are incorrect.

1. *Contrary to Commerce's Claims, Cheng*
   *Shin Did Not Report that the Light-Truck*
   <u>*Spare-Tire Models Have a Dual Use*</u>

As mentioned, Cheng Shin asked Commerce to modify its reporting requirements to
create a separate "tire service type" category for the temporary-use light-truck spare tires,
because none of the categories used by Commerce in previous proceedings concerning
PVLT Tires would properly cover Cheng Shin's spare-tire models.[63] Commerce refused.
Cheng Shin therefore had no choice but to report its tires under a category that did not
actually apply to them. Because Cheng Shin's temporary-use light-truck spare tires had
the same general characteristics (*i.e.*, size and load capacity) as regular-use passenger-car
tires identified in the TRA, Cheng Shin reported the code for "passenger car" in the "Tire

---

[63] *See* above at 10-14.

Service Type" field of its U.S. sales listing.[64]  At the same time, because the "Tire Service

Type" codes permitted by Commerce did not fully differentiate spare tires, Cheng Shin

also submitted a separate table that identified the tire "category" for the products within

each control number.  That table separately identified the temporary-use light-truck spare

tires as part of a separate "spare tire" category distinct from regular-use passenger car and

light-truck tires.[65]

At the time that Cheng Shin prepared its sales listing, it did not know what, if any,

scope exclusion language might be adopted by Commerce for temporary-use light-truck

spare tires.  Cheng Shin chose the "tire service type" category it reported for such tires in a

good-faith effort to provide information required by Commerce in the format demanded by

Commerce, even though Cheng Shin had already informed Commerce that its tires did not

actually fit within any of the categories that Commerce would allow.  In such

circumstances, it is unfair and unreasonable for Commerce to claim that Cheng Shin meant

to admit that its temporary-use light-truck spare tires were intended for use as passenger-

car tires.

Finally, it should be noted that the overlap in certain dimensions between certain

regular-use passenger-car tires and Cheng Shin's temporary-use light-truck spare tires does

not establish that the temporary-use light-truck spare tires were intended for use as regular-

use passenger-car tires.  As discussed above, the evidence on the record demonstrated that

the temporary-use spare tires differed from regular-use passenger-vehicle tires in key

---

[64] *See* above at note 36.

[65] *See* Cheng Shin's Section B response at Exhibit B-4.a (Appx8717-8723, Appx85440-85521) (identifying the temporary-use light-truck spare tires as "GSP: Ground Spare Product" in the "Category" column).

characteristics, including tread depth, that determine the potential usage of the tire.[66]  In

addition, Cheng Shin's temporary-use light-truck spare tires are precluded from being sold

as regular-use tires because they are stamped for "Temporary Use Only."[67]  Consequently,

while some characteristics of the light-truck spare tires did "overlap" with certain regular-

use passenger-car tires, the other differences in product characteristics meant that the light-

truck spare tires could not be used as regular passenger-car tires.  Commerce's assumption

to the contrary is inconsistent with the evidence.

> 2. *Contrary to Commerce's Claims, Cheng Shin's*
> *Purchase Agreements Do Not Indicate that the*
> *Light-Truck Spare Tire Models Have a Dual Use*

As mentioned, Commerce also claimed that Cheng Shin's purchase agreements

indicate that the light-truck spare tires could be used as either passenger-car or light-truck

tires.[68]  In support of that position, Commerce pointed to a chart provided in the purchase

agreement for one of the light-truck spare tires, which identified the load capacity

standards for the particular tire size if the tire were manufactured to be a passenger-car tire

---

[66] *See* above at 7-8.  *See also* Cheng Shin's Section B response at Exhibit B-4.a
(Appx8717-8723, Appx85440-85521) (demonstrating that the reported light-truck spare
tires (identified as "GSP" in the "Category" column) had lower tread depths compared to
regular-use passenger car tires of a similar size (identified as "PCR" in the "Category"
column)).

  The light-truck spare tires also differed from temporary-use spare tires intended for
passenger vehicles in both size and tread depth.  *See, e.g.*, Cheng Shin's July 20, 2020,
Scope Comments at 4-5 (Appx8596-8610).

[67] *See* Cheng Shin's Verification Questionnaire Response at Exhibit VE-7-C
(Appx15572-15578, Appx100361-100367).

