UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant,<br>    and<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,<br><br>        Defendant-Intervenor. | Court No. 21-00398 |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO THE DECEMBER 13 MOTION TO MODIFY THE
STATUTORY INJUNCTION TO ENJOIN LIQUIDATION OF ENTRIES

Pursuant to Rule 7 of the United States Court of International Trade ("CIT"), 19 U.S.C. § 1516a(c), and the Court's November 5, 2021, Order, Plaintiff Cheng Shin Rubber Ind. Co. Ltd. ("Cheng Shin") submits its reply to Defendant United States' January 18, 2022, response in opposition to Cheng Shin's December 13, 2021, motion to modify the injunction.

ARGUMENT

A. *Defendant Has Failed to Explain Why the Requirements for a Preliminary Injunction Are Met to Protect against the Unlawful Liquidation of Entries of Non-Scope Merchandise Imports on June 30, But Not for Entries of Such Merchandise on July 1*

Upon Defendant's consent, this Court previously issued an injunction to prevent liquidation of any entries made on or before June 30, 2022, pending the final decision in

this case. Defendant has, however, contended that an injunction is not appropriate with respect to entries made on or after July 1, 2022.

Tellingly, Defendant has made no effort to justify this disparate treatment. The issue in this appeal is whether the Department of Commerce properly included certain spare tires within the scope of its investigation and the resulting antidumping order. The legal merits of Cheng Shin's arguments are no different for entries prior to or after June 30. The harm to Cheng Shin if its entries of those spare tires are liquidated before this appeal is concluded is the same before and after June 30. The balance of hardships and the public interest in preventing unlawful liquidations would be the same for entries before and after June 30.

In reality, the only difference between an entry of such spare tires on June 30 and an entry of identical tires on July 1 is that a June 30 entry will fall in Commerce's first administrative review period, while a July 1 entry will fall in Commerce's second administrative review period. Defendant has not attempted to explain why that difference has any impact on the factors normally considered by the Court in assessing whether a preliminary injunction is warranted — other than to claim that the risk of liquidation of entries on July 1 is not "imminent."[1] But the realities of the Court schedule and the weight of the case-law does not support such an argument.[2] Given the current briefing schedule,

---

[1] *See* Defendant's January 18, 2022, Response in Opposition to Cheng Shin's Motion to Modify Injunction at 14-15 (ECF No. 40) (hereinafter "Defendant's Response").

[2] Defendant's argument is based on one past case involving an appeal of a Commerce determination in an investigation, in which the Court stated that there is not a present threat of immediate liquidation of entries after the first administrative review since the government consents to future modification of the injunctive order. *See id.* at 14 (citing *Beijing Tianhai Indus. Co., Ltd. v. United States*, Court No. 12-00203, ECF No. 59).

(continued)

which calls for the motion for oral argument to be filed on May 31, there is no realistic chance that the Court will be able to issue a final decision on the merits before June 30.[3] Consequently, it is highly likely that, if the injunction is not extended now, Cheng Shin will have to come before the Court at some point on or after July 1 to seek an injunction against liquidation of actual entries of merchandise.

Defendant's position is also contrary to the government's practice concerning appeals of scope-ruling determinations. As indicated in Cheng Shin's complaint and in its subsequent motion for judgment on the administrative record, Cheng Shin filed this appeal to challenge Commerce's determination that certain spare tires are properly within the scope of the antidumping order.[4] This appeal is, therefore, essentially an appeal of a scope

---

(continued)
   However, this Court's more recent decisions in *Mid Continent* and *Mosaic Company* have specifically rejected the argument presented by Defendant. As the Court explained in those cases:

> Although Commerce administratively suspends liquidation of entries during ARs, not all entities seek AR. Moreover, an administrative suspension of liquidation may terminate during judicial review…. {I}ssuing the injunction was "proper at this time, even if the threat of injury is not 'imminent' in the same sense it is following an administrative review[,]" because it would ensure that movants would receive the "full benefit" of their judicial challenge and possibly "obviate" the need for future administrative reviews.

