# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> *Defendant-Intervenor.* | **PUBLIC VERSION** <br><br> Court No. 21-00398 <br><br> Business Proprietary Information Deleted from Brackets on Pages 6-8, 11, 13, and 14 |

## DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Roger B. Schagrin
Elizabeth J. Drake
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

April 12, 2022

Public Version

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ...........................................................................1

I.      Administrative Determination Under Review .................................................................. 1

II.     Issues Presented For Review ........................................................................................... 2

STATEMENT OF FACTS ............................................................................................................ 2

SUMMARY OF ARGUMENT .................................................................................................... 7

ARGUMENT ................................................................................................................................. 9

I.      Standard Of Review ........................................................................................................ 9

II.    Commerce's Determination Not To Exclude Alleged "Out-Of-Scope" Tires From Cheng Shin's Margin Calculation Is In Accordance With Law And Supported By Substantial Evidence ........................................................................................................................ 10

        A.    Commerce Reasonably Relied on Cheng Shin's Own Reporting in its Questionnaire Responses to Find the Tires Were Not Out-of-Scope .................. 10

        B.    Commerce's Determination that the Tires Were Not Designed and Marketed Exclusively for Light Trucks Is Supported by Substantial Evidence .................. 13

        C.    Commerce Did Not Unlawfully Change the Scope of the Order ........................ 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Altx, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004) .................................................................. 9

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ................ 9, 10

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ................................................................ 9

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1996) ....................................................................... 9

*FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293 (2003) ...................................................... 9

*Huvis Corp. v. United States*, 525 F. Supp. 2d 1370 (Ct. Int'l Trade 2007) ................................... 9

*Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056 (Fed. Cir. 2001) ........................... 9

*Nat'l Organization of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 809 F.3d 1359 (Fed. Cir. 2016) ....................................................................................................................................... 10

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) ........................................... 9

*Timken Co. v. United States*, 354 F.3d 1334 (Fed. Cir. 2004) ...................................................... 10

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) ...................................................................... 10

**Statutes**

19 U.S.C. § 1516a ............................................................................................................................ 9

Defendant-Intervenor the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC ("USW") respectfully submits this response in opposition to the motion for judgment on the agency record filed by Plaintiff Cheng Shin Rubber Ind. Co. Ltd. ("Cheng Shin") in the above-captioned action. Cheng Shin contests one aspect of the U.S. Department of Commerce's ("Commerce") final determination in the antidumping investigation of passenger vehicle and light truck ("PVLT") tires from Taiwan.[1] Specifically, Cheng Shin challenges Commerce's determination not to exclude certain alleged "out-of-scope" tires from its dumping calculations for Cheng Shin. The USW fully supports Commerce's decision on this issue and requests the Court to sustain the final determination in its entirety. As explained below, the Court should deny Cheng Shin's motion for judgment on the agency record because it has failed to demonstrate that Commerce's final determination is unsupported by substantial evidence or otherwise not in accordance with law.

**STATEMENT PURSUANT TO RULE 56.2**

**I.     ADMINISTRATIVE DETERMINATION UNDER REVIEW**

The administrative determination under review is Commerce's final determination in the antidumping investigation of PVLT tires from Taiwan. *Passenger Vehicle and Light Truck Tires From Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 28,563 (Dep't Commerce May 27, 2021) ("*Final Determination*") (Appx16316-16319), and accompanying Issues and Decision Memorandum ("IDM") (Appx15958-15995).

---

[1]     The brief accompanying Cheng Shin's motion is hereinafter referred to as "Cheng Shin Br." (ECF Nos. 42-1 and 43-1).

1

## II.     ISSUES PRESENTED FOR REVIEW

Whether Commerce's determination not to exclude certain alleged "out-of-scope" tires from Cheng Shin's margin calculation is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On May 13, 2020, the USW filed a petition for the imposition of antidumping duties on PVLT tires from Taiwan. The scope of the petition covered all tires with a PVLT size designation, with certain exceptions. Petition, Volume I (May 23, 2020) at 10 – 14 (Appx1020-1024). One of these exceptions was for tires designed and marketed exclusively as temporary use spare tires for passenger vehicles that met certain physical characteristics. *Id*. at 11 (Appx1021). There was no such exception for dual-use spare tires or for spare tires for light trucks. *Id*. at 10 – 14 (Appx1020-1024).

