## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| _____ ) | |
| CHENG SHIN RUBBER IND. CO. LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00398 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STEEL, PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, AFL- ) | |
| CIO, CLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

### <u>ORDER</u>

Upon consideration of the motion for judgment upon the administrative record filed by plaintiff, responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is affirmed in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
JUDGE

Dated: _____

*PUBLIC VERSION*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00398 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | **PUBLIC VERSION** |
| ) | |
| and ) | Business Proprietary Information |
| ) | Removed from Pages |
| UNITED STEEL, PAPER AND FORESTRY, ) | 5, 7, 8, 13-15, 22 |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, AFL- ) | |
| CIO, CLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:
VANIA WANG
Attorney
Department of Commerce
Office of the Chief Counsel
  for Trade Enforcement & Compliance

ELIZABETH ANNE SPECK
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 307-0369

April 12, 2022                                            *Attorneys for Defendant*

*PUBLIC VERSION*

# <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO RULE 56.2(c)(1) ..............................................................2

    I.      Administrative Determination Under Review ............................................2

    II.     Issue Presented For Review ......................................................................2

STATEMENT OF FACTS ............................................................................................3

SUMMARY OF THE ARUGMENT .............................................................................8

ARGUMENT ...............................................................................................................9

    I.      Standard Of Review ..................................................................................9

    II.     Substantial Evidence Supports Commerce's Determination That Certain
           Tires Did Not Qualify For The Light Truck Spare Tires Exclusion ..........11

          A.     Record Evidence Supports Commerce's Conclusion That Certain
                Of Cheng Shin's Tires Fall Within The Scope Of The Investigation .............11

          B.     Cheng Shin Failed To Exhaust Its Administrative Remedies With
                Respect To Two Of Its Passenger Car Tire Arguments ...................................18

          C.     Commerce Applied The Scope And Lawfully Required Cheng
                Shin To Demonstrate That Certain Of Its Tires Qualified For The
                Scope Exclusion ............................................................................................21

CONCLUSION ...........................................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Am. Silicon Techs. v. United States*,
   261 F.3d 1371 (Fed. Cir. 2001)......................................................................................10

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984)...................................................................................... 10

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017)................................................................................... 18, 19

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938)....................................................................................................... 14

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966)................................................................................................. 14, 23

*Corus Staal BV v. United States*,
   502 F.3d 1370 (Fed. Cir. 2007)............................................................................18, 19, 20

*Dillinger Fr. S.A. v. United States*,
   350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) ............................................................. 20

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996)................................................................................... 9, 10

*Global Commodity Group LLC v. United States*,
   709 F.3d 1134 (Fed. Cir. 2013)................................................................................... 10

*Haixing Jingmei Chem. Prod. Sales Co. v. United States*,
   335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018) ............................................................. 14

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992)....................................................................................................... 10

*Itochu Bldg. Prods. v. United States*,
   733 F.3d 1140 (Fed. Cir. 2013)................................................................................... 19

*King Supply Co. LLC v. United States*,
   674 F.3d 1343 (Fed. Cir. 2012)................................................................................... 10

*Luoyang Bearing Factory v. United States*,
   240 F. Supp. 2d 1268 (Ct. Int'l Trade 2002) ............................................................. 19

*McCarthy v. Madigan,*
    503 U.S. 140 (1992) ................................................................................ 18

*Mid Continent Nail Corp. v. United States,*
    725 F.3d 1295 (Fed. Cir. 2013) ............................................................. 10

*Mitsubishi Elec. Corp. v. United States,*
    898 F.2d 1577 (Fed. Cir. 1990) ............................................................. 21

*Mittal Steel Point Lisas Ltd. v. United States,*
    548 F.3d 1375 (Fed. Cir. 2008) ............................................................. 20

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006) ...................................................... 10, 17

*NTN Bearing Corp.of Am. v. United States,*
    997 F.2d 1453 (Ct. Int'l Trade 1993) .................................................... 22

*PAM, S.p.A. v. United States,*
    582 F.3d 1336 (Fed. Cir. 2009) ............................................................. 10

*Pokarna Engineered Stone, Ltd. v. United States,*
    547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021) ....................................... 23

*QVD Food Co. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011) ............................................................. 22

*Sandvik Steel Co. v. United States,*
    164 F.3d 596 (Fed. Cir. 1998) ............................................................... 10

*Shandong Huarong Gen. Corp. v. United States,*
    159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ......................................... 11

*Stanley Works (Langfang) Fastening Sys., Ltd. v. United States,*
    279 F. Supp. 3d 1172 (2017) ................................................................. 20

*Tri Union Frozen Prod., Inc. v. United States,*
    163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) .......................................... 3

*United States v. Eurodif S.A.,*
    555 U.S. 305 (2009) ................................................................................ 10

*United States v. L.A. Tucker Truck Lines, Inc.,*
    344 U.S. 33 (1952) ................................................................................. 20

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951) ................................................................................................ 18

**Statutes**

19 U.S.C. 1516 ........................................................................................................ 3

28 U.S.C. § 2637 .............................................................................................. 18, 19

**Regulations**

19 C.F.R. § 351.309 ......................................................................................... 18, 19

*Passenger Vehicle and Light Truck Tires From Taiwan*,
  86 Fed. Reg. 8,885 (Dep't of Commerce Feb. 10, 2021) ..................................... 6

*Passenger Vehicle and Light Truck Tires From Taiwan*,
  86 Fed. Reg. 28,563 (Dep't of Commerce May 27, 2021) ................................... 2

*Passenger Vehicle and Light Truck Tires From Taiwan*,
  86 Fed. Reg. 30,916 (Dep't of Commerce June 10, 2021) ................................... 2

*Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, Thailand, and
the Socialist Republic of Vietnam*,
  86 Fed. Reg. 7,252 (Dep't of Commerce Jan. 27, 2021) ...................................... 5

*Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, Thailand, and
the Socialist Republic of Vietnam: Initiation of Less Than-Fair-Value Investigations*,
  85 Fed. Reg. 38,854 (Dep't of Commerce June 29, 2020) .................................. 3

*Vehicle and Light Truck Tires From Taiwan*,
  86 Fed. Reg. 508 (Dep't of Commerce Jan. 6, 2021) ........................................... 5

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |  |
|---|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 21-00398 |
| UNITED STATES, | ) | |
| Defendant, | ) | **PUBLIC VERSION** |
| and | ) | Business Proprietary Information |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | ) | Removed from Pages 5, 7, 8, 13-15, 22 |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff Cheng Shin Rubber Ind. Co. Ltd. (Cheng Shin) in which it challenges the Department of Commerce's (Commerce) final determination in the antidumping duty investigation of passenger vehicle and light truck tires from Taiwan.[1]  As demonstrated below, substantial evidence supports Commerce's determination and it is otherwise in accordance with law.  Thus, we

---

[1]  We reference Cheng Shin's Motion for Judgement on the Agency Record, filed on February 11, 2022, ECF No. 42-1 as "Pl. Br."

respectfully request that the Court reject plaintiff's challenges and sustain Commerce's final determination.

## STATEMENT PURSUANT TO RULE 56.2(c)(1)

### I.      Administrative Determination Under Review

Cheng Shin challenges Commerce's final determination in the antidumping duty investigation of passenger vehicle and light truck tires from Taiwan.  *Passenger Vehicle and Light Truck Tires From Taiwan,* 86 Fed. Reg. 28,563 (Dep't of Commerce May 27, 2021)*,* (final determination of antidumping duty investigation), Appx16316-16319, as corrected by *Passenger Vehicle and Light Truck Tires From Taiwan*, 86 Fed. Reg. 30,916 (Dep't of Commerce June 10, 2021), Appx16359-16361 and accompanying Issues and Decision Memorandum (IDM), Appx15958-15995.  The investigation covers entries or sales of passenger vehicle and light truck tires from Taiwan made April 1, 2019 through March 31, 2020.  *Id.*

### II.     Issue Presented For Review

1.      Whether substantial evidence supports Commerce's determination that certain models of Cheng Shin's tires are within the scope of its investigation and whether the determination is otherwise in accordance with law.

2.      Whether Cheng Shin is barred from presenting new arguments that the alleged light truck spare tires did not meet the specifications of regular use or temporary use passenger car tires because Cheng Shin failed to exhaust its administrative remedies by raising these arguments before Commerce during the underlying administrative proceedings.

3.      Whether in concluding that certain models of Cheng Shin's tires fell within the scope of the investigation and were not subject to any exclusion, Commerce expanded the scope language.

**STATEMENT OF FACTS**[2]

On June 20, 2020, Commerce initiated an antidumping duty investigation on passenger

vehicle and light truck tires from Taiwan.  *Passenger Vehicle and Light Truck Tires From the*

*Republic of Korea, Taiwan, Thailand, and the Socialist Republic of Vietnam: Initiation of Less*

*Than-Fair-Value Investigations*, 85 Fed. Reg. 38,854 (Dep't of Commerce June 29, 2020)

(initiation notice), Appx4103-4109.  Commerce also invited interested parties to submit

comments on scope and product characteristics.  *Id.* at 38,855, Appx4104.  And in July 2020

Commerce selected Cheng Shin and Nankang Rubber Tire Corp., Ltd. (Nankang) as mandatory

respondents.  Respondent Selection Memorandum (July 28, 2020), Appx6608.

On July 20, 2020, Cheng Shin submitted comments on the scope, requesting an exclusion

for light truck spare tires.  Cheng Shin Scope Comments (July 20, 2020), Appx4368-4374.  That

same day, Cheng Shin submitted comments on product characteristics, requesting a separate

option for light truck full size spare with reduced size tread depth.  Cheng Shin Product

Characteristic Comments (July 20, 2020), Appx4347-4348.  The petitioner filed a response to

Cheng Shin's product characteristic comments in which it opposed Cheng Shin's proposed

addition as unnecessary.  Petitioner Product Characteristic Rebuttal Comments (July 30, 2020),

---

[2]  Cheng Shin also refers to non-record information in its background on tires and spare tires.  Pl. Br. at 4 n.3-5.  By statute, Commerce bases its determinations upon the record developed during the administrative proceeding.  19 U.S.C. 1516a(b)(1) & (2).  Papers and articles are factual information that need to be submitted to the record of the administrative proceeding for Commerce to consider.  *Tri Union Frozen Prod., Inc. v. United States*, 163 F. Supp. 3d 1255, 1290 (Ct. Int'l Trade 2016) ("If MPG wished to rely on academic studies, textbooks, and website information referencing statistical analysis in making its arguments before Commerce, MPG was required to adhere to the specified regulatory deadlines for submitting factual information.").

Appx6097.  Specifically, the petitioner stated that the tires would be the same size as other light truck tires and the model match criteria already accounted for tread depth.  *Id.*

On August 18, 2020, Commerce issued a memorandum detailing the product characteristics that would be applicable in this investigation, which included "tire service type:"

**FIELD NUMBER 3.1: Tire Service Type**

FIELD NAME: SERVICE_TYPE

DESCRIPTION: Tire and Rim Association's (TRA) tire classification of the reported tire model as identified in the 2019 TRA Year Book.

NARRATIVE: Indicate the tire's service type using the codes below.

01 = Passenger Car
02 = Light Truck
03 = Special Trailer

Product Characteristics (Aug. 18, 2020), Appx6935-6937.

