Slip Op. No. 23-16

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CHENG SHIN RUBBER IND. CO. LTD., <br><br>      *Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br>      *Defendant*, <br><br>    *and* <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br>      *Defendant-Intervenor*. | Before: Stephen Alexander Vaden, Judge <br><br> Court No. 21-00398 |

### OPINION AND ORDER

[Affirming Commerce's Final Determination.]

Dated:  February 13, 2023

*Amrietha Nellan*, Winton & Chapman PLLC, of Washington, DC, for Plaintiff Cheng Shin Rubber Ind. Co. Ltd. With her on the brief were *Jeffrey Michael Winton, Michael J. Chapman*, and *Vi N. Mai*.

*Elizabeth Anne Speck*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Vania Y. Wang*, Of Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Elizabeth J. Drake*, Schagrin Associates, of Washington, DC, for Defendant-Intervenor United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. With her on the brief was *Roger B. Schagrin*.

**Vaden, Judge:** Vladimir Lenin is reputed to have said, "When it comes time to hang the capitalists, they will vie with each other for the rope contract."[1]  Plaintiff Cheng Shin Rubber Industry Co. (Cheng Shin) comes before the Court to complain that it did not receive the benefit of its bargain.  It negotiated with the United Steelworkers Union (the Union) for an exclusion for certain spare tires made for light trucks from Taiwan under investigation by the Department of Commerce (Commerce).  Having agreed on acceptable language with the Union, Cheng Shin expected its tires would qualify and be excluded from any duties Commerce imposed.  Instead, Commerce found that Cheng Shin's tires did not qualify for the exclusion

---

[1] The *Oxford Essential Quotations* provides the following version and possible origin of the attribution:

> The capitalists will sell us the rope with which to hang them.
> attributed to Lenin, but not found in his published works in this form; I. U. Annenkov, in 'Remembrances of Lenin' includes a manuscript note attributed to Lenin: 'They [capitalists] will furnish credits which will serve us for the support of the Communist Party in their countries and, by supplying us materials and technical equipment which we lack, will restore our military industry necessary for our future attacks against our suppliers. To put it in other words, they will work on the preparation of their own suicide', in *Novyi Zhurnal/New Review* September 1961

OXFORD ESSENTIAL QUOTATIONS (Susan Ratcliffe, ed., 6th ed. 2018), https://bit.ly/3DBto9t.

and therefore fell within the scope of the resulting antidumping order.  Cheng Shin

asserts that Commerce's determination is not supported by substantial evidence.  The

Court disagrees.  Commerce's final determination is supported by the very answers

Cheng Shin gave to the questions Commerce proffered.  Like Vladimir Lenin's

apocryphal capitalists, Cheng Shin was done-in by its own hand.  And given the

deferential standard of review, that Commerce *may* have been able to reach a

different result on this record does not allow the Court to compel the agency to do so.

Cheng Shin's Motion for Judgment on the Agency Record will be **DENIED** and

Commerce's determination will be **AFFIRMED**.

## BACKGROUND

Cheng Shin is a Taiwanese producer and exporter of passenger vehicle and

light truck tires.  Comments on CBP Data and Respondent Selection (Respondent

Selection) at 1–2 (July 2, 2020), J.A. at 82,464–65, ECF No. 61; *see Passenger Vehicle*

*and Light Truck Tires from the Republic of Korea, Taiwan, and Thailand:*

*Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty*

*Determination for Thailand Final Determination* (Final Determination), 86 Fed. Reg.

38,011, 38,012 (July 19, 2021).

The products at issue in this case are two of Cheng Shin's tire models that

must meet the following standards to qualify for exclusion from the investigation:

> (5) tires designed and marketed exclusively as temporary-
> use spare tires for light trucks which, in addition, exhibit
> each of the following physical characteristics:

>
> (a) The tires have a 255/80R17, 265/70R17, or 265/70R16 size designation;
> (b) "Temporary-use Only" or "Spare" is molded into the tire's sidewall;
> (c) the tread depth of the tire is no greater than 6.2 mm; and
> (d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which may have UTQG molded on the tire sidewall[.]

Final Determination, 86 Fed. Reg. at 38,013.

## I.  The Disputed Final Determination

The Union filed its petition with Commerce on May 13, 2020, and Commerce began an antidumping investigation into passenger vehicle and light truck tires from Korea, Taiwan, Thailand, and Vietnam the following month. *Passenger Vehicle and Light Truck Tires from the Republic of Korea, Taiwan, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations* (Initiation of Investigation), 85 Fed. Reg. 38,854 (June 29, 2020).  Cheng Shin requested to be named as a mandatory respondent in the investigation on July 2, 2020.  Respondent Selection at 1–2, J.A. at 82,464–65, ECF No. 61.[2]  Commerce selected Cheng Shin and another company not a party to this case as mandatory respondents.  Selection of Respondents for Individual Examination at 7 (July 28, 2020), J.A. at 82,584, ECF No. 61.

---

[2] Cheng Shin was represented by different counsel during the investigation and proceedings before Commerce.

Commerce's initiation notice explained that, when listing product characteristics for control numbers (CONNUMs), it "attempts to list the most important physical characteristics first and the least important characteristics last." Initiation of Investigation, 85 Fed. Reg. at 38,855.[3] Here, Commerce listed tire service type first, meaning it was the most important characteristic that Commerce would consider in this investigation. *Id.* at 38,859. On July 20, 2020, Cheng Shin filed Characteristic Comments in which it proposed adding a fourth product characteristic code under the tire service type field. Cheng Shin's Product Characteristic Comments (Characteristic Comments) at 2, J.A. at 4,347, ECF No. 60. Tire service types are based on the Tire and Rim Association's (TRA)[4] Classifications and included the following three categories: 01 for passenger car, 02 for light truck, and 03 for special trailer. *Id.* Cheng Shin proposed a fourth type: "04=Light Truck Full Size Spare (with reduce tread depth) [*sic*]." *Id.* It wanted this fourth category added because temporary-use light truck tires were included in the investigation but had no distinct TRA Yearbook entry. *Id.* at 3. Because its spare tires "are physically

---

[3] The listing of characteristics in a hierarchy of importance is Commerce's standard procedure for constructing control numbers. *See Union Steel v. United States*, 823 F. Supp. 2d 1346, 1349–50 (CIT 2012) ("A 'CONNUM' is a contraction of the term 'control number,' and is simply Commerce['s term] for a unique product (defined in terms of a hierarchy of specified physical characteristics determined in each antidumping proceeding).") (quoting plaintiffs' briefing).