[68] *See* I&D Memo at 20 (Appx15977) (stating that more detailed information was provided
in the Final Calculation Memorandum for Cheng Shin).

or light-truck tire under the European "ETRTO" standards.[69]  But the reference to load capacity under the ETRTO standards does not, by itself, establish that the tires have a dual use.  And, more importantly, a careful analysis of the chart in question demonstrates that it does not in fact show that Cheng Shin's light-truck spare tires have a dual use.

As an initial matter, it should be noted that Commerce has taken the position that the ETRTO standards cannot be used to determine the scope of this case, because the ETRTO standards apply to tires sold in the European market, and not the United States.[70]  Commerce's purported reliance on the ETRTO load capacity chart to determine whether Cheng Shin's tires meet the scope exclusion is plainly inconsistent with that position.

Furthermore, Commerce's conclusion that the chart in question indicates that the tires are suitable for dual use is rooted in a fundamental misunderstanding of the information in the table.  To begin with, the table simply reproduces the standard load capacity at different inflation pressures for tires with the particular size dimensions.  The identification of different load capacities for passenger-vehicle tires and light-truck tires that have the same size confirms that passenger-vehicle tires are different from light-truck tires that have the same nominal dimensions.  It does not purport to indicate that the light-truck tires can be used interchangeably with passenger-vehicle tires that have similar dimensions.

---

[69] *See* Commerce's May 21, 2021, Final Calculation Analysis for Cheng Shin at III.B. (Appx16029-16030, Appx100652-100653).

[70] *See* Commerce's Preliminary Scope Memorandum at 9 (Appx12895) (Commerce denied a scope exclusion for specialized off-road tires made to ETRTO specifications stating that "We disagree… that Commerce must make an exception for tires carrying a POR designation mark based on ETRTO specifications. The petitioner's concern of injury specifically includes products made to the TRA Year Book specifications, as those specifications address the domestic market the petitioner seeks to protect. To draft non-TRA Year Book exclusion language runs in direct contradiction to the intent of the petitioner.").

More importantly, even if the chart had showed that Cheng Shin's light-truck spare tire could meet the load capacity requirements for both a passenger car and light truck under the European ETRTO standards, it does not mean that the tire would meet the other product characteristics required for use as a passenger-car tire. As discussed above, the evidence on the record demonstrated that Cheng Shin's temporary-use light-truck spare tires differed from regular-use passenger-car tires in key characteristics, including tread depth, that determine the potential usage of the tire.[71] Nothing in the chart relied upon by Commerce indicates that Cheng Shin's temporary-use light-truck spare tires were equivalent to passenger-vehicle tires in those characteristics. Furthermore, Commerce's determination ignores the fact that Cheng Shin's temporary-use light-truck spare tires are precluded from being sold as regular-use tires because they are stamped for "Temporary Use Only."[72]

Finally, it should be noted that the evidence confirms that Cheng Shin's temporary-use light-truck spare tires could not be used as temporary-use spare tires for passenger vehicles under the TRA requirements, because they do not meet the size and tread depth requirements for passenger-vehicle spare tires defined by the TRA and are not marked with a "T" as required by the TRA.[73] As a result, the evidence on the record demonstrates that

---

[71] *See also* Cheng Shin's Section B response at Exhibit B-4.a (Appx8717-8723, Appx85440-85521) (demonstrating that the reported light-truck spare tires (identified as "GSP" in the "Category" column) for had lower tread depths compared to regular-use passenger car tires of a similar size (identified as "PCR" in the "Category" column).

[72] *See* Cheng Shin's Verification Questionnaire Response at Exhibit VE-7-C (Appx15572-15578, Appx100361-100367).

[73] *See* Petitioner's Scope Rebuttal at 5 (Appx8600). *See also* Cheng Shin's Scope Comments at 4-5 (Appx4371-4372).

Cheng Shin's light-truck spare tires do not have an intended or actual dual use as passenger-car tires.