*Mid Continent Steel & Wire, Inc. v. United States*, 427 F. Supp. 3d 1375, 1382–83 (Ct. Int'l Trade 2020) (citing *Husteel Co. v. United States*, 34 F. Supp. 3d 1355, 1360 (Ct. Int'l Trade 2014). *See also Mosaic Co. v. United States*, 540 F. Supp. 3d 1330, 1335 (Ct. Int'l Trade Oct. 4, 2021) ("The court agrees with the reasoning of Mid Continent, and the principles upon which it is based…").

[3] *See* Court's November 17, 2021, Scheduling Order (ECF No. 36).

[4] *See* Cheng Shin's September 8, 2021, Complaint at 6 (ECF No. 15) and Cheng Shin's February 11, 2022, Rule 56.2 Brief at 2-3 (ECF No. 43).

ruling by Commerce.[5] In appeals of scope rulings, the government routinely gives consent to, and the Court typically grants, injunctions preventing liquidation of all entries, *without an end date*, of all merchandise covered by the scope ruling until a final and conclusive court determination has been reached.[6] Defendant has not attempted to explain why the treatment of imports that are subject to an appeal concerning the scope of the order should differ depending on whether that issue arose as part of Commerce's final determination in an investigation or in a separate scope-ruling proceeding decided after the order was issued.

In short, Defendant's objection to an injunction that will prevent liquidation of all entries that might be affected by Commerce's determination that Cheng Shin's spare tires are within the scope of the order does not appear to have any legitimate justification. In these circumstances, the Court should modify the injunction to ensure that Cheng Shin's right to have its appeal of the scope issue decided before its entries may be liquidated.

B. *Plaintiff Applied the Correct Standard of Review for a Motion to Modify an Injunctive Order*

Rather than contest the merits of the modification requested by Cheng Shin, Defendant has relied primarily on procedural objections to Cheng Shin's motion. As discussed below, however, those objections are based on misstatements of the relevant legal principles. Cheng Shin's December 13 request for modification of the existing

---

[5] *See* 19 C.F.R. § 351.225(i)(1) ("the Secretary may… address scope issues in another segment of the proceeding").

[6] Copies of the Court's orders granting an injunction against liquidation in a scope ruling appeal that was made pursuant to a motion for preliminary injunction that set forth the "four-factor" analysis and in a scope ruling appeal that was made pursuant to a Form 24 application are provided in the Attachment to this submission.

injunction complied with the requirements of the Court's rules and satisfied the standards established by this Court for such modifications.

>    1.   *The Court Has Separate and Distinct Standards
>         for Granting a Modification of an Injunctive Order*

To obtain an injunction against liquidation during the pendency of an appeal, parties must file either a motion for preliminary injunction or a Form 24 application for statutory injunction upon consent.[7] To evaluate a motion for preliminary injunction, the Court applies the "four-factor test," which considers (1) whether the applicant will suffer irreparable harm absent an injunction; (2) whether the applicant is likely to succeed on the merits, (3) whether the balance of hardships favors the applicant; and (4) whether an injunction is in the public interest.[8] In addition, if a party files a motion for preliminary injunction 30 days after service of the complaint, the Court's rules also require a showing of good cause.[9]

After the Court has issued an injunction (whether in response to a motion for preliminary injunction or to a Form 24 application), the Court may use its equitable powers to modify that order.[10] In this regard, the Court has applied two different criteria to

---

[7] *See, e.g.*, CIT Rule 56.2(a) and Rule 56.2 Practice Comment at 211.

[8] *See, e.g.*, *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

[9] *See* CIT Rule 56.2(a) ("Any motion for a statutory injunction, or a Form 24 proposed order for a statutory injunction upon consent, to enjoin the liquidation of entries that are the subject of the action *must be filed by a party to the action within 30 days after service of the complaint, or at such later time, for good cause shown*.").