Commerce initiated the investigation on June 29, 2020. *See Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 38,854 (Dep't Commerce June 29, 2020) (Appx4103-4109). In the initiation notice, Commerce set deadlines for comments and rebuttal comments on the scope of the investigation. *Id*. at 38,855 (Appx4104). Commerce also set deadlines for comments and rebuttal comments on product characteristics, *i.e.*, the characteristics that respondents would use to classify each model of subject merchandise in their questionnaire responses in order to report the relevant costs of production accurately, as well as to develop appropriate product-comparison criteria for the purposes of matching products in order to calculate dumping margins. *Id*. (Appx4104).

Public Version

Scope Exclusion for Light Truck Spare Tires

On July 20, 2020, Cheng Shin filed comments on the scope of the investigation, seeking to add an exclusion for "reduced tread depth … temporary use spare tires ('light truck spare tires')." Cheng Shin Scope Comments (July 20, 2020) at 2 (Appx4369). As explained in that submission, the "only difference" between spare tires for passenger vehicles and light truck spare tires was a few millimeters of tread depth. *Id*. at 4 – 5 (Appx4371-4372).

On September 25, 2020, the USW filed a response to Cheng Shin's scope comments. USW Scope Response (Sept. 25, 2020) (Appx8596-8610). The USW did not agree to the exclusion language proposed by Cheng Shin. *Id*. (Appx8596-8610). The USW could only agree to an exclusion for light truck spare tires if the exclusion specified that the tires be "designed and marketed exclusively as temporary use spare tires for light trucks," and also required the tires to meet four specific physical characteristics. *Id*. at 5. (Appx8600). At that point in time, the USW was not privy to any information establishing that the tires that were the focus of Cheng Shin's request were in fact "designed and marketed exclusively as temporary use spare tires for light trucks," but the petitioner wanted to ensure that the exclusion was limited to such tires. As such, the USW response explicitly notes that Cheng Shin "avers" that the tires referenced in its request are designed and marketed exclusively for light trucks. *Id*. (Appx8600). Whether any specific tires exported by Cheng Shin – or any other party – would in fact meet the terms of the exclusion was not a matter addressed in the scope comments.

On January 6, 2021, Commerce published the preliminary results of the investigation. *Passenger Vehicle and Light Truck Tires From Taiwan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 Fed. Reg. 508 (Dep't Commerce Jan. 6, 2021) (Appx12941-12944).

3

Commerce preliminarily accepted the exclusion for light truck spare tires, adopting the language proposed by the USW. *Id*. at 510. (Appx12943). The exclusion language for light truck spare tires was maintained without change in the final determination and in the scope of the resulting antidumping order. *Final Determination* at 28,565 (Appx16318). *See also Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, and Thailand: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for Thailand*, 86 Fed. Reg. 38,011, 38,013 (Dep't Commerce July 19, 2021) ("*Order*") (Appx16350, Appx16352).

Cheng Shin's Questionnaire Responses

On July 20, 2020, the USW filed comments on the product characteristics that should be used in questionnaire responses to organize different models of tires into different control numbers, or "CONNUMs." USW Product Characteristic Comments (July 20, 2020) (Appx4218-4321). The USW recommended that Commerce rely on the same 15 characteristics that had already been developed and employed in previous antidumping proceedings on PVLT tires from China. *Id*. at 2 (Appx4219). The USW also recommended that Commerce place the characteristics in the same hierarchy, so that the first characteristic be deemed the most important for matching tire types in the dumping margin calculations, while the last characteristic would be the least important. *Id*. (Appx4219). The first product characteristic used in the China proceedings was "Tire Service Type," "as identified in the … TRA {Tire and Rim Association} Year Book." *Id*. at Att. 1 (Appx4227). Tire service type had three reporting options: 1) Passenger Car, 2) Light Truck, and 3) Special Trailer. *Id*. (Appx4227).

On July 20, 2020, Cheng Shin filed its own comments regarding product characteristics. Cheng Shin Product Characteristic Comments (July 20, 2020) (Appx4346-4364). Relevant to this appeal, Cheng Shin requested that a fourth tire service type be added to the tire service type

4

field for "Light Truck Full Size Spare (with reduce tread depth)." *Id*. at 2 (Appx4347). Cheng Shin's proposal also suggested that the reference to the TRA *Year Book* not apply to light truck spare tires. *Id*. (Appx4347).