On September 25, 2020, the petitioner filed rebuttal comments to Cheng Shin's scope comments in which it disagreed with Cheng Shin's proposed language as overly broad, but stated that it would support "a modified exclusion" for light truck spare tires with more specifically stated requirements.  Petitioner Scope Rebuttal Comments (Sept. 25, 2020), Appx8597-8601.  That same day, Cheng Shin filed its Section B response, in which at Exhibit B-4.a, it identified the alleged light truck spare tires in its database as passenger car[3] for tire service type.  Cheng Shin Section B Response (Sept. 25, 2020) at Exhibit B-4.a, Appx8725, Appx85459.

_____

[3]  The particular tire service type code for the tires at issue was BPI throughout the investigation and within the investigation documents.  But Cheng Shin disclosed this information in its brief to the Court and states this without brackets on pages 12-13 of its brief.  Some of the bracketing for this particular fact is bracketed in our brief because we are quoting directly from documents that have this fact bracketed.

On December 10, 2020, Cheng Shin consulted with the petitioner and submitted proposed scope exclusion language with further modifications.  Cheng Shin Modified Scope Exclusion Comments (Dec. 10, 2020), Appx12293-12294.  Later, the petitioner confirmed that it did not oppose Cheng Shin's modified language.  Petitioner Modified Scope Exclusion Response (Dec. 11, 2020), Appx12300-12301.

On December 7, 2020, Commerce issued a supplemental questionnaire, which included a request for Cheng Shin to revise its database to correct a combination of numbers and letters that Commerce's control numbers (CONNUMs) could not contain.  Section ABC Supplemental Questionnaire (Dec. 7, 2020), Appx12282, Appx92468.  Cheng Shin responded to the supplemental questionnaire and included Exhibit 2SC-4, a revised table comparing Cheng Shin's product codes to the revised CONNUMs.  Cheng Shin Section ABC Supplemental Questionnaire Response (Dec. 16, 2020) at 3SE-8 – 3SE-9, Appx12628-12629, Appx92792-92793.  Specifically, page 34 of the exhibit including the revised CONNUM concordance showed that the alleged light truck spare tires were [███████████████████████████████████████

████████].  *Id.* at Exhibit 2SC-4 at 34, Appx12802-12805, Appx94140.

On January 6, 2021, Commerce published its preliminary determination.  *Passenger Vehicle and Light Truck Tires From Taiwan*, 86 Fed. Reg. 508 (Dep't of Commerce Jan. 6, 2021) (preliminary determination), Appx12941, as corrected by *Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, Thailand, and the Socialist Republic of Vietnam*, 86 Fed. Reg. 7,252 (Dep't of Commerce Jan. 27, 2021), Appx13017, and accompanying preliminary decision memorandum (PDM), Appx12846.  Concurrently with its preliminary determination, Commerce issued a preliminary scope memorandum in which it preliminarily modified the scope to include a scope exclusion for light truck spare tires:

> *(5) tires designed and marketed exclusively as "temporary use" or "spare" tires for light*
> *trucks which, in addition, exhibit each of the following physical characteristics:*
>> *(a) the tires have a 265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17,*
>> *245/70R18, or 265/70R18 size designation;*
>> *(b) "Temporary Use Only" or "Spare" is molded into the tire's sidewall;*
>> *(c) the tread depth of the tire is no greater than 6.2 mm; and*
>> *(d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded*
>> *into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which*
>> *may have UTGC molded on the tire sidewall.*

Preliminary Scope Memorandum (Dec. 29, 2020) at 11-12, Appx12897-12898; *see also*

*Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, Thailand, and*

*the Socialist Republic of Vietnam*, 86 Fed. Reg. at 7,253, Appx13018.

   But Commerce preliminarily retained the alleged light truck spare tires to calculate

Cheng Shin's 52.42 percent rate.  Nankang preliminarily received a 98.44 percent rate and the all

others rate was 88.82 percent.  *Preliminary Determination*, 86 Fed. Reg. at 509, Appx12942.

   Cheng Shin subsequently filed ministerial error comments in which it claimed that

Commerce had erred in using the alleged out-of-scope light truck spare tires in its calculation.

Cheng Shin Ministerial Error Comments (Jan. 5, 2021), Appx12929-12932, Appx94700-94703.

Commerce responded by issuing a preliminary ministerial error memorandum, in which it

concluded that it had not erred by including the challenged tires.  Specifically, Commerce

explained that because Cheng Shin had identified its tires' service type as "passenger car," the

tires did not satisfy the exclusionary requirement "designed and marketed exclusively as

temporary use spare tires for light trucks."  Preliminary Ministerial Error Memorandum (Feb. 3,

2021) at 5-6, Appx13098, Appx94739 (citing Cheng Shin Section B Response (Sept. 25, 2020)

at Exhibit B-4.a, Appx 8725, Appx85459).  But Commerce found that it had made other errors

constituting significant ministerial errors.  Thus, Commerce published an amended preliminary

determination in which it amended the preliminary antidumping rate to 33.33 percent for Cheng

Shin and 84.83 percent for all others. *Passenger Vehicle and Light Truck Tires From Taiwan*, 86

Fed. Reg. 8,885 (Dep't of Commerce Feb. 10, 2021) (amended preliminary determination),

Appx13129-13130.

On February 25, 2021, Commerce issued an in-lieu-of-verification questionnaire asking

Cheng Shin to explain how the alleged light truck spare tires met the exclusionary criteria and to

provide supporting documentation. Cheng Shin In-Lieu-Of-Verification Questionnaire (Feb. 25,

2021), Appx13267-13268, Appx94818-94819. Cheng Shin responded and explained that,

because the tires had been developed under the European Tyre and Rim Technical Organization

(ETRTO) standard and fit into the passenger car tires section of the ETRTO standard, "Cheng

Shin's R&D Division assigned internal product codes to these tires models accordingly." Cheng

Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at VE-10 – VE-12, Appx14648-14650,

Appx97831-97833. Cheng Shin also attached Exhibits VE-7-A, VE-7-B, and VE-7-C, which it

contends support the exclusion of its light truck spare tires. *Id.* at Exhibit VE-7-A, Exhibit VE-

7-B, Exhibit VE-7-C, Appx15556-155578, Appx100345-1000367.[4] But as explained below,

Commerce did not find the documentation persuasive.