[4] The Tire and Rim Association is an American organization that establishes and promulgates "interchangeability standards for tires, rims and allied parts for the guidance of manufacturers and users of such products, designers and manufacturers of motor vehicles, aircraft and other wheeled vehicles and equipment, and governmental and other regulatory bodies." Petition for Imposition of Antidumping and Countervailing Duties at Ex. 7, J.A. at 1,247, ECF No. 60. "The YEAR BOOK contains all TRA Standards and related information approved by the Association for tires, rims and allied parts for ground vehicles." *Id.* at 1248.

distinct from other subject merchandise," Cheng Shin argued that the additional service type was necessary. *Id.*

Cheng Shin also submitted its Scope Comments to Commerce on that same date and suggested that Commerce create an exclusion for temporary-use light truck tires. *See* Cheng Shin Scope Comments (Scope Comments) at 2–5, J.A. at 4,369–72, ECF No. 60.[5] This would complement the proposed initial scope, which contained an exclusion for tires "designed and marketed exclusively as temporary-use spare tires for passenger vehicles[.]" Initiation of Investigation, 85 Fed. Reg. at 38,860. Cheng Shin attached drawings of the temporary-use light truck tires for which it sought an exclusion and that were "[t]he tires subject to these scope comments." Scope Comments at 3, J.A. at 4,370, ECF No. 60. Cheng Shin proposed that Commerce add the following exclusion: "Excluded from the scope of these investigations are light truck spare tires that are stamped on the sidewall of the tire as temporary-use." *Id.* at 7. It argued that Commerce should create this exclusion because light truck spare tires and light truck tires for everyday use have different physical characteristics (*i.e.*, different tread depth), consumer expectations, end uses, and advertising. *Id.* at 7–11.

On July 30, 2020, the Union filed a rebuttal to Cheng Shin's proposed changes to the product characteristics of the subject merchandise under investigation.

---

[5] Because of a numbering error in the Joint Appendix, the page range in which this document falls is repeated in an earlier section of the appendix such that there are two page 4,369s, 4,370s, etc.

Petitioner's Product Characteristics Comments Rebuttal (Product Characteristics Rebuttal) at 1, J.A. at 6,088, ECF No. 60. The Union rejected Cheng Shin's proposed addition of a fourth service type for temporary-use light truck tires because the "only indication of difference" between these tires and other subject tires was the tread depth. *Id.* at 10. It explained that tread depth was "already accounted for" in a later number comprising the 15-digit CONNUM and creating a new category "would create opportunities for manipulation." *Id.* Most importantly, "[a]s service type is the first characteristic in the hierarchy, reporting tires as different service types would normally be determinative on matching." *Id.* at 10 n.36.

On August 5, 2020, Commerce issued its initial antidumping questionnaire to Cheng Shin. *See* Request for Information Antidumping Duty Investigation Cheng Shin (Antidumping Questionnaire), J.A. at 6,778, ECF No. 60. In its accompanying letter, Commerce explained that it was "still evaluating the information necessary for reporting the control number and physical characteristics," *i.e.*, Cheng Shin and other respondents' requests to modify the products characteristics of the investigation. Letter Accompanying Antidumping Questionnaire at 2 (Aug. 5, 2020), J.A. at 6,775, ECF No. 60 (emphasis removed). Therefore, until the product characteristics were finalized, Commerce would not assign due dates for Sections B (Sales in the Home Market or to Third Countries), C (Sales to the United States), and D (Costs of Production/Constructed Value) of the questionnaire because the due dates would depend on Commerce's determination. *Id.*

Thirteen days later, on August 18, 2020, Commerce rejected Cheng Shin's proposed fourth category. *See* Dep't of Commerce Product Characteristics at Attach., J.A. at 6,937, ECF No. 60. The first — and most important — field of the CONNUM, therefore, listed three possible choices for respondents: "01=Passenger Car," "02=Light Truck," and "03=Special Trailer." *Id.* Tread depth was the eleventh of fifteen total fields in the product characteristics used to construct the CONNUM. *Id.* at 6,943. Commerce instructed Cheng Shin to "use these product characteristics in any response to sections B through D of the [antidumping] questionnaires issued in these investigations." *Id.* at 6,935.

On September 25, 2020, Cheng Shin filed its Section B response addressing sales in its home market and in third countries.  Cheng Shin Section B & D Responses, J.A. at 85,331, ECF No. 61.  On September 29, 2020, Cheng Shin filed its Section C response detailing its sales to the United States.  Cheng Shin Section C Response, J.A. at 88,652, ECF No. 61.  In Cheng Shin's sales databases that it submitted in its Section B and C responses, it chose the number "1," meaning passenger car, for the TRA Yearbook service type of the tires at issue here. *Id.* at Ex. C-4;  Cheng Shin's Section B Response at B-11–12, J.A. at 85,352–53, ECF No. 61. Commerce had not yet decided on its exclusion request for temporary-use light truck tires, but the Union had warned two months earlier that the selection of tire service types "would normally be determinative."  Product Characteristics Rebuttal at 10 n.36, J.A. at 6,097 ECF No. 60; Cheng Shin's Section B Response at B-11–12, J.A. at

85,352–53, ECF No. 61.  Cheng Shin later explained that it chose the designation for

passenger car because the tires were developed under the European Tyre and Rim

Technical Organization's (ETRTO)[6] standards and the tires "fit into the passenger

car section of the ETRTO standard."  In Lieu of Verification Questionnaire Response

(Questionnaire Response) at VE-12, J.A. at 97,833, ECF No. 61.  In its final brief

before Commerce, Cheng Shin stated that the TRA Yearbook would also classify its

tires as passenger tires.  Administrative Case Brief at 6 n.10, J.A. at 100,574, ECF

No. 61

On September 25, 2020, the Union filed rebuttal comments to Cheng Shin's

request for an exclusion for temporary-use light truck tires.  Petitioner's Response on

Light Truck Spare Tires (Petitioner's Scope Rebuttal) at 1–2 , J.A. at 8,596–97, ECF

No. 60.  The Union supported creating an exclusion but argued that Cheng Shin's

"request should be modified to better prevent circumvention and improve

administrability[.]"  *Id.*  Cheng Shin's requested exclusion for temporary-use light

truck tires had only one requirement — having temporary-use stamped on the

sidewall — but the exclusion for spare passenger tires had multiple design and

marketing requirements drawn, in part, from the TRA Yearbook. *Id.* at 4–5. Because

there was no separate TRA Yearbook listing for temporary-use light truck tires, the

Union proposed combining the requirements of design and marketing exclusivity

---

[6] ETRTO is the European equivalent of the TRA.

from the exclusion for spare passenger tires with "some of the distinguishing characteristics highlighted by Cheng Shin":

> (5) tires designed and marketed exclusively as temporary-use spare tires for light trucks which, in addition, exhibit each of the following physical characteristics:
>> (a) are of a 255/80R17, 265/70R17, or 265/70R16 size designation;
>> (b) "Temporary-use Only" is molded into the tire's sidewall;
>> (c) the tread depth of the tire is no greater than 6.2 mm; and
>> (d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall[.]