This Court has previously held that a Commerce scope ruling that "failed to consider … the actual nature of the products it is considering" could not be sustained because it did not take "into account whatever in the record {that} fairly detracts from its weight."[74] Commerce's determination in this case suffers from a similar flaw. Commerce appeared to believe that, as long as it found some reference to passenger-vehicle tires in the contract documentation, it established that the tires in question had a dual use. But Commerce failed to recognize that a reference to industry standards for both passenger-vehicle and light-truck tires for *one* characteristic (load capacity) does not establish that the tire met the industry standards for both passenger-vehicle and light-truck tires for *all* characteristics. In these circumstances, Commerce's determination that Cheng Shin's temporary-use light-truck spare tires were designed and marketed for use as both passenger-vehicle and light-truck tires is unreasonable and unsupported by substantial evidence.

### D. Commerce's Failure to Exclude Cheng Shin's Light-Truck Spare Tires Unlawfully Changes the Scope of the Order

As discussed above, the language excluding temporary-use light-truck spare tires from the scope was negotiated between Petitioner and Cheng Shin in order to specifically address the three models of light-truck spare tires identified in Cheng Shin's initial scope comments.[75] Petitioner explicitly agreed that those light-truck spare tires should be

---

[74] *Shenyang Yuanda Aluminum Indus. Eng'g Co.*, 146 F. Supp. 3d at 1352 (internal quotations omitted) (finding that Commerce's scope decision was unreasonable because "Commerce has… entirely failed to consider an important aspect of the problem," *i.e.*, the actual nature of the products it is considering" and therefore, did not take "into account whatever in the record fairly detracts from its weight.").

[75] *See* above at 8-10.

excluded from the order.[76]  In fact, Petitioner admitted that the scope-exclusion language (including the *chapeau*) would "exclude specifically the tires Cheng Shin submits it is seeking to have excluded without creating an overbroad exclusion that could also cover other, unintended merchandise."[77]  Commerce then adopted the language worked out by Cheng Shin and Petitioner without modification based on its practice of providing "ample deference to the petitioner with respect to the products for which it seeks relief in these investigations."[78]

This Court has held that a determination on whether merchandise is covered by the scope of an antidumping order is "not in accordance with law if… {Commerce} changes the scope of an order or interprets an order in a manner contrary to the order's terms."[79]  Furthermore, this Court has also explained that Commerce may not interpret scope language such that it improperly changes the meaning of the exclusion.[80]  The evidence is clear in this case that, whatever else it may have done, the scope language was intended to specifically exclude the three temporary-use light-truck spare-tire models identified in Cheng Shin's initial scope comments.  In these circumstances, it is simply unreasonable to interpret the exclusion language worked out by Cheng Shin and Petitioner and adopted

---

[76] *See* Petitioner's Scope Rebuttal at 4-5 (Appx8599-8600).

[77] *Id.* at 6 (Appx8601).  It should be noted that Petitioner's statement was in reference to the revised scope language set forth in its September 25 submission.  Nevertheless, the final exclusion language was approved by Petitioner and reflected Petitioner's suggested language with only minor edits to the list of physical characteristics and not the *chapeau*.

[78] *See* Commerce's Preliminary Scope Memorandum at cmt. 3 (Appx12897-12898).

[79] *Polites*, 755 F.Supp.2d at 1356 (internal quotations omitted) (citing *Allegheny Bradford Corp.*, 342 F.Supp.2d at 1183 and *Duferco Steel, Inc.*, 296 F.3d at 1089).

[80] *See id.*

without modification such that the specific models that were identified by Cheng Shin for exclusion in its initial scope comments are within the scope. Accordingly, Cheng Shin's temporary-use light-truck spare tires should have been treated as out-of-scope merchandise and excluded from Cheng Shin's margin calculation.

C<small>ONCLUSION</small>

For the foregoing reasons, we respectfully request that the Court grant Cheng Shin's motion for judgment on the agency record, and remand this matter to Commerce for disposition in a manner consistent with the judgment of this Court.

Respectfully submitted,

/s/Jeffrey M. Winton

Jeffrey M. Winton
Michael J. Chapman
Amrietha Nellan
Vi N. Mai
W<small>INTON</small> & C<small>HAPMAN</small> PLLC
1900 L Street, N.W., Suite 611
Washington, D.C. 20036
(202) 774-5500

Attorneys for Cheng Shin Rubber Ind. Co. Ltd.

February 11, 2022

<u>C</u>ERTIFICATE OF <u>C</u>OMPLIANCE

Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 7,716 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.

/s/   Jeffrey M. Winton

February 11, 2022