[10] *See, e.g.*, *Clearon Corp. v. United States*, 34 C.I.T. 970, 979 (2010) (the Court explained that it had equitable powers to modify the statutory injunction entered pursuant to a motion for preliminary injunction); and *YC Rubber Co. (N. Am.) LLC v. United States*, 415 F.
(continued)

determine whether to modify an injunction: (1) whether the modification is necessary to achieve the injunctive order's intended purpose,[11] or (2) whether changed circumstances render the current injunction inequitable.[12] As demonstrated in the Court's past cases, under both standards the Court does not require an additional showing of good cause to modify an existing injunction or that the requested modification meets the "four-factor test."[13] In addition, the Court's past decisions demonstrate that each standard for granting a modification is distinct from each other.[14] Therefore, the Court may grant a motion to modify under either basis — if modification is necessary to achieve the injunctive order's intended purpose *or* changed circumstances render the current injunction inequitable.

### 2. Defendant's Procedural Objections to Cheng Shin's Are Without Merit

In its response to our motion to modify the injunction, Defendant has asserted that the Court's rules require a showing of good cause, and that our motion should be denied

---

(continued)
Supp. 3d 1240, 1243-46 (Ct. Int'l Trade 2019) (the Court explained that it had equitable powers to modify the statutory injunction entered pursuant to a Form 24 application).

[11] *See, e.g.*, *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1191 (Fed. Cir. 2009); *Clearon Corp. v. United States*, 34 C.I.T. 970, 717 F. Supp. 2d 1366 (2010); and *YC Rubber*, 415 F. Supp. 3d at 1245 ("…the court has equitable powers to modify an injunction to achieve its intended purpose").

[12] *See, e.g.*, *SKF USA Inc. v. United States*, 28 C.I.T. 170, 182 (2004) and *Ad Hoc Shrimp Trade Action Comm. v. United States*, 562 F. Supp. 2d 1383, 1388 (Ct. Int'l Trade 2008) ("The court has inherent power and discretion to modify injunctions for changed circumstances.").

[13] *See above* at notes 11 and 12.

[14] *Compare Agro Dutch*, 589 F.3d at 1192-94 *and Ad Hoc Shrimp*, 562 F. Supp. 2d at 1388-89.

because it failed to make such a showing.[15]  But Defendant's assumption is based on a fundamental mistake of law.  The Court's rules only require a showing of good cause if the initial request for an injunction is untimely.[16]  They do not require such a showing for a motion to modify an existing injunction.

Defendant also asserts that a motion to modify must allege and satisfy the "four-factor test" used for the initial issuance of an injunction, and that our motion should be denied because it failed to make such a showing.[17]  But Defendant's argument, again, is without merit.  Defendant mistakenly relies on cases that involve motions to establish a preliminary injunction in the first place, and not to requests to modify an existing injunction.[18]  As explained above, when the Court considers a motion to modify after an injunction is in place, the Court does not revisit the "four-factor test" but applies a different set of standards to determine whether a modification of the injunctive order is appropriate.

Finally, Defendant contends that a motion to modify an injunction must demonstrate that changed circumstances exist warranting the modification.[19]  But, Defendant has, again, misstated the relevant precedent.  The cases on which Defendant relies involved situations

---

[15] *See* Defendant's Response at 8-9.

[16] *See* CIT Rule 56.2(a).

[17] *See* Defendant's Response at 7-8.

[18] *See id*. at 7 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *Fuyao Glass Indus. Grp. Co. v. United States*, 27 C.I.T. 1321, 1323 (2003); and *Unicatch Indus. Co. v. United States*, No. 20-00079, Slip. Op. 21-117 (Ct. Int'l Trade Sept. 14, 2021)).

[19] *See id*. at 8.

in which parties requested modification due to changed circumstances.[20]  They did not involve situations in which the modification was sought because the existing injunction did not accomplish the intended purpose.

### 3. The Modification Proposed by Cheng Shin Is Necessary to Accomplish the Intended Purpose of the Injunction

As explained in Cheng Shin's December 13 motion, modification of the statutory injunction currently in place in this case is necessary in order to accomplish the intended purpose of the injunction.  This Court has previously recognized that the intended purpose of an injunction in a case challenging an antidumping duty determination by Commerce is to maintain the status quo as of the time the injunction was entered.[21]  The Court has explained that, because there is no statutory or regulatory basis to permit reliquidation of entries, an injunction to forestall liquidation of all unliquidated entries covered by Commerce's determination is required to secure the full benefits of judicial review.[22]  Because the Commerce determination that is the subject of this appeal applies to all entries of PVLT tires produced or exported by Cheng Shin on or after January 6, 2021, there is a risk that these PVLT tires will be assessed antidumping duties under the current injunction.  Therefore, to maintain the status quo and achieve the intended purpose of the injunction for