On July 30, 2020, the USW filed rebuttal comments on product characteristics. USW Product Characteristic Rebuttal Comments (July 30, 2020) (Appx6088-6142). The USW objected to Cheng Shin's request to add a new light truck spare tire category in the tire service type field, noting that the only difference Cheng Shin identified for these "full size" spare tires was their tread depth, and tread depth was already accounted for in a field further down the product characteristic hierarchy. *Id*. at 10 (Appx6097). The USW explained: "Adding another service category for tires with 'reduced' tread depth is unnecessary and would create opportunities for manipulation, as there is no definition of how much the tread depth would need to be reduced before the tire could be reported as a wholly difference service type." *Id*. (Appx6097). The USW further noted: "As service type is the first characteristic in the hierarchy, reporting tires as different service types would normally be determinative on matching, regardless of the level of difference in tread depth for otherwise similar tires." *Id*. at 10, n.36 (Appx6097).

On August 18, 2020, Commerce released the product characteristics that respondents were directed to report in their questionnaire responses. Commerce Product Characteristics Memo (Aug. 18, 2020) (Appx6935-6945). Consistent with its practice in the proceedings on PVLT tires from China and the USW's request, Commerce adopted as the first – and thus most important – product characteristic "Tire Service Type" as identified in the TRA *Year Book*. *Id*. at Att., p.1 (Appx6937). Commerce rejected Cheng Shin's request and maintained only three service types in this field. *Id*. (Appx6937). PVLT tires with a passenger vehicle service type

5

would be reported under a CONNUM starting with 01, tires for light truck service would be reported under a CONNUM starting with 02, and special trailer tires would be reported under a CONNUM starting with 03. *Id*. (Appx6937).

In its questionnaire responses, Cheng Shin chose to report a code of "01" (for "passenger car") in the "Tire Service Type" field for its sales of light truck spare tires, based on the fact that these tires had the same general characteristics, such as size and load capacity, as passenger car tires. Cheng Shin Br. at 12 – 13. The CONNUMs reported for these tires were [                                                                        ]. Commerce Final Cheng Shin Calculation Memorandum (May 21, 2021) ("Final Calc Memo") at 4 – 5 (Appx16029-16030; Appx100652-100653). In its first Section B response, Cheng Shin provided a concordance table setting out the CONNUM coding of each product and its own product codes and descriptions of each product. Cheng Shin Sec. B Resp. (Sept. 25, 2020) at B-10 – B-12 and Ex. B-4.a (Appx8632-8634, Appx8721-8802; Appx85351-85353, Appx85440-85521). Cheng Shin further stated that its light truck spare tires were marked with a "Category" of "GSP" in the table, for "ground spare products." *Id*. at B-12 (Appx8634; Appx85353).

Commerce included these tires in its preliminary dumping calculations, and it rejected claims by Cheng Shin that their inclusion constituted a ministerial error. Commerce Ministerial Error Memorandum (Feb. 3, 2021) at 5 – 6 (Appx13097-13098).

After the preliminary determination, Commerce issued a questionnaire to Cheng Shin in lieu of verification due to the COVID-19 pandemic. Commerce In-Lieu-of-Verification Questionnaire for Cheng Shin (Feb. 25, 2021) (Appx13263-13269). Commerce asked Cheng Shin to provide a detailed explanation as to how the CONNUMs in question met the criteria for the exclusion for light truck spare tires, along with evidence to support its claim. *Id*. at Question

6

7 (Appx13267-13268). In response, Cheng Shin provided purchase agreements and technical drawings for the tires and [                                    ]. Cheng Shin In-Lieu-of-Verification Questionnaire Response (Mar. 8, 2021) at VE-10 – VE-11 and Exhibits VE-7A and VE-7B (Appx14648-14649, Appx17162-17177; Appx97831-97832, Appx100345-100360).