In its case brief, Cheng Shin again maintained that Commerce should exclude the alleged

light truck spare tires identified for passenger cars under the light truck spare tires exclusion.

Cheng Shin Case Brief (Mar. 25, 2021) at 4-8, Appx15808-15812, Appx100572-100576.

Specifically, Cheng Shin argued that "the product characteristic 'tire service type' was assigned

based on the classification of the standard of {ETRTO}, upon which these tire models were

---

[4] In its verification exhibits, on page 9 of Exhibit VE-7-A (Appx100354), and in Exhibit
VE-7-B (Appx100360), Cheng Shin also included a tire, [ ████████████████████████
████████████████████████████████████████████████ ] even though Cheng Shin
did not request an exclusion for this tire.

developed. Under the standard, these models are classified as [█████████].” *Id.* at 6 (citation

omitted), Appx15810, Appx100574.  Cheng Shin also clarified that “if these models had been

developed under the standard of TRA, they would also be classified as [█████████].” *Id.*

And in its rebuttal brief, the petitioner argued that Commerce correctly retained Cheng Shin's

alleged light truck spare tires in Commerce's database.  Petitioner Rebuttal Brief (Apr. 2, 2021)

at 3-5, Appx15862-15864, Appx100605-100607.  No party challenged the exclusion for light

truck spare tires or the criteria to meet the exclusion.

After considering the interested parties' comments on the *Preliminary Determination*,

Commerce issued its *Final Determination*.  *See Final Determination*, 86 Fed. Reg. at 28,563,

Appx16316.  And in its decision memorandum for the final determination and final analysis

memo Commerce continued to find that Cheng Shin did not demonstrate that its alleged light

truck spare tires described as for passenger cars met the requirements of the scope exclusion.

IDM at 19, Appx15976; Cheng Shin Final Analysis Memorandum (May 21, 2021) at 4-5,

Appx16029-16030, Appx100652-100653.  Commerce calculated an antidumping rate of 20.04

percent for Cheng Shin, 101.84 percent for Nankang, 84.75 percent for all others.

## **SUMMARY OF THE ARGUMENT**

Commerce's determination that certain of Cheng Shin's tires did not qualify for the scope

exclusion for light truck spare tires is reasonable, supported by substantial evidence, and is

otherwise in accordance with law.  The scope exclusion requires that such tires be “designed and

marketed ***exclusively*** as temporary use spare tires for light trucks.”  *Passenger Vehicle and Light

Truck Tires From Taiwan*, 86 Fed. Reg. at 30,917, Appx16360 (emphasis added).  Substantial

evidence in the record supports Commerce's conclusion that Cheng Shin's tires did not satisfy

this threshold criteria.  For example, in its response to Commerce's section B questionnaire,

Cheng Shin listed the alleged light truck spare tires as passenger car for the "tire service type" product characteristic.  Cheng Shin Section B Response (Sept. 25, 2020), at Exh. B-4.a, Appx8725, 85459.  And Cheng Shin's purchase agreements and technical drawing that it submitted with its response to Commerce's in-lieu-of-verification questionnaire showed that these tires could be used as *either* passenger car *or* light truck tires.  Cheng Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at Exh. VE-7-A, Appx100352.  Commerce also considered other record evidence that Cheng Shin submitted, such as an email purporting to prove that the tires satisfied the exclusionary language.  But Commerce reasonably discounted that evidence as unreliable because it was created solely for use in this investigation.

Nor should the Court consider arguments that Cheng Shin has raised for the first time before this Court.  Before Commerce, Cheng Shin did not contend that the tires at issue did not qualify for regular-use or temporary-use passenger car tires.  Having failed to exhaust its administrative remedies, Cheng Shin cannot raise these arguments for the first time before this Court.

Finally, there is no merit to Cheng Shin's position that Commerce impermissibly modified the scope criteria when it concluded that certain of Cheng Shin's tires did not satisfy the exclusion.  As explained above, Commerce considered the record evidence and reasonably concluded that the tires were not subject to the exclusion.  Accordingly, we respectfully request that Court sustain Commerce's final determination.

## ARGUMENT

### I.    Standard Of Review

In reviewing Commerce's antidumping duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is

'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

"The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Crucially, "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). In undertaking this analysis, the Court affords "significant deference to Commerce's interpretation of a scope order." *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citing *Glob. Commodity Gr. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This is because a scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

Further, when Congress has entrusted an agency to administer a statute in fact-intensive inquiries, the agency's conclusions should be reversed only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon*

10

*Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted), and the

Court will sustain Commerce's factual determinations as long as they are reasonable and

supported by the record as a whole, even if some evidence detracts from them.  *See Atl. Sugar,*

*Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984); *Shandong Huarong Gen. Corp. v.*

*United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001).

## II.     Substantial Evidence Supports Commerce's Determination That Certain Tires Did Not Qualify For The Light Truck Spare Tires Exclusion

Substantial evidence supports Commerce's conclusion that Cheng Shin's alleged light

truck spare tires fall within the scope of the investigation and the resulting Order.  Cheng Shin

failed to demonstrate that these tires met the requirements for the light truck spare tire exclusion.