*Id.* at 5 (emphasis removed). The Union explained that "the first requirement of this exclusion . . . limits the exclusion to tires that are intended and designed to be used as temporary spares, as Cheng Shin avers the tires in its request are." *Id.*

After further consultation, the parties reached agreement on draft language, which Cheng Shin proposed to Commerce with the Union's consent. *See* Cheng Shin Revised Scope Exclusion Language (Revised Exclusion) at 1 (Dec. 10, 2020), J.A. at 12,293, ECF No. 60; Petitioner's Response on Cheng Shin's Scope Request at 1 (Dec. 11, 2020), J.A. at 12,300, ECF No. 60. Cheng Shin's final proposed language largely tracked the Union's counterproposal:

> Excluded from the scope are tires designed and marke[te]d[7] exclusively as "temporary-use" or "spare" tires for light trucks which, in addition, exhibit each of the following physical characteristics:

---

[7] Cheng Shin's initial submission contained this erratum that Commerce corrected. *See* Preliminary Scope Memorandum at 11, J.A. at 12,897, ECF No. 60.

> (a) are of a 265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17, 265/70R18, or 265/70R18 size designation;
> (b) "Temporary-use Only" or "Spare" is molded into the tire's sidewall;
> (c) the tread depth of the tire is no greater than 6.2 mm; and
> (d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which may have UTGC molded on the tire sidewall.

Revised Exclusion at 2, J.A. at 12,294, ECF No. 60. The Union, in agreeing to the revised language, stated that it was agreeing to an exclusion only for "certain specifically defined light truck spare tires[.]" Petitioner's Response on Cheng Shin's Scope Request at 1, J.A. at 12,300, ECF No. 60. Commerce adopted this exclusion as proposed, following its "practice of providing ample deference to the petitioner with respect to the products for which it seeks relief in these investigations[.]" Preliminary Scope Memorandum at 11, J.A. at 12,897, ECF No. 60.

On December 30, 2020, Commerce issued its Preliminary Decision Memorandum (PDM) and included Cheng Shin's temporary-use light truck tires within the proposed order's scope. *See* PDM at 12–15, J.A. at 12,857–60, ECF No. 60. Cheng Shin filed comments asserting this was a ministerial error on Commerce's part on January 5, 2021. Ministerial Error Comments at 2, J.A. at 94,700, ECF No. 61. Cheng Shin argued that its temporary-use light truck tires should have been excluded because they met all the parameters laid out in the agreed-upon exclusion. *Id.* at 3–5. Cheng Shin further explained that it had previously notified Commerce that the excluded tires had been included in its sales files because Commerce had not yet

decided on Cheng Shin's exclusion request when it was required to submit this data. *Id.* at 3. Commerce rejected Cheng Shin's arguments, explaining that Cheng Shin's tires did not meet the exclusion's terms because Cheng Shin's U.S. sales database listed them as having the tire service type "passenger car." Ministerial Error Memorandum at 6 (Feb. 3, 2021), J.A. at 94,739, ECF No. 61. Commerce understood this listing to show that the tires were not "designed and marketed exclusively as temporary-use spare tires for light trucks." *Id.* at 6.

On February 25, 2021, Commerce issued a questionnaire in lieu of on-site verification to Cheng Shin. Questionnaire in Lieu of Verification (Questionnaire), J.A. at 94,814, ECF No. 61. The Questionnaire investigated Cheng Shin's ministerial error comments and asked Cheng Shin to "provide a detailed explanation as to how these CONNUMS [the two disputed tire models] meet the exclusionary criteria." *Id.* at 94,818–19. Chen Shin submitted its questionnaire responses on March 5, 2021. Questionnaire Response, J.A. at 97,821, ECF No. 61. Cheng Shin explained that a manufacturer ordered the tires as temporary-use light truck tires for specific light truck vehicle models. *Id.* at VE-10–11. It provided the purchase contracts and technical drawings that the buyer approved before the beginning of production. *Id.* at VE-11, Ex. VE-7A. Cheng Shin also provided the buyer's email confirmation, requested on February 24, 2021, that the tires were exclusively designed and marketed as temporary-use light truck tires. *Id.* at Ex. VE-7B.

Cheng Shin then explained why it had nonetheless chosen "passenger car" as the tire service type, which was the primary reason for Commerce's decision that the tires were within the scope. Ministerial Error Memorandum at 6, J.A. at 94,739, ECF No. 61. It stated that the tires were developed under the European Tyre and Rim Technical Organization's (ETRTO) standards; and under those standards, they were classified as passenger car tires. Questionnaire Response at VE-12, J.A. at 97,833, ECF No. 61. Thus, "Cheng Shin's R&D Division assigned internal product codes to these tire models accordingly." *Id.* Cheng Shin concluded this by stating that "these tire models meet the standards of passenger tire[s], but [the customer] ordered and designed them exclusively as spare tire [*sic*] of light truck [*sic*]." *Id.* at VE-13.

On March 24, 2021, Cheng Shin again argued for an exclusion for its tires in its administrative case brief before Commerce. Administrative Case Brief at 4–8, J.A. at 100,572–76, ECF No. 61. It reiterated its arguments from the Ministerial Error Comments that it had met all the exclusion's requirements. *Id.* at 5–6. Cheng Shin also reaffirmed that the TRA Yearbook would classify its tires as passenger tires. *Id.* at 6 n.10 ("To clarify, if these models had been developed under the standard of TRA, they would also be classified as 'passenger tire.'"). It once again stated that the tires met the standards of passenger tires. *Id.* at 6–7 ("In short, these tire models meet the standards of passenger tires, but [the customer] ordered and designed these tires exclusively as spare tires of light trucks.").