---

[20] *Id.* (citing *SKF USA Inc. v. United States*, 316 F. Supp. 2d 1322, 1336 n.19 (Ct. Int'l Trade 2004); *SolarWorld Ams., Inc. v. United States*, 279 F. Supp. 3d 1343, 1347 (Ct. Int'l Trade 2017); and *Ad Hoc Shrimp Trade Action Comm. v. United States*, 562 F. Supp. 2d 1383, 1388 (Ct. Int'l Trade 2008)).

[21] *See YC Rubber*, 415 F. Supp. 3d at 1245.

[22] *See Mid Continent Steel & Wire, Inc. v. United States*, 427 F. Supp. 3d 1375, 1382 (Ct. Int'l Trade 2020).

this appeal, a modification of the statutory injunction to include merchandise that enters after June 30, 2022, is necessary.

Defendant suggests that the principle set forth in *Agro Dutch* — which holds that the Court may modify an injunction to achieve its intended purpose — is limited to situations in which an erroneous liquidation has occurred.[23] However, that suggestion, is not supported by the court's decision in that case. In *Agro Dutch*, the initial injunction "contained a grace period delaying the effective date of the injunction until five days after it was served on the appropriate government officials."[24] The Federal Circuit determined that the five-day grace period "was added only to ensure against subjecting Customs officials to contempt sanctions for an inadvertent liquidation {and}… was not intended to give the government free rein to liquidate the subject entries before the injunction took effect."[25] Accordingly, the Federal Circuit upheld the CIT's decision to amend the injunction to eliminate the five-day grade period.[26]

In addition, because there had been an erroneous liquidation during the grace period, the Federal Circuit in *Agro Dutch* agreed that the CIT had properly exercised its discretion to order reliquidation of those entries.[27] Nothing in the Federal Circuit's decision in that

---

[23] *See* Defendant's Response at 9-10.

[24] *Agro Dutch*, 589 F.3d at 1192-93.

[25] *Id*. at 1193.

[26] *See id*.

[27] *See id.* at 1193-94 ("We have observed that the rule of *Zenith* is designed to promote finality for antidumping duties and related liquidations… Granting relief in this case is unlikely to give rise to any real uncertainty because the parties specifically contemplated that Agro Dutch's challenge to the Final Results would go forward. No valid interest in

(continued)

case requires that there be an erroneous liquidation to modify the injunction. Instead, because the terms of the injunction themselves did not encompass all entries that should have been protected from liquidation during the pendency of the appeal, the Federal Circuit held that this Court properly exercised its power to correct the "error" and achieve the intended purpose of the injunction.

In this case, the current injunction covers entries of subject merchandise from January 6, 2021, (*i.e.*, the date of the preliminary determination in the investigation) through June 30, 2022 (*i.e.*, the end date of the first review period). However, as mentioned, Commerce's determination in the investigation that is the subject of this appeal applies to all entries of PVLT tires produced or exported by Cheng Shin on or after January 6, 2021. Therefore, under the current terms of the injunction, any entries of Cheng Shin's tires after June 30, 2022, are subject to possible liquidation and assessment of antidumping duties. As a result, consistent with *Agro Dutch*, the injunction should be modified to eliminate the June 30, 2022 end date such that the injunction applies to all entries from January 6, 2021, onwards, and achieves the intended purpose of preventing liquidation of any entries that may be affected by the outcome of this appeal.

    C.    *The Requested Modification is Also Consistent with the "Four-Factor Test" that Defendant Has Proposed*

Even if the "four-factor test" used to evaluate a motion for preliminary injunction were to apply to Plaintiff's motion to modify the injunction, Defendant has failed to establish that the requested modification does not meet that standard.

---

(continued)
finality is served by foreclosing judicial review in a case such as this one, where the parties and trial court agreed that finality was not warranted, and where an injunction was entered for the very purpose of preventing the antidumping duty from becoming final.").