In the final determination, Commerce continued to include these tires in its margin calculations for Cheng Shin. IDM at Comment 4 (Appx159976-159978). Commerce noted that the tire service type Cheng Shin reported for these CONNUMs was not for light trucks, and thus the tires "could not have been designed and marketed exclusively for light trucks," as required by the exclusion language in the scope. *Id*. (Appx159976). Commerce did not find the information contained in Cheng Shin's ILOV questionnaire to be convincing, noting that the exhibit proffered to support its claim that the tires are in fact designed and marketed exclusively for light trucks "was not generated as part of Cheng Shin's normal course of business and Commerce does not find it persuasive." *Id*. (Appx159977). Commerce further found that the purchase agreements and technical drawings Cheng Shin provided "do not indicate a light truck design exclusivity." *Id*. (Appx159977). Finally, Commerce found that the concordance table provided with Cheng Shin's Section B response also did not support its claims. *Id*. (Appx159977). Further confidential analysis supporting Commerce's analysis was contained in the confidential calculation memorandum issued with the final results for Cheng Shin. *Id*. (Appx159977). *See also* Final Calc Memo at 4 – 5 (Appx16029-16030; Appx100652-100653).

The order on PVLT tires from Taiwan was published on July 19, 2021. *Order* (Appx16350-16352). This appeal followed.

## SUMMARY OF ARGUMENT

This Court should uphold Commerce's determination not to exclude certain alleged "out-of-scope" tires from Cheng Shin's margin calculation. The USW, the petitioner, agreed during

7

the investigation to accept a narrowly drawn scope exclusion for PVLT tires "designed and marketed exclusively as temporary use spare tires for light trucks," that also displayed certain enumerated physical characteristics. Cheng Shin failed to demonstrate that the tires in question were in fact "designed and marketed exclusively as temporary use spare tires for light trucks," and Commerce thus appropriately included them in Cheng Shin's margin program.

This decision was supported by substantial evidence. First, Cheng Shin itself consistently classified the tires in question as passenger car tires, not light truck tires, throughout the investigation. Second, as noted in Cheng Shin's brief, the tires in question "… had the same general characteristics as passenger-car tires … (*i.e.*, size and load capacity)." Cheng Shin Br. at 12 – 13. These similarities made it all the more important for the chapeau of the exclusion to be strictly enforced, or else subject passenger car tires could be entered as non-subject light truck spare tires and evade duty liability.

Third, the purchase agreements and technical drawings submitted by Cheng Shin, when viewed in their totality, [

]. Fourth, the only document on the record that purported to show that the tires were designed and marketed exclusively as temporary use spare tires for light trucks was [


]. Commerce properly found that this document was not generated in the normal course of business, but solely to influence the outcome of the investigation, and therefore was not persuasive.

Finally, Cheng Shin's argument that Commerce impermissibly changed the scope of the proceeding is based on the erroneous assumption that Cheng Shin had in fact established that its tires met all of the terms of the exclusion. As explained in more detail below, Cheng Shin failed

8

to do so. As such, Commerce's decision not to exclude the tires from its calculations was reasonable and supported by substantial evidence. Its determination should therefore be upheld.

## ARGUMENT

I. **STANDARD OF REVIEW**

The standard of review requires that the Court sustain any determination, finding, or conclusion by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004). The substantial evidence standard requires the Court to assess whether the administrative determination under review is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Importantly, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996). A party challenging an agency determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001).

Commerce's determination is in accordance with law if it has met all constitutional, statutory, regulatory, and procedural requirements. *Huvis Corp. v. United States*, 525 F. Supp. 2d 1370, 1374 (Ct. Int'l Trade 2007) (citing *FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 300 (2003)). When determining whether Commerce's interpretation and application of the statute is in accordance with law, the Court applies the two-step analysis established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). The Court first examines

"whether Commerce has directly spoken to the precise question at issue," and, if it has, the agency must comply with Congress's clear intent. *Id.* at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

The agency's statutory construction need not be the only permissible one, or even one the Court would have reached if the issue initially had arisen in a judicial proceeding. *Id.* Rather, "{a}ny reasonable construction of the statute is a permissible construction," *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004), and Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009). Where Congress has explicitly left a gap for the agency to fill, there has been an "express delegation of authority to the agency to elucidate a specific provision of the statute by regulation" and the ensuing legislative rules "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44; *see also Nat'l Organization of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 809 F.3d 1359, 1364 (Fed. Cir. 2016).