IDM at 19, Appx15976.  Specifically, record evidence shows that certain of Cheng Shin's tires

were developed so they could be used for *either* light trucks or passenger cars and have intended

dual use.  IDM at 20, Appx15977 (citing Cheng Shin Final Analysis Memorandum (May 21,

2021) at 5, Appx16030, Appx100653).  Thus, Cheng Shin's tires do not satisfy the scope

exclusion, which requires that the tires be "designed and marketed *exclusively* as temporary use

spare tires for light trucks."  IDM at 19, Appx15976 (emphasis added).

### A.     Record Evidence Supports Commerce's Conclusion That Certain Of Cheng Shin's Tires Fall Within The Scope Of The Investigation

As explained in Commerce's final determination, Commerce considered the record

evidence and reasonably concluded that the alleged light truck spare tires fell within the scope of

the investigation and were not subject to any exclusion.  IDM at 19-20, Appx15976-15977.  The

specific scope exclusion, which is a modification to the scope language that was made in the

preliminary determination, requires that tires be "designed and marketed exclusively as

temporary use spare tires for light trucks."  Appx16360.  Substantial evidence supports

Commerce's conclusion that certain of Cheng Shin's tires did not satisfy this requirement.

11

In its final decision, Commerce explained that one of the product characteristics is "tire service type," but Cheng Shin did not identify light truck as the "tire service type."  IDM at 19, Appx15976.  In fact, Cheng Shin "consistently reported in its sales data that these model tires are not for light truck service."  *Id.*; *see also* Cheng Shin Section ABC Supp. Questionnaire Response (Dec. 16, 2020) at Exhibit 2SC-4 at 34, Appx94149; Chen Shin Section B Response (Sept. 25, 2020) at Exhibit B-4.a, Appx85459; Cheng Shin Final Analysis Memo (May 21, 2021) at 5, Appx100653.  Although Commerce noted that Cheng Shin had explained that it used the ETRTO classification for tire service type, Commerce did not find this to be sufficient because "Commerce instructed all parties to report the tire service type according to the TRA classification of the reported tire model as identified in the 2019 TRA yearbook."  IDM at 20, Appx15977 (citing Product Characteristics Letter (Aug. 18, 2020), Appx6936-6937 and Cheng Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at VE-12, Appx14650, Appx97833).

Also, Commerce explained that it was unpersuaded by an email that Cheng Shin produced supporting its claim that the tires were "designed and marketed exclusively as temporary or spare tires for light trucks" because the email was not generated in the normal course of business.  IDM at 20, Appx15977 (citing Final Analysis Memorandum (May 21, 2021) at 5, Appx16030, Appx100653, and Cheng Shin's In-Lieu-of-Verification Questionnaire Response (Mar. 8, 2021) at VE-10-VE-11, Appx14648-14649, Appx97831-97832, and Exhibit VE-7-B, Appx15570-15571, Appx100359-100360).

Further. Commerce explained that the technical drawings that Cheng Shin submitted "do not indicate a light truck design exclusivity as necessary under the scope exclusion language."  IDM at 20, Appx15977; *see also* Final Analysis Memorandum (May 21, 2021) at 5, Appx16030, Appx100653; Cheng Shin's In-Lieu-of-Verification Questionnaire Response (Mar. 8, 2021) at

Exhibit VE-7-A, Appx100352.  And Commerce observed that Cheng Shin's supplied CONNUMs concordance table did not support Cheng Shin's arguments.  IDM at 20-21, Appx15977-15978 (citing Cheng Shin Section (Mar. 8, 2021) at VE-10-VE-11, Appx14648-14649, Appx97831-97832, Exhibit VE-7-A, Appx15556-15569, Appx100345-100360, Exhibit VE-7-B, Appx15570-15571, Appx100359-100360, Exhibit VE-7-C, Appx15572-15578, Appx100361-100367).

Relying on its questionnaire response and other exhibits that it submitted, Cheng Shin contends that these specific tires were designed and marketed exclusively as temporary use spare tires for light trucks.  Pl. Br. at 20-21 (citing Cheng Shin's In-Lieu-of-Verification Questionnaire Response (Mar. 8, 2021) at VE-10-VE-11, Appx14648-14649, Appx97831-97832, Exhibit VE-7-A, Appx15556-15569, Appx100345-100360, Exhibit VE-7-B, Appx15570-15571, Appx100359-100360, Exhibit VE-7-C, Appx15572-15578, Appx100361-100367).  But, as discussed above, Commerce considered and addressed these exhibits in its final determination and explained why the tires did not fall within the scope exclusion.  IDM at 19-20, Appx15976-15977; Cheng Shin Final Analysis Memorandum (May 21, 2021) at 4-5, Appx16029-16030, Appx100652-100653.

First, regarding Cheng Shin's ███████████████████ that the tires produced by Cheng Shin were designed and marketed exclusively as temporary-use spare tires for the customer's light-truck models, Commerce reasonably explained that it found the evidence – which consisted of a single email – unpersuasive because it was not generated in the normal course of business.  Cheng Shin Final Analysis Memorandum (May 21, 2021) at 5, Appx16030, Appx100653.  Specifically, the email was [████████████████████████ ████████████████████████████████████████ Cheng Shin

13

In-Lieu-Of-Verification Response (Mar. 8, 2021) at Exhibit VE-7-B, Appx15570-15571,

Appx100359-100360.  Commerce observed that ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████] Cheng Shin Final Analysis Memorandum (May 21, 2021) at 5, Appx16030,

Appx100653.  Thus, Commerce did not find this email "persuasive in light of the evidence on

the record which demonstrates that the tires were designed for both passenger cars and light

trucks." *Id.*

Although Cheng Shin disagrees with the manner in which Commerce weighed the

evidence, under the substantial evidence standard of review, "mere disagreement with

Commerce's weighing of the evidence" does not warrant setting aside Commerce's

determination. *Haixing Jingmei Chem. Prod. Sales Co. v. United States,* 335 F. Supp. 3d 1330,

1346 (Ct. Int'l Trade 2018).  Here, Commerce explained why it found the email unpersuasive,

particularly "in light of the evidence on the record, which demonstrates that the tires were

designed for both passenger cars and light trucks."  IDM at 20, Appx15977.  Thus, even though

it may be possible to draw inconsistent conclusions from the evidence, this does not render

Commerce's findings unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383

U.S. 607, 620 (1966); *see also Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)

(substantial evidence is such evidence that "a reasonable mind might accept as adequate" to

support Commerce's conclusion).