Commerce rejected Cheng Shin's arguments in its Issues and Decisions Memorandum (IDM), which Commerce adopted in its Final Determination. *See* Final Determination, 86 Fed. Reg. at 38,011; IDM at 19, J.A. at 15,976, ECF No. 60. It emphasized that the exclusion required that the tires be "designed and marketed exclusively as temporary-use spare tires for light trucks." IDM at 19, J.A. at 15,976, ECF No. 60 (quoting the exclusion language) (emphasis removed). Commerce found that Cheng Shin had consistently described the tires in its submissions as not falling under the service type for light trucks. *Id.* Significantly, Commerce explained that Cheng Shin admitted that "the sizes and characteristics of these tires fit within both service types for light truck spare tires and for the other service type as reported." *Id.* at 20.

Commerce also addressed Cheng Shin's argument that the tires were in fact designed and produced exclusively to meet its customer's request for temporary-use light truck tires. *Id.* It found that the purchase agreements and business proprietary information did not show design exclusivity but further evidenced a dual-use. *Id.* Cheng Shin's customer confirmation was unpersuasive because the "email was not generated as part of Cheng Shin's normal course of business[.]" Final Calculation Memorandum, J.A. at 100,653, ECF No. 61. Cheng Shin sent the email requesting confirmation on February 24, 2021, during the pendency of the investigation and only one day before the in-lieu of verification questionnaire was sent. *Id.* The technical drawings and purchase agreements demonstrated that, under both European and

American standards, the tires had a potential dual-use as passenger tires and temporary-use light truck tires. *Id.* The Final Calculation Memorandum cited a load chart included in Cheng Shin's customer contracts that listed different load bearing figures for both passenger car tires and light truck tires in support of this conclusion. *Id.* Because Commerce concluded that the tires in question had a dual classification, it determined they are within the scope of the order. *See* Final Determination, 86 Fed. Reg. at 38,012; IDM at 19, J.A. at 15,976, ECF No. 60.

## II.    The Present Dispute

Plaintiff Cheng Shin filed this action on August 11, 2021, seeking to overturn Commerce's decision not to exclude its temporary-use light truck tires. Summons, ECF No. 1. On February 11, 2022, Cheng Shin filed its Motion for Judgment on the Agency Record. Pl.'s Mot. for J. on the Agency R. (Pl.'s Mot.), ECF No. 42. Cheng Shin raises three primary arguments: (1) Its light truck spare tires were exclusively designed and marketed as such; (2) Commerce's conclusion to the contrary lacked substantial evidence; and (3) Commerce's failure to exclude the tires in question unlawfully changed the scope of the order. *Id.* at 3.

Commerce and Defendant-Intervenor responded on April 13, 2022, and April 12, 2022, respectively. Def.'s Resp. to Pl.'s Mot. for J. on the Agency R. (Def.'s Resp.), ECF No. 53; Def.-Int.'s Resp. to Pl.'s Mot. for J. on the Agency R. (Def.-Int.'s Resp.), ECF No. 49. Commerce argues that substantial evidence supports its decision that it did not unlawfully modify the scope of the investigation and that two of Cheng

Shin's arguments are barred by administrative exhaustion. Def.'s Resp. at 11, 18, 21, ECF No. 53.   The Union argues that Commerce's decision was supported by substantial evidence taken from Cheng Shin's own submissions to Commerce and that the scope of the proceeding was never unlawfully modified, as Cheng Shin's tires did not meet the terms of the exclusion.   Def.-Int.'s Resp. at 7–9, ECF No. 49.

Cheng Shin filed its reply on May 10, 2022, and raised for the first time an alleged inconsistency between the determination at issue in this case and a subsequent scope ruling by Commerce.   It appended that subsequent scope ruling to its brief. Pl.'s Reply at 15, ECF No. 58.   Cheng Shin also argued that it was unlawful for Commerce to use the TRA Service Type to find that the tires were not excluded and that Commerce unlawfully modified the scope by not excluding the specific tires for which Cheng Shin had negotiated an exclusion.   *Id.* at 4–6.   The Court ordered Commerce to file a sur-reply addressing Cheng Shin's arguments regarding the subsequent scope determination.   ECF No. 64.   On August 26, 2022, Commerce did so, arguing that the alleged inconsistency between this ruling and a subsequent scope ruling was a result of the different records in each case and that Cheng Shin bore the burden of building the record before the agency. Def.'s Sur-Reply at 2, ECF No. 65.

At oral argument the Court asked the parties whether Cheng Shin had asked Commerce for advice on how to report the service type for its light truck spare tires. Oral Arg. Tr. 8:7–11, 29:11–23, ECF No. 76.   The parties were unaware of Cheng Shin's asking Commerce for advice.   *Id.* at 8:24–9:3, 29:24.   After oral argument, the

Court ordered that the parties file letter statements "regarding whether there is record evidence that Plaintiff Cheng Shin asked Commerce for advice in answering the question about product characteristics[.]" Minute Order, ECF No. 71. Commerce and Plaintiff agreed that Cheng Shin never asked Commerce for advice or assistance in designating the tire service type for the tires in question. *See* Commerce Resp. to Court's Request/Order at 1, ECF No. 73; Pl.'s Resp. to Court's Request/Order and Def.'s Oct. 5 Letter at 2, ECF No. 74.

## JURISDICTION AND STANDARD OF REVIEW

19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) grant the Court authority to review actions contesting antidumping determinations. The Court must sustain Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i). If they are unsupported by substantial evidence or not in accordance with the law, the Court must "hold unlawful any determination, finding, or conclusion found." *Id.* "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *See New American Keg v. United States*, No. 20-00008, 2021 WL 1206153, at *6 (CIT Mar. 23, 2021).

Reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir.

2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I.   Summary

This case presents the question of whether Commerce's determination that Cheng Shin's tires did not qualify for the exclusion for temporary-use light truck tires was supported by substantial evidence. Cheng Shin argues that (1) its tires met the terms of the exclusion, (2) Commerce unlawfully modified the scope of the exclusion, and (3) the ruling in this case is inconsistent with a subsequent scope ruling. Pl.'s Reply at 4–6, 15, ECF No. 58. Commerce counters that (1) record evidence supports its decision, (2) it did not unlawfully modify the scope of the exclusion, and (3) the subsequent scope ruling is irrelevant and not on the record of this proceeding. Def.'s Resp. at 11, 21, ECF No. 53; Def.'s Sur-Reply at 2, ECF No. 65.