In both *Mid Continent* and *Mosaic Company*, the government offered the same arguments against an "indefinite" injunction that it has presented in this case.[28] The Court in those cases rejected Defendant's argument, and held that the "four-factor test" used to determine whether a preliminary injunction should be granted was satisfied because (1) the danger of liquidation pending judicial review of an investigation constitutes irreparable harm;[29] (2) the plaintiff had raised serious and substantial questions concerning the final determination on appeal and the government has made no argument that any of the claims are dubious;[30] (3) the balance of hardship favors the plaintiff because the court perceives no hardship to the government from the granting of the motion;[31] and (4) the public interest is served by preserving a plaintiff's right to meaningful judicial review of an agency action by means of a statutory injunction that covers all entries that are affected by the decision being contested.[32]

The Court's holding regarding three of the four factors (*i.e.*, irreparable harm, balance of hardship, and public interest) are generally applicable to all appeals of investigations. And, with respect to the last factor (*i.e.*, likelihood of success), Defendant has not made any arguments that would render "dubious" Cheng Shin's claim that Commerce's determination improperly included certain temporary light-truck spare tires produced by

---

[28] *Compare Mosaic Co.*, 540 F. Supp. 3d at 1335-1337 *and* Defendant's Response at 13-14 and 17-20.

[29] *See Mosaic Co.*, 540 F. Supp. 3d at 1335-36.

[30] *Id*. at 1336.

[31] *Id*.

[32] *Id*. at 1337.

Cheng Shin for a U.S. customer as in-scope merchandise. Accordingly, under the "four-factor" analysis in *Mid Continent* and *Mosaic Company*, the injunction in this case should be modified to cover all entries without an end date.

Defendant attempts to distinguish those cases by arguing that the decision in *Mid Continent* should be limited to the unique circumstances of that case, and that the decision in *Mosaic Company* improperly stated that statutory injunctions are not extraordinary remedies. Defendant asserts, instead, that the Court should rely on its decision is *Fuyao Glass*. Defendant's arguments are unavailing.

First, Defendant suggests that the Court's decision in *Mid Continent* to grant an injunction that covered all entries without an end date was due to the "exceptional circumstances of that litigation" in which the plaintiff sought an injunction "five years after the litigation commenced… and only after the first two administrative reviews were completed and two additional reviews were in the process of being completed."[33] That is incorrect. The Court in *Mid Continent* made clear that the appropriate duration of an injunction for an appeal of an investigation is not dependent on the administrative review process.[34] Indeed, the Court explained that because the "potential harm flows from the

---

[33] Defendant's Response at 15.

[34] *Mid Continent*, 427 F. Supp. 3d at 1384 ("If, following Commerce's remand redetermination, the ADD Order is revoked, Taiwan Plaintiffs that have not participated in the ARs, or those that choose not to challenge the final results of an AR, will have no recourse to reimbursement for duties paid on liquidated entries. Likewise, if judicial review of an AR concludes without an injunction in the investigation, entries will be subject to liquidation in short order. Securing the full benefits of judicial review of the Final Results should not require participation in each AR. Otherwise, Taiwan Plaintiffs who fail to seek review will continue to face the risk that their entries will be liquidated at a rate that ultimately proves to be wrongful. Requiring Taiwan Plaintiffs to traverse this route would not only risk denying Taiwan Plaintiffs the full benefits of judicial review, it would create
(continued)

results of the investigation" an injunction that covers all entries of merchandise would "not only safeguard…. Plaintiffs' interests {in an appeal of an investigation, but} may even obviate the need for future ARs."

In addition, the Court's decision in *Mosaic Company* confirms that the *Mid Continent* decision is not limited to the specific procedural standpoint of that case. In *Mosaic Company*, the defendant filed its motion for preliminary injunction within 30 days of commencing the appeal of the investigation.[35] Accordingly, no administrative review had been initiated by Commerce at the time the Court considered the motion. Despite the different procedural situations of the cases, the Court explained that it "agree{d} with the reasoning of *Mid Continent*, and the principles upon which it is based," and granted an injunction that covered all entries until a final and conclusive Court decision had been reached.[36]

Next, Defendant attempts to distinguish the decision in *Mosaic Company*, on the ground that, the Court's decision in that case incorrectly stated that a statutory injunction is

---

(continued)
perverse incentives to challenge, and seek judicial review of, each of Commerce's AR determinations. A litigant without a good faith basis to believe that an agency's AR determination was unreasonable on the record would be hard-pressed not to challenge the determination in court in order to fully preserve the remedy that would flow from a successful challenge to the initial investigation. True, a respondent could seek an injunction against liquidation after it decides not to seek judicial review of an AR, but the court fails to see why doing so should be required.").