## II.   COMMERCE'S DETERMINATION NOT TO EXCLUDE ALLEGED "OUT-OF-SCOPE" TIRES FROM CHENG SHIN'S MARGIN CALCULATION IS IN ACCORDANCE WITH LAW AND SUPPORTED BY SUBSTANTIAL EVIDENCE

### A.   Commerce Reasonably Relied on Cheng Shin's Own Reporting in its Questionnaire Responses to Find the Tires Were Not Out-of-Scope

Cheng Shin admits that it chose to report the alleged out-of-scope tires as passenger car tires in its questionnaire response. Cheng Shin Br. at 12 – 13. As Commerce correctly noted, this fact alone was sufficient reason to find that the tires did not qualify for the exclusion for light truck spare tires, which only applies to tires "designed and marketed exclusively as temporary use spare tires for light trucks." IDM at Comment 4 (Appx159976-159978). As Commerce

10

explained, "{t}hroughout its questionnaire responses, Cheng Shin has consistently reported in its sales data that these model tires are not for light truck service." *Id*. at 19 (Appx159976). Cheng Shin has never explained how these tires could be designed and marketed exclusively for light trucks when they were reported as not being for light truck service.

To the contrary, Cheng Shin actually emphasizes in its brief how similar the alleged light truck spare tires were to passenger vehicle tires. Cheng Shin states that its "temporary-use light-truck spare tire models had the same general characteristics as passenger-car tires identified in the TRA (*i.e.*, size and load capacity) …." Cheng Shin Br. at 12 – 13. As noted above, tire service type was the first, and thus the most important, product characteristic in the questionnaire. Commerce's reliance on Cheng Shin's own reporting regarding the most important feature of its tires was reasonable and should be upheld.

Cheng Shin claims that the concordance table provided with its Section B response was sufficient to demonstrate that the tires in question were actually light truck spare tires even though Cheng Shin classified them at passenger car tires. Cheng Shin Br. at 13. The cited table, however, [

]. Cheng Shin states that its light truck spare tires were marked with a "Category" of "GSP" in the concordance table, for "ground spare products." Cheng Shin Sec. B Resp. (Sept. 25, 2020) at B-12 (Appx8634; Appx85353). Yet the table [

]. *Id*. at Table B-4.a (Appx8721-8802; Appx85440-85521). Thus, nothing in the table establishes that the tires in question met the exclusion for light truck spare tires.

Cheng Shin attempts to confuse the issue by arguing that Commerce impermissibly brought dual use spare tires within the scope when the scope excludes both passenger car spare

11

tires and light truck spare tires. Cheng Shin Br. at 19 – 20. Cheng Shin is incorrect. Each of those exclusions have their own criteria both in terms of exclusive design and marketing as well as distinct physical characteristics.

Scope Exclusions for Spare Tires

| Passenger Car Spare Tires | Light Truck Spare Tires |
|---|---|
| tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics: (a) The size designation and load index combination molded on the tire's sidewall are listed in Table PCT–1R ("T" Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT–1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book, (b) the designation "T" is molded into the tire's sidewall as part of the size designation, and, (c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81 MPH or a ''M'' rating | tires designed and marketed exclusively as temporary use spare tires for light trucks which, in addition, exhibit each of the following physical characteristics: (a) The tires have a 265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17, 245/70R18, or 265/70R18 size designation; (b) "Temporary Use Only" or "Spare" is molded into the tire's sidewall; (c) the tread depth of the tire is no greater than 6.2 mm; and (d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which may have UTQG molded on the tire sidewall |

*See Order* at 38,013 (Appx16352). It is not possible for a dual use spare tire to meet either exclusion. Nor can the same tire qualify for both exclusions.

Nor was it necessary for the scope language to specifically address dual use tires in order for Commerce to determine that they were covered, as Cheng Shin suggests. Cheng Shin Br. at 19 – 20. The tires are indisputably tires "with a passenger vehicle or light truck size designation," and thus they are covered by the order absent a specific exclusion. *Order* at 38,012 (Appx16351). In short, Cheng Shin has failed to demonstrate that Commerce erred by relying on Cheng Shin's own classification of the tires as passenger car tires to determine that they did not

12

qualify for the exclusion for light truck spare tires. Commerce's determination was reasonable and supported by substantial evidence, and it should therefore be sustained.