Nor did Commerce find persuasive the technical drawings that Cheng Shin contends

demonstrate that the tires "were designed exclusively as temporary-use spare tires for light

trucks."  Pl. Br. at 21.  To the contrary, Commerce found that the purchase agreements and

technical drawings show the models in question can be used for [████████████████████████

14

]. Cheng Shin Analysis Final Memorandum (May 21, 2021) at 5, Appx16030, Appx100653

(citing Cheng Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at Exh. VE-7-A,

Appx100352). Commerce explained that the "documents indicate that ███████████

████████████████████████████████████████████████████████████████████

██████████████████████████████]" *Id.*

Cheng Shin contends that Commerce should not have relied on a load capacity chart

using the ETRTO standards because ETRTO standards are for the European market. Pl. Br. at

24-25. But Cheng Shin misunderstands Commerce's explanation. Commerce agreed that the

TRA standard is the appropriate standard, and Commerce used that standard when it identified

how to report product characteristics. IDM at 20, Appx15977; Product Characteristics (Aug. 18,

2020), Appx6936-6937. During the underlying investigation, Cheng Shin explained that these

particular tires were developed under the ETRTO standard, but even if these tires had been

developed under the TRA standard, the tires "would also be classified as ███████████]."

Cheng Shin Case Brief (Mar. 25, 2021) at 6, Appx15810, Appx100574; *see also* Cheng Shin In-

Lieu-Of-Verification Response (Mar. 8, 2021) at VE-12 – VE-13, Appx14648-14649,

Appx97833-97834. Based on Cheng Shin's explanation, Commerce interpreted the documents

to "indicate that [████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████]" Cheng Shin Analysis Final Memorandum at 5 (emphasis added), Appx16030,

Appx100653 (citing Cheng Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at Exhibit

VE-7-A, Appx100352). In other words, Commerce understood that, under the ETRTO standard,

the tires met specifications for passenger car tires. And this demonstrated to Commerce that the

tires were: (1) not necessarily designed and marketed exclusively for light trucks as the scope

exclusion requires, and (2) that the tires had an intended passenger car use.  *Id*; *see also* IDM at 20, Appx15977.

Cheng Shin contends that Commerce misunderstood the load capacity chart.  Pl. Br. at 25.  But Cheng cites no record evidence supporting its claim about how the load capacity chart should be understood, or demonstrating that Commerce had erred in its interpretation.  Further, as explained above, although Cheng Shin contends that the tires were designed exclusively as light truck spare tires, before Commerce Cheng Shin maintained that under the standard in which the tires were developed (the ETRTO standard), the tires were made to fit under the passenger car category, and that this was true even under the TRA standard.  Cheng Shin Case Brief (Mar. 25, 2021) at 6, Appx15810, Appx100574; s*ee also* Cheng Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at VE-12 – VE-13, Appx14648-14649, Appx97833-97834.

Nor is Cheng Shin correct that Commerce forced it to list the tires as passenger car tires. Pl. Br. at 22-23.   Cheng Shin's product characteristic comments claimed that light truck full size spare tires were unique without explaining or demonstrating why light truck full size spare tires were unique or physically distinct.  Cheng Shin Product Characteristics Comments (July 20, 2020) at 2-3, Appx4347-4348).  Also, Cheng Shin's request does not constitute proof of the characteristics of the merchandise; it is not a specification, a plan or something directly probative of the merchandise.  Certainly, Cheng Shin's request may demonstrate its *belief* that certain tires should be considered distinct and its interest in requesting the exclusion, but its request is not proof that the alleged tires qualified for the exclusion.

Also, to meet the scope exclusion requirements, Cheng Shin's alleged light truck spare tires must be "designed and marketed exclusively as temporary use spare tires for light trucks." *Passenger Vehicle and Light Truck Tires from Taiwan*, 86 Fed. Reg. at 30,917, Appx16360.

Cheng Shin's identification of its alleged light truck spare tires as passenger car for "tire service type" is record evidence that Commerce considered when making its determination.  IDM at 20; *see also* Cheng Shin Section ABC Supplemental Questionnaire Response (Dec. 16, 2020) at Exhibit 2SC-4 at 34, Appx12802-12805, Appx94140); Cheng Shin Section B Response (Sept. 25, 2020) at Exhibit B-4.a, Appx8725, Appx85459.  Although Cheng Shin focuses on reasons why it chose passenger car for tire service type, light truck was still an option for tire service type.  Product Characteristics (Aug. 18, 2020), at Attachment at 1, Appx6937.

Finally, throughout its brief, Cheng Shin relies upon the fact that the technical drawing showed that the tires were marked for "Temporary Use Only."  *See, e.g.,* Pl. Br. at 21.  But this does not resolve whether the tires were "designed and marketed exclusively as temporary use spare tires for light trucks."  Cheng Shin may have fulfilled one criterion for the scope exclusion for light truck spare tires, but Cheng Shin failed to meet the requirement that the tires be "designed and marketed *exclusively* as temporary use spare tires *for light trucks*."  *Passenger Vehicle and Light Trucks from Taiwan*, 86 Fed. Reg. at 30, 917, Appx16360 (emphasis added).  Nor does the fact that Cheng Shin's customer's trademark and markings on the designs establish that the challenged tires are temporary-use spare tires for the customer's light-truck models.  Pl. Br. at 21.  The trademark and markings do not change the fact that the designs indicate that the tires can be  used for passenger cars as well.  Final Analysis Memo (May 21, 2021) at 5, Appx100653 (citing Cheng Shin In-Lieu-Of-Verification Response (Mar. 8, 2021) at Exhibit VE-7-A, Appx100352).