First, Cheng Shin provided Commerce with the substantial evidence necessary to find that its tires did not meet the negotiated exclusion. The exclusion required that tires be "designed and marketed exclusively" as temporary-use light truck tires. Cheng Shin twice affirmed to Commerce that its tires met the standards of passenger

tires, including during the verification process when Cheng Shin was on full notice of

the concerns Commerce had.  Cheng Shin bore the responsibility of making the record

before Commerce.    Cheng Shin's other evidentiary objections, based on the

inapplicability of the TRA Yearbook to its tires and alternative conclusions Commerce

could reach are also unavailing because they improperly request that the Court

reweigh the evidence.

Second, Cheng Shin's claim that Commerce unlawfully modified the scope of

the exclusion fails.  After placing evidence on the record that its tires were passenger

car tires under the TRA Yearbook and the ETRTO standards, Cheng Shin proceeded

to negotiate an exclusion that required exclusivity of design and marketing.  During

these negotiations, the Union never stated that Cheng Shin's tires met this

requirement.  Cheng Shin found itself in an unfortunate position, having negotiated

an agreement its prior submitted evidence made it hard to satisfy.  Buyer's remorse

is insufficient for the Court to overturn Commerce's decision.  Commerce did not

unlawfully modify the scope of the order.

Third, the subsequent scope ruling in which Commerce found that different

Cheng Shin tires qualified for the exclusion is irrelevant.  By definition, any

subsequent scope ruling was not on the record before Commerce when it made its

decision. Commerce may only consider the record before it in making its decision.  To

consider the later ruling would be legal error.  Commerce's subsequent scope ruling

— in a separate proceeding with a different record — has no bearing on the outcome

here; therefore, Cheng Shin's third argument is similarly unavailing.    Because
Commerce's decision is supported by substantial evidence on the record and is not
otherwise contrary to law, the Court **AFFIRMS** Commerce's Final Determination.

## II.    Analysis

### A. Substantial Evidence Supports Commerce's Decision

The first issue is whether substantial evidence supports Commerce's
determination that Cheng Shin's tires were not exclusively designed and marketed
as temporary-use light truck tires.    The first section of the parties' agreed-upon
exclusion limits its application to "tires designed and marketed exclusively as
'temporary-use' or 'spare' tires for light trucks[.]"    Preliminary Scope Memorandum
at 11, J.A. at 12,897, ECF No. 60.    Cheng Shin argues that Commerce erroneously
concluded that its tires were not exclusively marketed and designed as temporary-
use light truck tires because Commerce misunderstood its submissions.    Pl.'s Mot. at
20–27, ECF No. 42.    Specifically, Cheng Shin claims that its selection of the passenger
car service type was because of the timing of the investigation and was not meant to
signify that the tires were designed and marketed as passenger tires.    *Id.* at 22–23.
It also argues that Commerce erroneously interpreted a load bearing chart as
showing that the tire models had a dual-use when the chart only showed the various
load capacities of passenger and light truck tires.    *Id.* at 25–26.    Finally, Cheng Shin
points to its customer agreements identifying the tires as spare tires for specific light
truck models in support of its position.    *Id.* at 21.    Commerce counters that Cheng

Shin identified the tires during the investigation as passenger tires under both the ETRTO standards and the TRA Yearbook. Def.'s Resp. at 12, ECF No. 53. It did so even after the exclusion negotiations ended and Commerce had flagged the issue in its Ministerial Error Memorandum. Ministerial Error Memorandum at 6, J.A. at 94,739, ECF No. 61. Commerce found that Cheng Shin's tires did not meet the requirements of the exclusion because Cheng Shin "clearly states that the sizes and characteristics of these tires fit within both service types for light truck spare tires and the other service type as reported." IDM at 20, J.A. at 15,977, ECF No. 60. Thus, the tires had a potential dual-use as passenger tires and temporary-use light truck tires. *Id.* Because Commerce reasonably concluded that the tires were not "designed and marketed exclusively" as temporary-use light truck tires, substantial evidence supports its determination. *See* Administrative Case Brief at 6–7, J.A. at 100,574–75, ECF No. 61; Questionnaire Response at VE-13, J.A. at 97,834, ECF No. 61.

Under the substantial evidence standard, "[i]t is not for this court on appeal to reweigh the evidence or to reconsider questions of fact anew." *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube*, 975 F.2d 807, 815 (Fed. Cir. 1992); *see Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376 (Fed. Cir. 2015) ("While Appellants invite this court to reweigh this evidence, this court may not do so."). A determination is supported by substantial evidence when it rests on "'more than a mere scintilla,' as well as evidence that a 'reasonable mind might accept as adequate to support a conclusion.'" *Dongtai Peak Honey Indus. Co., Ltd. v. United*

*States*, 777 F.3d 1343, 1349 (Fed. Cir. 2015) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The burden of creating an adequate record lies with the interested parties and not with Commerce." *Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014) (citing *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).

Cheng Shin argues that it was faced with a no-win situation because it had to report its tires under a TRA Yearbook listing even though the tires had no such listing. Pl.'s Reply at 8-9, ECF No. 58. But this argument is inconsistent with Cheng Shin's own admissions during the investigation. In its administrative case brief, Cheng Shin affirmed that the tires would accurately be classified as passenger tires under the TRA Yearbook. Administrative Case Brief at 6 n.10, J.A. at 100,574, ECF No. 61 ("To clarify, if these models had been developed under the standard of TRA [*sic*], they would also be classified as 'passenger tire.'"). Cheng Shin further noted that it developed the tires under a separate European standard where they were also classified as passenger ties. *Id.* at 6. It said without any qualification that "these tires meet the standards of passenger tires." *Id.* at 6–7.

Faced with these admissions during the investigation, Cheng Shin claimed at oral argument that its own submissions to Commerce were "irrelevant information." Oral Arg. Tr. 53:9–18, ECF No. 76. Cheng Shin's submissions during Commerce's investigation are of course relevant because "[t]he burden of creating an adequate record lies with the interested parties, not with Commerce." *Qingdao*, 766 F.3d at

1386.  And Commerce is statutorily required to base its decision on the record before

it.  *See* 19 U.S.C. §§ 1516a(b)(1)–(2).   Commerce is obligated to consider all the

evidence that fairly supports or detracts from its conclusion, and Cheng Shin's own

submissions provided support for Commerce's conclusion in this case.  *See Butte*

*Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (noting that an agency cannot

"reufus[e] to consider evidence bearing on the issue before it").  Commerce reasonably

construed Cheng Shin's admissions as supporting the conclusion that "these tires

have an intended dual use and, thus, could not have been designed and marketed

exclusively for light trucks."  IDM at 20, J.A. at 15,977, ECF No. 60.  Indeed, it would

likely have been unreasonable had Commerce taken Cheng Shin's suggestion and

ignored the company's repeated claims that its tires were designed using passenger

car standards.  *Compare* Administrative Case Brief at 6-7 n.10, J.A. at 100,574-75,

ECF No. 61 (noting that the tires "would also be classified as 'passenger tire'"), *with*

*Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (CIT 2000)

(noting that it would be legal error for Commerce to fail "to consider or discus record

evidence which, on its face, provides significant support for an alternative

conclusion").