[35] *See Mosaic Co.*, 540 F. Supp. 3d at 1332 (indicating that the defendant had filed its complaint on June 4, 2021, and filed its motion for preliminary injunction on July 2, 2021).

[36] *Id*. at 1335.

not an extraordinary remedy.[37] However, that statement is the Court's decision was irrelevant to its analysis and ultimate holding. In fact, the Court in *Mosaic Company* applied the "four-factor" analysis used to evaluate any motion for preliminary injunction.[38] And, based on that analysis, the Court held that the appropriate time period for an injunction in an appeal of a determination in an investigation is the duration of the appeal and not the end date of the first administrative review.[39] In these circumstances, there is no reason for the Court to deviate from the determination in *Mosaic Company*.

Finally, Defendant asserts that the case that is "more instructive with comparable facts" to the case at hand is *Fuyao Glass*.[40] That claim is plainly incorrect. In *Fuyao Glass*, the plaintiff sought a preliminary injunction to prevent liquidation of entries of merchandise late in its appeal of an investigation.[41] By that point, the first administrative review had begun, and the plaintiff had already requested a review.[42] Therefore the entries for which the plaintiff sought a preliminary injunction were already subject to a suspension of liquidation due to the plaintiff's participation in the administrative review.[43] In those circumstances, the Court stated that the irreparable harm was only a "possibility {rather}

---

[37] *See* Defendant's Response at 19.

[38] *See Mosaic Co.*, 540 F. Supp. 3d at 1333-37.

[39] *See id.* at 1337.

[40] Defendant's Response at 16.

[41] *Fuyao Glass Indus. Grp. Co. v. United States*, 27 C.I.T. 1166, 1168-69 (2003).

[42] *See id.*

[43] *See id.* at 1170.

than a present threat" because the plaintiff's entries would only be at risk of liquidation if it decided to withdraw its request for review, and it therefore denied plaintiff's request for a preliminary injunction.[44]

The situation in this case is exactly opposite. In this case, no review has begun and there is no injunction or other instruction in place that would protect Cheng Shin's imports of PVLT Tires that enter after June 30, 2022, from liquidation. Therefore, there is a present and actual threat of irreparable harm to Cheng Shin if the injunctive order is not amended to include entries after that date. That threat has been recognized by the Court's decisions in cases in which the facts are actually comparable to this case. As mentioned, *Mosaic Company* involved an appeal of a final determination of an investigation. In that case, the defendant sought a preliminary injunction early in the proceeding. As a result, the first administrative review had not started, and the defendant's entries were not suspended from liquidation through the review process. In *Mosaic Company*, the Court held that the injunction should cover all affected merchandise, including those that will enter after the end of the first review period, because the "harm already exists, having arisen upon the publication" of the order.[45] Therefore, consistent with *Mosaic Company*, the injunction for this appeal of an antidumping investigation should be modified to cover all entries for the duration of the appeal.

---

[44] *Id.* 1170.

[45] *Mosaic Co.*, 540 F. Supp. 3d at 1336-37.

<u>REQUEST FOR RELIEF</u>

In light of the foregoing, Cheng Shin respectfully requests that the Court grant Cheng Shin's December 13 motion and modify the injunction pursuant to the terms set forth in the proposed Order included in that submission.

          Respectfully submitted,

          <u>/s/ Jeffrey M. Winton</u>
          Jeffrey M. Winton
          Amrietha Nellan

          WINTON & CHAPMAN PLLC
          1900 L Street, N.W. Suite 611
          Washington, D.C. 20036
          (202) 774-5500

          Attorneys for Cheng Shin Rubber Ind. Co. Ltd.

February 22, 2022