    **B.**    **Commerce's Determination that the Tires Were Not Designed and Marketed Exclusively for Light Trucks Is Supported by Substantial Evidence**

Commerce's determination was further supported by the record evidence Cheng Shin submitted in its in-lieu-of-verification ("ILOV") questionnaire response. Cheng Shin submitted information purporting to show that the tires were designed and ordered for [           ] as spare tires for light truck models. Cheng Shin ILOV Questionnaire at VE-10 (Appx14648; Appx97831). The purchase agreements provided, while [

                                                     ]. *Id*. at Exhibit-VE-7A (Appx100345-100358). [

                         ]. *Id*. (Appx100350). [

                ]. *Id*. (Appx100352, Appx100354). In addition, [

                                                         ]. *Id*. (Appx100352, Appx100354, Appx100357). Based on this evidence, Commerce reasonably concluded that the documents submitted by Cheng Shin "clearly show the models in question can be used for either light trucks or passenger cars." IDM at 20 (Appx159977). *See also* Final Calc Memo at 5 (Appx16030; Appx100653).

Cheng Shin [

                                                                                                     ]

Cheng Shin ILOV Questionnaire at Exhibit-VE-7B (Appx100360). Yet, [

                                                                         ]. *Id*. (Appx100360). In addition, [

Public Version

] *Id.* (Appx100360). In short, [

].

Commerce reasonably discounted this document, explaining "it was not generated as part of Cheng Shin's normal course of business and Commerce does not find it persuasive in light of the evidence on the record, which demonstrates that the tires were designed for both passenger cars and light trucks." Final IDM at 20 (Appx159977). *See also* Final Calc Memo at 5 (Appx16030; Appx100653). As the administering agency, it is Commerce's prerogative to weigh the evidence in the first instance, and its determination that an [

] was not persuasive is reasonable and warrants deference from this Court.

      **C.**     **Commerce Did Not Unlawfully Change the Scope of the Order**

Cheng Shin claims that Commerce's decision not to exclude the alleged out-of-scope tires from its dumping calculations impermissibly changed the scope of the order. Cheng Shin Br. at 28 – 29. This argument is predicated on the assumption that Cheng Shin's tires did in fact meet the terms of the exclusion, an assumption that, as reviewed above, Commerce reasonably found was not warranted based on all of the facts on the record.

Cheng Shin also mischaracterizes the position of the petitioner with regard to the scope exclusion language for light truck spare tires. Cheng Shin Br. at 27 – 28. The USW at no time conceded that Cheng Shin's tires met all of the terms of the exclusion. While the USW offered to agree to exclusion language to address the tires with the physical characteristics identified by Cheng Shin, the USW also added the requirement in the chapeau that the tires be "designed and marketed exclusively as temporary use spare tires for light trucks." USW Scope Response (Sept.

14

25, 2020) at 5 (Appx8600). The USW was not privy to any information establishing that the tires that were the focus of Cheng Shin's request were in fact "designed and marketed exclusively as temporary use spare tires for light trucks." As such, the USW response explicitly noted that Cheng Shin "avers" that the tires referenced in its request are designed and marketed exclusively for light trucks. *Id*. (emphasis added) (Appx8600). Petitioner only agreed that tires that met these requirements could be excluded – petitioner never agreed that the specific tires identified by Cheng Shin actually met each of the requirements of the exclusion, particularly the design and marketing requirements. Cheng Shin's attempts to allege otherwise are unavailing and should be rejected.

## CONCLUSION

For the foregoing reasons, the USW respectfully requests that the Court deny the plaintiff's motion for judgment on the agency record and sustain Commerce's final determination as supported by substantial evidence and in accordance with law.

Respectfully submitted,

/s/ Roger B. Schagrin
Roger B. Schagrin
Elizabeth J. Drake
SCHAGRIN ASSOCIATES
900 Seventh St. N.W., Suite 500
Washington, D.C. 20001
(202) 223-1700
*Counsel for United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC*

Date:  April 12, 2022

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Schagrin Associates hereby certifies that the Response Brief of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO, CLC, dated April 12, 2022 complies with the Standard Chambers Procedures of the U.S. Court of International Trade that it contains 4,985 words, including accompanying motion, text, headings, table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word used to prepare this brief.

/s/ Roger B. Schagrin
Roger B. Schagrin
Elizabeth J. Drake
Schagrin Associates
900 Seventh St. N.W., Suite 500
Washington, D.C. 20001
(202) 223-1700
*Counsel for United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC*

Dated: April 12, 2022