Again, all of Cheng Shin's arguments demonstrate that Cheng Shin would have weighed the evidence differently, but this fails to meet the "high barrier" that is required to set aside Commerce's determination under the substantial evidence standard.  *Nippon Steel Corp.*, 458

F.3d at 1352.  Commerce's determination and final analysis memorandum demonstrate that

Commerce considered the record evidence and identified "such relevant evidence as a reasonable

mind might accept as adequate to support {its} conclusion.  *Universal Camera Corp. v. NLRB*,

340 U.S. 474, 477 (1951).  Accordingly, Commerce's decision is supported by substantial

evidence and should be sustained.

### B.   Cheng Shin Failed To Exhaust Its Administrative Remedies With Respect To Two Of Its Passenger Car Tire Arguments

Nor should the Court entertain arguments that Cheng Shin has raised for the first time in

its appeal before this Court.

Congress has directed that "the Court of International Trade shall, where appropriate,

require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d).  This statute "indicates

a congressional intent that, absent a strong contrary reason, the court should insist that parties

exhaust their remedies before the pertinent administrative agencies."  *Boomerang Tube LLC v.*

*United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citing *Corus Staal BV v. United States*, 502

F.3d 1370, 1379 (Fed. Cir. 2007)).  And Commerce's regulations specifically require a party to

raise all arguments in a timely manner before the agency.  *Corus Staal*, 502 F.3d at 1379 (citing

19 C.F.R. § 351.309(c)(2)).  "The exhaustion requirement in this context is therefore not simply

a creature of court decision, as is sometimes the case, but is a requirement explicitly imposed by

the agency as a prerequisite to judicial review."  *Corus Staal*, 502 F.3d at 1379.

"{G}eneral policies underlying the exhaustion requirement — 'protecting administrative

agency authority and promoting judicial efficiency'"— would be vitiated if the Court were to

consider arguments raised for the first time in judicial proceedings.  *See id.* (quoting *McCarthy v.*

*Madigan*, 503 U.S. 140, 145 (1992)).  For these reasons, this Court should "generally take{} a

'strict view' of the requirement that parties exhaust their administrative remedies before

{Commerce} in trade cases." *Corus Staal*, 502 F.3d at 1379.  Exceptions to the exhaustion requirement can be made only if exhaustion would have been "futile," the relevant matter is a "pure question of law," an intervening court decision would affect the agency's action, or a party had no reason to believe the agency would not follow established precedent.  *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145–48 (Fed. Cir. 2013); *Luoyang Bearing Factory v. United States*, 240 F. Supp. 2d 1268, 1297 n.26 (Ct. Int'l Trade 2002)).

Here, Cheng Shin raises two new arguments for the first time before this Court. Specifically, Cheng Shin contends that:  (1) although there was an overlap in specifications between light truck spare tires and regular-use passenger car tires, other differences meant that light truck spare tires could not be used as regular-use passenger tires,  Pl. Br. at 24, 26, and (2) the tires do not conform to the requirements of passenger spare tires.  Pl. Br. at 26.  Because Cheng Shin failed to exhaust its administrative remedies by raising these arguments during the investigation, Cheng Shin is barred from raising them now.

As explained above, 28 U.S.C. § 2637(d) demonstrates that Congress intended for parties to exhaust their administrative remedies during the underlying agency proceedings. *Boomerang Tube*, 856 F.3d at 912 (citing *Corus Staal*, 502 F.3d at 1379).  Cheng Shin has not provided "a strong contrary reason" explaining its failure to raise these arguments during the investigation.  *Boomerang Tube*, 856 F.3d at 912 (citing *Corus Staal*, 502 F.3d at 1379).  And there is no reason why Cheng Shin could not have raised these arguments in a timely manner. Nothing in the law has changed since Commerce conducted the administrative proceedings, nor have there been any changes in the record facts.

Cheng Shin also failed to adhere to Commerce's regulation at 19 C.F.R. § 351.309(c)(2), which requires parties to include all arguments relevant to Commerce's final determination –

including arguments presented before the preliminary determination – in their case briefs.  As the Federal Circuit has recognized, "{s}imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against *objection made at the time appropriate under its practice*."  *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383–84 (Fed. Cir. 2008) (emphasis added) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).  Here, if Cheng Shin had raised its arguments that light truck spare tires could not be used as passenger car tires, and that light truck tires do not conform to passenger spare tire specifications in its case brief before Commerce, then Commerce would have had the opportunity to consider and address them in the final determination.  Because Cheng Shin failed to do so, it cannot raise these arguments now.

Even though Cheng Shin raised other arguments about whether certain of its tires met the light truck spare tires scope exclusion requirements before Commerce, such as Cheng Shin's development of the tires under the ETRTO and selling the tires to one customer, that does not relieve Cheng Shin of its obligation to exhaust the new arguments that it raises before this Court.  For example, in *Dillinger Fr. S.A. v. United States*, 350 F. Supp. 3d 1349, 1371 (Ct. Int'l Trade 2018), the plaintiff asserted that its inter-product argument was "part and parcel" of its zeroing allegations.  But the Court rejected that argument and explained that challenging one aspect of the statute did not incorporate every conceivable challenge to elements of that analysis.  *Id.* at 1372 (quoting *Stanley Works (Langfang) Fastening Sys., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1189 (2017)).  Here, in its case brief Cheng Shin claimed that certain of its tires met the scope exclusion requirement, but it did not raise these specific arguments about whether the alleged light truck spare tires did not meet regular use or temporary use passenger car tires in

20

support of its claim.  *See generally* Cheng Shin Case Brief (Mar. 25, 2021), Appx15797-15827,

Appx100561-100591.  Thus, Commerce did not have the opportunity to consider and address

these arguments in its final determination.