Cheng Shin's argument in its briefs and before Commerce attempts to have it

both ways.  Contrary to its statements before Commerce, Cheng Shin now asserts

that, when selecting a tire service type, "none of [them] strictly applied" to Cheng

Shin's tires; but during the investigation, it stated that the TRA Yearbook classified

the tires as passenger tires.    *Compare* Pl.'s Reply at 9, ECF No. 58, *with*

Administrative Case Brief at 6 n.10, J.A. at 100,574, ECF No. 61.  In its reply brief,

however, Cheng Shin concedes that it chose the designation passenger tire "based on

the physical characteristics of the tires, and not based on intended use[.]"[8]  Pl.'s Reply

at 11, ECF No. 58.  Cheng Shin thus seeks to drive a wedge between the physical

characteristics of the tires as indicated by their TRA Yearbook designation and their

"intended use." *Id.*

 Nothing in the language of the exclusion requires Commerce to ignore the

physical characteristics of the tires that correspond to the TRA Yearbook

classification.  Commerce reasonably construed the exclusive design requirement to

extend to the classification and corresponding physical characteristics of the tires in

question.  Without some relation to the physical characteristics, the design

requirement would collapse into the exclusive marketing requirement and have no

independent meaning.  *Compare* Revised Exclusion at 2, J.A. at 12,294, ECF No. 60

("Excluded from the scope are tires designed and marke[te]d exclusively as

"temporary-use" or "spare" tires for light trucks . . . ."), *with Williams v. Taylor*, 529

U.S. 362, 404 (2000) (noting that, when interpreting legal texts, "[i]t is . . . a cardinal

principle" to "'give effect, if possible, to every clause and word'") (quoting *Inhabitants*

---

[8] The Court also notes that Cheng Shin's representations to Commerce with respect to the tire service type were inconsistent.  In its initial product characteristics comments, it claimed that the tires in question did not fit under the TRA Yearbook at all and proposed a fourth category of light truck tires with reduced tread depth.  *See* Characteristic Comments at 3, J.A. at 4,348, ECF No. 60.  Then, later in the investigation, Cheng Shin admitted that the tires would be classified as passenger tires under the TRA Yearbook.  *See* Administrative Case Brief at 6 n.10, J.A. at 100,574, ECF No. 61.

*of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883)), WEBSTER'S THIRD NEW INT'L DICTIONARY (1968) (defining "design" to include "to plan and plot out the shape and disposition of the parts of and the structural constituents of"), *and* WEBSTER'S NEW INT'L DICTIONARY (2d ed. 1956) ("[t]o sketch as a pattern or model"). Cheng Shin does not offer an alternative interpretation of the words of the exclusion that would give effect to the word "designed," *see* Pl.'s Reply at 11–12, ECF No. 58 (equating "designed and marketed" solely with intended use), nor does it suggest that Commerce's consideration of the tires' physical characteristics was unreasonable. *Cf.* Pl.'s Mot. at 20, ECF No. 42 (observing only that Commerce's analysis was "not required by the scope language," not that it was impermissible).

Cheng Shin responds that the Union admitted temporary-use light truck tires have no TRA Yearbook listing; hence, the listing is not relevant to the exclusion. *See* Pl.'s Reply at 8, ECF No. 58. Although it is true that temporary-use light truck tires have no special heading under the TRA Yearbook, it is a non-sequitur that Cheng Shin's classification of its tires as passenger tires under the TRA Yearbook is irrelevant. If excluded temporary-use light truck tires have no classification and Cheng Shin's tires do have a classification as passenger tires, then that is only further evidence that they do not qualify for the exclusion.

Cheng Shin advances three other arguments in support of its contention that Commerce's decision was not supported by substantial evidence:  (1) Commerce misinterpreted a load chart Cheng Shin included in its customer agreements; (2) the

customer agreements manifest the exclusivity that the exclusion required; and (3) the tires do not have a dual-use. *See* Pl.'s Mot. at 20–21, 24–26, ECF No. 42.  Given Cheng Shin's repeated affirmations during the investigation that its tires meet the standards of passenger tires, Cheng Shin's other arguments are also unavailing.

Cheng Shin explains that the load capacity chart attached to its sales contracts "reproduces the standard load capacity at different inflation pressures for tires with the particular size dimensions"; therefore, it did not manifest a dual-use. *Id.* at 25. Plaintiff also argues that the customer agreements clearly manifest an intent for its customer to use the tires exclusively as temporary-use light truck tires. *Id.* at 20–27. But Commerce's interpretation of the load capacity chart as permitting the tires to have a dual-use was not clearly erroneous based on the record before it.  The chart shows load and capacity for both passenger and truck tires with no explanation provided by Cheng Shin. *See* Questionnaire Response at Exhibit VE-7-A, J.A. at 100,352, ECF No. 61. Similarly, at oral argument, counsel for the Union pointed out that only one of the contracts Cheng Shen submitted matched the characteristics of a tire that it sought to have excluded; and the chart for that one contract showed *only* load data for passenger cars. *See* Oral Arg. Tr. 34:5–16, ECF No. 76. Cheng Shin's counsel countered that the charts were just generic and that mismatches between the submitted contracts and the technical drawings of the tires were a result of discrepancies in the customer's files. *See id.* 41:19–24.

This back-and-forth only serves to emphasize that it was Cheng Shin's burden
— not Commerce's — to build the record in this case. *See QVD*, 658 F.3d at 1324.
Cheng Shin's proffered best evidence fails to point unambiguously in the direction of
a finding that the subject tires "were designed . . . exclusively" as temporary use light
truck tires. Commerce must base its decisions on the record before it, and the record
in this case contains evidence pointing in different directions that Commerce had to
weigh. *See* 19 U.S.C. §§ 1516a(b)(1)–(2). It is not the role of the Court to reweigh the
evidence. *Downhole Pipe*, 776 F.3d at 1376. Even assuming that the customer
contracts unambiguously had shown an intent for Cheng Shin's customer to use the
tires exclusively for light trucks, Cheng Shin's admissions to Commerce that it
created the tires under a passenger car standard would still provide Commerce with
substantial evidence for its determination that the tires were not designed *exclusively*
as spare truck tires. Questionnaire Response at VE-12, J.A. at 97,833, ECF No. 61.