Also, none of the exceptions to the exhaustion requirement applies.  *Itchou Bldg.*, 733

F.3d at 1145-48 (identifying the exceptions).  Cheng Shin's arguments do not present a purely

legal question because these arguments are dependent on the record facts of this case.  And there

has been no intervening change in the law that might excuse its failure.  Cheng Shin's arguments

also do not qualify for the futility exception because there is no indication that Commerce would

not have considered or addressed the arguments.  Further, the futility exception is narrow and

strictly viewed, and the "mere fact that an adverse decision may have been likely does not excuse

a party from a statutory or regulatory requirement that it exhaust administrative remedies."

*Corus Staal*, 502 F.3d at 1378-81.  Thus, because Cheng Shin failed to exhaust its administrative

remedies and no exception applies, we respectfully urge the Court to decline to consider these

new arguments.

**C.     Commerce Applied The Scope And Lawfully Required Cheng Shin To Demonstrate That Certain Of Its Tires Qualified For The Scope Exclusion**

Finally, contrary to Cheng Shin's allegations, Commerce in the final determination did

not modify the scope; it applied the scope exclusion to certain of Cheng Shin's tires and lawfully

determined that such tires were not covered by the exclusion.  Pl. Br. at 27-29.

Regardless of any agreement on scope language among the parties, Commerce ultimately

decides the language of a scope, including any exclusions, and applies the record facts to the

scope to determine whether a product is in scope or out of scope.  *E.g., Mitsubishi Elec. Corp. v.

United States*, 898 F.2d 1577, 1582-83 (Fed. Cir. 1990) ("The determination of the applicable

scope of an antidumping order that will be effective to remedy the dumping that {Commerce}

21

has found lies largely in {Commerce's} discretion.").  Here, although the petitioner may have agreed to include a scope exclusion from the order for light truck spare tires that satisfied certain criteria, in its rebuttal brief before Commerce the petitioner did *not* agree that Cheng Shin's alleged light truck spare tires satisfied the scope exclusion criteria.  Petitioner Rebuttal Brief (April 2, 2021) at 3-5, Appx15862-15864, Appx100605-100607.  In fact, the petitioner rebutted Cheng Shin's claim arguing that the scope exclusion request was for light trucks, and argued that Cheng Shin did not meet the exclusion criteria because the tires were reported for passenger car service, not light truck service.  *Id.* at 4, Appx15863, Appx100606.  Specifically, the petitioner remarked that Cheng Shin did not state that light truck spare tires would be classified as passenger car tires, only that light truck spare tires are not included in the TRA yearbook.  *Id.* at 5, Appx15864, Appx100607.  And the petitioner explained that in Cheng Shin's scope comments, "Cheng Shin did not claim that the tires that it sought to exclude were [          █████████████████] in the TRA yearbook or in the European standard."  *Id.* at 4-5, Appx15863-15864, Appx100606-100607.  Thus, the petitioner argued that the tires did not qualify for the scope exclusion and were "correctly retained in the database" used by Commerce to determine whether dumping occurred.  *Id.* at 5, Appx15864, Appx100607.

In the final determination, Commerce applied the scope language including the scope exclusion criteria but did not change it.  And Commerce weighed the evidence for and against Cheng Shin's claim and determined that the record evidence did not support finding that the tires qualified for the light truck spare tire exclusion because evidence showed those particular tires' intended use extended to passenger cars and thus, the tires are not exclusive to light trucks.  IDM at 20, Appx15977.  Ultimately, the burden of building the administrative record lies with the interested parties.  *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)

(citations omitted).  Here, Cheng Shin failed to develop the record in such a manner that it demonstrated to Commerce that its tires fell within the scope exclusion.

Finally, to the extent that the Court is persuaded that Cheng Shin's explanation that its position is supported by record evidence and is reasonable, a "party's ability to point to an alternative, reasonable finding on the agency record does not provide a basis for the court to set aside an agency's determination."  *Pokarna Engineered Stone, Ltd. v. United States*, 547 F. Supp. 3d 1300, 1308 (Ct. Int'l Trade 2021) (cleaned up); *Consolo*, 383 U.S. at 620 (explaining that the possibility of drawing inconsistent conclusions from evidence upon the record does not render Commerce's findings unsupported by substantial evidence).  To establish that Commerce's determination is unreasonable, Cheng Shin must demonstrate that its preferred outcome was the one and only reasonable conclusion Commerce could reach in light of the record.  *Pokarna Engineered Stone*, 547 F. Supp. 3d at 1308.  Cheng Shin has not done so here. Thus, the Court should sustain Commerce's determination.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Cheng Shin's motion and sustain Commerce's final determination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

*PUBLIC VERSION*

OF COUNSEL:                              /s/ Elizabeth Anne Speck
VANIA WANG                               ELIZABETH ANNE SPECK
Attorney                                 Trial Attorney
Department of Commerce                   U.S. Department of Justice
Office of the Chief Counsel              Civil Division
  for Trade Enforcement & Compliance     Commercial Litigation Branch
                                         P.O. Box 480
                                         Ben Franklin Station
                                         Washington, D.C.  20044
                                         Tel: (202) 307-0369
                                         Fax: (202) 353-0461

April 12, 2022                           Attorneys for Defendant

*PUBLIC VERSION*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the

Court's scheduling order in that it contains 6,953 words, including text, footnotes, and headings.


/s/ Elizabeth Anne Speck