Cheng Shin's attempt to prove now to the Court that the tires are unfit for use
as passenger tires or spare passenger tires is inconsistent with the repeated
affirmations it made during the investigation that the tires meet the standards of
passenger tires. Cheng Shin cannot use litigation to rewrite the submissions it made
to Commerce during the investigation. *Cf., e.g., QVD*, 658 F.3d at 1324 ("QVD is in
an awkward position to argue that Commerce abused its discretion by not relying on
evidence that QVD itself failed to introduce into the record[.]"); *Linyi City Kangfa
Foodstuff Drinkable Co., Ltd. v. United States*, No. 15-00184, 2016 WL 5122648 at *2

(CIT 2016) ("*QVD Foods* cannot be read as requiring Commerce to act to ferret out 'necessary' information for the record."). A reasonable mind would have taken Cheng Shin's submissions at face value, and that is just what Commerce did. *See* Oral Arg. Tr. 58:15–17, ECF No. 76 (The Court: "They put 1 [indicating passenger tire] down and you took them at their word?" Ms. Speck: "Yes, Your Honor."). Because "the court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views,'" substantial evidence supports Commerce's determination. *Goldlink Indus. Co. v. United States,* 431 F. Supp. 2d 1323, 1326 (CIT 2006) (quoting *Universal Camera Corp.*, 340 U.S. at 488) (alteration in original).

### B. Commerce Did Not Unlawfully Modify the Scope of the Order

Cheng Shin claims that Commerce unlawfully modified the scope of the order because the Union agreed that Cheng Shin's tires met the requirements of the exclusion that the two parties had negotiated and submitted to Commerce. Pl.'s Mot. at 27–28, ECF No. 42 Cheng Shin also argues that the exclusion was specifically designed to "exclude the . . . temporary-use light truck spare-tire models identified in Cheng Shin's initial scope comments." *Id.* at 28. Commerce and the Union both deny that they made any such agreement with respect to the tires in question. Def.'s Resp. at 21–22, ECF No. 53; Def.-Int.'s Resp. at 14–15, ECF No. 49. The record does not support Cheng Shin's assertions. Commerce did not unlawfully modify the scope of the order.

Commerce has discretion to determine the scope of an order to remedy unlawful dumping. *See Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577, 1582–83 (Fed. Cir. 1990). Commerce, however, "cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (quoting *Eckstrom Indus., Inc. v. United States,* 254 F.3d 1068, 1072 (Fed. Cir. 2001)); *accord Fedmet Res. Corp. v. United States*, 755 F.3d 912, 921–22 (Fed. Cir. 2014). If a question about an order's scope is "asked and answered during the underlying investigations," then that answer cannot be subsequently changed by Commerce. *Fedmet Res.*, 755 F.3d at 920. As long as these limits are respected, Commerce "'enjoys substantial freedom to interpret and clarify its antidumping orders.'" *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002) (quoting *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995)).

Cheng Shin cites *Fedmet Resources* in support of its argument that Commerce unlawfully changed the scope of the order, but the case is inapposite. Pl.'s Reply at 5, ECF No. 58. In *Fedmet Resources*, Commerce determined that particular magnesia alumina carbon bricks were within the scope of an antidumping order even though the petitioner requesting the order had disclaimed that view in the initial investigation. 755 F.3d at 914–18. The petitioner had "requested initiation of antidumping and countervailing duty investigations on imports of certain MCBs

[magnesia carbon bricks] from China and Mexico." *Id.* at 914. It distinguished magnesia carbon bricks from other types of bricks in its petition, prompting Commerce to clarify whether the petitioner only wanted to focus on magnesia carbon bricks. *Id.* The petitioner clarified that the scope of the investigation should be confined to magnesia carbon bricks only and not extend to magnesia alumina bricks described in generic terms. *Id.* at 914–15. After the initial investigation concluded, Fedmet Resources requested a scope ruling on its magnesia alumina bricks. 755 F.3d at 916. Despite the original petitioner's explicitly excluding this category of bricks in the investigation, Commerce determined that they were within the scope of the antidumping order. *Id.* at 917. The Federal Circuit reversed Commerce's determination because the underlying investigation "contain[ed] multiple representations made by [the petitioner] disclaiming coverage of all [magnesia alumina carbon] bricks in general." *Id.* at 919. Therefore, the question of whether magnesia alumina carbon bricks were within the scope of the order was "asked and answered during the underlying investigations." *Id.* at 920.

*Fedmet Resources* is distinguishable because here the Union negotiated multiple, specific requirements for the exclusion. *See* Petitioner Scope Rebuttal at 6, J.A. at 8,601, ECF No. 60 ("Petitioner requests that if Commerce does grant any exclusion for light truck temporary spare tires, it include all the requirements explained above in that exclusion."). It never agreed to exclude Cheng Shin's specific tires; only those tires that could meet each of the negotiated criteria would be

excluded. *See id.* In *Fedmet Resources*, by contrast, "the Petitioner said that [it was] disclaiming coverage of *all* [magnesia alumina carbon] bricks *in general*." *Fedmet Res.*, 755 F.3d at 919 (emphasis added). It gave a blank check to exclude an entire product category with no other requirements. *Id.* Cheng Shin did not find as lenient a negotiating partner in the Union. Thus, Cheng Shin — unlike the plaintiff in *Fedmet Resources* — had to meet the specific requirements it negotiated as opposed to benefitting from a general exclusion for all tires used as temporary-use light truck tires.

Cheng Shin agreed to this multi-pronged exclusion after it classified its tires as passenger tires under the TRA Yearbook in its Section B and Section C responses on September 25, 2020, and September 29, 2020, respectively. Cheng Shin's Section B Response at B-11–12, J.A. at 85,352–53, ECF No. 61; Section C Response at Exhibit C-4, J.A. at 88,770–72, ECF No. 61. It placed this information on the record despite having been warned "reporting tires as different service types would normally be determinative on matching." Product Characteristics Rebuttal at 10 n.36, J.A. 6,097, ECF No. 60. Months later, Cheng Shin agreed to the Union's revised scope exclusion language that added the "designed and marketed exclusively" requirement. *See* Revised Exclusion (Dec. 10, 2020), J.A. at 12,293–94, ECF No. 60. Cheng Shin agreed to a narrow exclusion that was in tension with the information it had already placed on the record. Then, after agreeing to language requiring exclusivity of design, it twice again affirmed that its tires met the standards of passenger tires.

Administrative Case Brief at 6–7, J.A. at 100,574–75, ECF No. 61; Questionnaire

Response at VE-13, J.A. at 97,834, ECF No. 61.

The Union was careful to state in its rebuttal comments to Cheng Shin's

exclusion request that Cheng Shin "avers" that its tires meet the exclusivity

requirements. Petitioner's Scope Rebuttal at 5, J.A. at 8,600, ECF No. 60. In its

agreement to the final revised exclusion, the Union stated that "it does not oppose

the request for the exclusion of light truck spare tires if the full language Cheng Shin

has proposed is used." Petitioner's Response on Cheng Shin's Scope Request, at 1–2,

J.A. at 12,300–01, ECF No. 60. The Union, therefore, only agreed to the specific

language of the exclusion for light truck spare tires and never the application of that

language to exclude Cheng Shin's tires. Unlike in *Fedmet Resources*, the question of

whether the exclusion covered Cheng Shin's tires was never "asked and answered

during the underlying investigation." 755 F.3d at 920. Commerce did not unlawfully

modify the scope. Cheng Shin negotiated an exclusion for which its tires did not

qualify based on the record it built before the agency. There is no legal error.

### C. The Subsequent Scope Ruling Is Irrelevant

Finally, the Court must address whether to remand so that Commerce can

reconsider its determination based on a subsequent scope ruling. *See* Pl.'s Reply at

15, ECF No. 58. Cheng Shin appended the results of a subsequent scope ruling to its

reply brief and asserts that Commerce acted unlawfully in this case because the later

ruling granted an exclusion to allegedly similar tire models. *Id.* at 14–15, 21. Cheng

Shin states that neither Commerce nor the Union objected to Cheng Shin's failure to

provide a TRA Yearbook classification for the tires in the subsequent scope ruling.

Thus, it claims that the Union's objections in this case "based on the reported TRA

tire service type . . . are without merit." *Id.* at 21.  Commerce counters that Cheng

Shin placed the TRA Yearbook service type onto the record in this investigation and

did not do so in the subsequent scope ruling.  Def.'s Sur-Reply at 2, ECF No. 65.

Commerce also argues that prior administrative decisions do not bind it, and the

different conclusions are by virtue of the different records before the agency in each

investigation.  *Id.* at 3.  Because the subsequent decision is not on the record here,

the Court holds Commerce need not have considered it.

Prior scope rulings do not bind Commerce because "each administrative review

is a separate exercise of Commerce's authority that allows for different conclusions

based on different facts in the record." *Qingdao*, 766 F.3d at 1387.  However, an

agency must give sufficient reasons for treating similar situations differently. *SKF*

*USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001); *accord Torrington*

*Co. v. United States*, 881 F. Supp. 622, 648 (CIT 1995), *aff'd*, 127 F.3d 1077 (Fed. Cir.

1997).  Commerce's obligation to explain its different treatment of similar situations

only arises, however, if the inconsistency is on the record and was presented to

Commerce when it made its decision. *See Unicatch Indus. Co. v. United States*, 539

F. Supp. 3d 1229, 1249 (CIT 2021) ("Without any basis for comparing Commerce's

purportedly inconsistent decisions, the court finds no reason to remand the issue in

this proceeding."). "Plaintiffs generally may not supplement th[e] record on judicial review" with materials from a subsequent administrative action. *Hoogovens Staal BV v. United States*, 4 F. Supp. 2d 1213, 1218 (CIT 1998); *accord Luoyang Bearing Factory v. United States*, 240 F. Supp. 2d 1268, 1300 n.28 (CIT 2002) (citing *Hoogovens Staal*). As such, "potentially inconsistent administrative action in successive administrative reviews (if challenged), arises in the latter of the two proceedings, not the former." *Home Prods. Int'l, Inc. v. United States*, 662 F. Supp. 2d 1360, 1364 (CIT 2009).

A few points quickly illustrate that the subsequent ruling is not relevant to the resolution of this case. First, the subsequent scope ruling was not on the record before Commerce when it made its initial decision, and "the issue was not presented to Commerce in that segment of the proceeding for the agency to explain its determination." *Unicatch*, 539 F. Supp. 3d at 1248–49. Consequently, the subsequent ruling does not speak to the question of whether substantial evidence supports the prior ruling because the subsequent ruling was not before the agency when it made the decision challenged here.

Second, the purported inconsistency is "not a *prior* administrative precedent" of the challenged action. *Home Prods.*, 662 F. Supp. 2d at 1364. Cheng Shin can only challenge the purported inconsistency in the subsequent proceeding because the inconsistency is created by the subsequent decision. *Id.* The purported inconsistency, therefore, is irrelevant to the challenged decision before the Court. *See Hoogovens*

*Staal*, 4 F. Supp. 2d at 1218 ("The Court can not [*sic*] consider evidence presented in the second administrative review when it reviews the first administrative review.").

Third, even if the challenged decision was relevant, it is undisputed that the record in the initial investigation and the subsequent scope rulings differed in significant respects. *See* Pl.'s Reply at 21, ECF No. 58 (stating that the TRA service type was not part of the record in the subsequent ruling); Def.'s Sur-Reply at 2, ECF No. 65 ("[T]he TRA was not on the record in the [subsequent] scope proceeding, but it was on the record in this [initial] investigation."). It is hardly surprising that, given the multiple unforced errors Cheng Shin committed in the underlying proceedings, it changed tactics in subsequent proceedings. That it wisely chose to do so does not save it from the consequences of the answers it gave here.

## CONCLUSION

Cheng Shin negotiated for an exclusion whose plain language required that any excluded tires must be "designed and marketed exclusively" as temporary-use light truck tires. It then proceeded to submit information to Commerce explaining how much like passenger car tires its truck tires were. It is not the job of the Court to save Cheng Shin from itself. That Commerce could have perhaps taken a more lenient view does not compel Commerce to do so. *Accord Universal Camera Corp.*, 340 U.S. at 488 (holding that a court cannot "displace the [agency's] choice between two fairly conflicting views"). Having given Commerce and the Union the rope with which to hang it, Cheng Shin may not now complain about the sentence. The decision

of the Commerce Department is **AFFIRMED** as supported by substantial evidence

and in accordance with the law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).  Plaintiff's Motion

for Judgment on the Agency Record is **DENIED**.


 

 

 

 

                                   Stephen Alexander Vaden, Judge

Dated:   February 13, 2023
          New York, New York